UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
FELIPE ROBLES VASQUEZ p/k/a RALDY
VASQUEZ and CAMPESINO ENTERTAINMENT          06 Civ. 0619(CM)
GROUP, INC.,


                              Plaintiffs,


        -against-                            Affidavit In
                                             Opposition

FERNANDO TORRES NEGRON, TOMARA
SOSA-PASCUAL and JULIO DE LA
ROSA-RIVE,


                          Defendants.
------------------------------------X


State of New York      )

County of New York     ) ss.:


        James B. Sheinbaum, being duly sworn, deposes and says:


    1.  I am a member of Borstein & Sheinbaum, attorneys for

Plaintiffs in the above captioned action, and am familiar with

the following facts and circumstances.

    2.  I submit this affidavit in opposition to the motion of

Defendant Fernando Torres-Negron seeking dismissal of this action

pursuant to Fed.R.Civ.P. 12(b)(2),(3) and (6).  Dk. No. 6-9.

    3.  The following documents are attached as Exhibits:


                              1

| Exhibit Number | Description |
| --- | --- |
| 1 | Complaint (Dk. No. 1) |
| 2 | 1994 Agreement between Fernando A Torres and ASCAP and 1995 Membership Extension Agreement |
| 3 | ASCAP Website Printout (4/26/06) showing Fernando A Torres as an ASCAP member and for the ASCAP registered title "Noche de Fiesta" by Feranando A Torres |

4.   The attached Exhibit 2 was produced by Defendant Torres in discovery in the action captioned <u>Fernando Torres-Negron v. Antonio L. Rivera-Lopez, et al.</u>, 02 Civ. 1728(HL) (D. Puerto Rico) ("2002 Action").

5.   The Court is respectfully referred to Plaintiffs' accompanying Memorandum Of Law In Opposition To Defendant Torres-Negron's Pre-Answer Motion To Dismiss Pursuant To Fed.R.Civ.P. 12(b)(2), (3) and (6) for the facts, circumstances, arguments and legal authorities supporting their opposition to Defendant Torres' motion.

_____
James B. Sheinbaum

Sworn to before me this
28th day of April, 2006

_____
Notary Public

TRACEY WHISNANT
Commissioner of Deeds
City of New York - No.4-5369
Certificate Filed in New York County
Commission Expires May 1, 2008

2

# EXHIBIT 1

UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X



FELIPE ROBLES VASQUEZ p/k/a RALDY
VASQUEZ and CAMPESINO ENTERTAINMENT          06 Civ.          (   )
GROUP, INC.,

                              Plaintiffs,

                                                    Complaint

          -against-


FERNANDO TORRES NEGRON, TOMARA
SOSA-PASCUAL and JULIO DE LA
ROSA-RIVE,                           **06 CV 0619**

                   Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

FILED
U.S. DISTRICT COURT
2006 JAN 25 PM 4:46
S.D. OF N.Y.

          Felipe Robles Vasquez p/k/a Raldy Vasquez and Campesino

Entertainment Group, Inc., as and for their Complaint, state and

allege:

                         The Parties


     1.   Felipe Robles Vasquez p/k/a Raldy Vasquez ("Vasquez") is

an individual residing in Santo Domingo, Dominican Republic.

     2.   Campesino Entertainment Group, Inc. ("Campesino") is a

corporation organized and existing under the laws of the State of

New York with offices in Pomona, New York and is engaged in the

business of exploiting sound recordings and musical compositions.

     3.   Fernando Torres Negron ("Torres") is an individual

residing in Aibonito, Puerto Rico.

                              1

4.    Tamara Sosa Pascual ("Pascual") is an individual residing in Puerto Rico and an attorney admitted to practice law in Puerto Rico.

5.    Julio A. De la Rosa-Rive ("Rive") is an individual residing in Puerto Rico and an attorney admitted to practice law in Puerto Rico.

### Jurisdiction and Venue

6.    Jurisdiction of this action is founded upon 28 U.S.C. §1331 and §1338(a).

7.    The matter in controversy exceeds, exclusive of interest and costs, the sum of $75,000.

8.    Venue of the claims in this action is founded upon 28 U.S.C. §1391(b) and §1400(a).

### Count I

9.    Plaintiff Vasquez composed the words and music to a musical composition entitled "Nena Linda" in 1992.

10.    Nena Linda was released commercially on the phonorecord entitled "Comercial" in 1993.

11.    Comercial was sold and distributed in the Dominican Republic and Puerto Rico.

2

12.  Plaintiff Vasquez has properly registered words and music of the musical composition entitled "Nena Linda" ("Nena Linda") with the United States Copyright Office.

13.  Plaintiff Vasquez has complied in all respects with the registration and deposit requirements of the United States Copyright Act with respect to "Nena Linda".

14.  Plaintiff Vasquez has been issued United States Certificate of Registration of Copyright PA 1-267-305 which includes the musical composition entitled "Nena Linda".

15.  Plaintiff Vasquez did not grant any rights, title or interest in and to "Nena Linda" to Defendants Torres, Pascual and/or Rive.

16.  Plaintiff Vasquez did not grant any rights, title or interest to Defendants Torres, Pascual and/or Rive to exploit or use "Nena Linda" or any portion thereof in any manner or by any means.

17.  Plaintiff Vasquez did not grant any rights, title or interest in and to "Nena Linda" to Defendants Torres, Pascual and/or Rive to administer "Nena Linda".

18.  Plaintiff Vasquez did not grant any rights, title or interest to Defendants Torres, Pascual and/or Rive to collect any money or royalties due to or resulting from the use and/or exploitation of "Nena Linda" or any portion thereof.

19.  Plaintiff Vasquez did not grant any rights, title or

3

interest to Defendants Torres, Pascual and/or Rive to license or grant licenses or authorizations to third parties to use or exploit "Nena Linda" or any portion thereof.

20.    Defendant Torres alleges that he composed a song entitled "Noche de Fiesta" in two pending actions in the United States District Court for the District of Puerto Rico entitled: <u>Fernando Torres-Negron v. Antonio L. Rivera-Lopez, et. al.</u>, 02 Civ. 1728 (HL) (D. Puerto Rico) ("2002 Action") and <u>Fernando Torres-Negron v. J&N Publishing, et. al.</u>, 05 Civ. 1216 (JAG) (D. Puerto Rico) ("2005 Action") (collectively hereafter "Puerto Rican Actions").

21.    In the Puerto Rican Actions, Defendant Torres alleges that he copyrighted "Noche de Fiesta" on January 31, 2002 and was issued Copyright Certificate of Registration No. Pau 2-624-261 covering "Noche de Fiesta" ("Noche de Fiesta").

22.    According to discovery in the 2002 Action, Pascual prepared and filed Torres' application for copyright registration of "Noche de Fiesta".

23.    According to discovery in the 2002 Action, the Copyright Certificate covering "Noche de Fiesta" lists Torres as the sole author of the words and music.

24.    Torres and Pascual did not notify or advise the Copyright Office that the rhythm and music of "Noche de Fiesta" was based upon "Nena Linda" and that Torres did not have the

4

authority, consent or permission of the author of "Nena Linda" to use any portion of "Nena Linda".

25.  In the Puerto Rican Actions, Defendant Torres seeks damages and equitable relief as alleged author and copyright owner of "Noche de Fiesta".

26.  During his oral deposition in the 2002 Action, Defendant Torres testified that prior to writing the words to "Noche de Fiesta", Ruben Canuelas, a neighbor, provided him with a cassette of a musical group of a recording of a musical composition ("Cassette") and that Ruben Canuelas told him to write the words that would carry the tune and the same rhythm of the song on the Cassette.

27.  During that oral deposition in the 2002 Action, Defendant Torres testified that he listened to the Cassette prior to writing "Noche de Fiesta".

28.  To date, during the course of the Puerto Rican Actions, Defendant Torres has not identified or disclosed the title of the song he listened to prior to allegedly writing "Noche de Fiesta".

29.  To date, during the course of the Puerto Rican Actions, Defendant Torres has not identified or disclosed the name of the author of the song he listened to prior to allegedly writing "Noche de Fiesta".

30.  Based upon discovery in the 2002 Action, "Noche de Fiesta" was commercially released by Centro Records in 1993 and

5

distributed and sold by Luis Rivera Distributors in Puerto Rico on a record entitled Bailando y Gozando con...Gozadera ("Bailando y Gozando").

31.  Defendant Torres was credited as the sole author of "Noche de Fiesta" on Bailando y Gozando.

32.  In the 2002 Action, Defendant Torres testified in his deposition that he obtained a copy of Bailando y Gozando shortly after it was released.

33.  In the 2002 Action, Defendant Torres alleges that in 1994 he became a member of the American Society of Composers, Artists and Publishers ("ASCAP"), a performing rights society, that collects and pays royalties to composers and music publishers from public performances of musical compositions.

34.  ASCAP is located in New York City, New York.

35.  In discovery in the 2002 Action, Defendant Torres produced ASCAP statements showing that he was paid performance royalties by ASCAP on "Noche de Fiesta".

36.  In his oral deposition in the 2002 Action, Defendant Torres testified that he received two checks for royalties in the sum of $450.

37.  The copies of these checks produced in discovery in the 2002 Action indicate that the checks are for "Noche de Fiesta".

38.  Upon information and belief, in 2005, Defendant Torres settled his claims against EMI-Latin in the 2002 Action for

6

allegedly using or exploiting "Noche de Fiesta" on a recording entitled "Merenhits '94" for a sum of money that exceeds $75,000.

39.  In 2005, by written agreement with Vasquez, Campesino became the exclusive world wide administrator of the musical composition and sound recording of "Nena Linda" ("Nena Linda Agreement").

40.  Under the Nena Linda Agreement, Campesino is authorized exclusively to license "Nena Linda" and to collect all money and royalties earned, generated or produced by the use and exploitation of "Nena Linda" in return for a fee.

41.  Under the Nena Linda Agreement, Campesino is authorized to commence and maintain legal actions and proceedings to enforce the copyright in "Nena Linda" and to collect money and royalties from the use or exploitation of "Nena Linda".

42.  Pascual and Rive are Torres' attorneys of record in the Puerto Rican Actions.

43.  Upon information and belief, the music and rhythm of "Noche de Fiesta" contained on the recordings entitled Bailando y Gozando and Merenhits '94 is taken from and based upon "Nena Linda".

44.  Upon information and belief, "Noche de Fiesta" infringes on "Nena Linda".

45.  Upon information and belief, Defendant Torres' exploitation of "Noche de Fiesta" infringes upon and violates

7

Vasquez's rights as a copyright owner in and to "Nena Linda".

46.   Upon information and belief, Defendant Torres' registration of United States Copyright in and to "Noche de Fiesta" infringes and violates Vasquez's rights as a copyright owner in and to "Nena Linda".

47.   Upon information and belief, Defendant Torres' Puerto Rican Actions seeking to collect damages for copyright infringement of "Noche de Fiesta" violate Vasquez's rights as a copyright owner in and to "Nena Linda".

48.   Upon information and belief, all sums obtained or received by or paid to Defendant Torres' based upon the use or exploitation of "Noche de Fiesta" infringe upon and violate Vasquez's rights as a copyright owner in and to "Nena Linda".

49.   Upon information and belief, Pascual and Rive,have contributed to Torres' alleged infringements of "Nena Linda" by causing or materially contributing to Torres' infringing conduct.

50.   Upon information and belief, Pascual and Rive have profited by Torres' alleged infringements while declining to exercise any right to stop or limit such alleged infringements.

51.   Prior to commencement of this action, Plaintiff Vasquez has notified Defendants of his rights in "Nena Linda" and provided Defendants with a copy of his United States copyright registration covering "Nena Linda" and a copy of a recording containing "Nena Linda".

8

52.  After such notice, Defendants have continued to infringe upon Vasquez's copyright in and to "Nena Linda".

53.  Upon information and belief, Defendants' acts were and are intentional and willful acts of copyright infringement.

54.  As a result of the foregoing, Plaintiffs have suffered and will continue to suffer irreparable injury and damages.

55.  By reason of the foregoing, Plaintiffs are entitled to declaratory judgment invalidating and cancelling Torres's copyright registration of "Noche de Fiesta", equitable relief and damages.

WHEREFORE, Plaintiffs demand judgment against all Defendants jointly and severally as follows:

(a) Declaring United States Copyright Registration Pau 2-624-261 ineffective, invalid, annulled, cancelled and void with respect to the work entitled "Noche de Fiesta".

(b) Ordering and directing the Register of Copyrights and Copyright Office to annul and cancel United States Copyright Registration Pau 2-624-261 with respect to the work entitled "Noche de Fiesta".

(c) Declaring that Torres is not the author of the work entitled "Noche de Fiesta".

(d) Permanently enjoining Defendants, their agents,

9

representatives, servants, employees, attorneys, attorneys in fact and all persons and entities of any nature acting or purporting to act on their individual or collective behalf from infringing Plaintiff Vasquez's copyright in and to "Nena Linda" in any manner.

(e) Permanently enjoining Defendants, their agents, representatives, servants, employees, attorneys, attorneys in fact and all persons and entities of any nature acting or purporting to act on their individual or collective behalf from instituting, maintaining, continuing and/or prosecuting any action or proceeding of any nature in any court and/or tribunal to allege, assert, claim, defend and/or enforce any rights, title or interest in and to "Noche de Fiesta" in any manner.

(f)  Permanently enjoining Torres, his agents, representatives, servants, employees, attorneys, attorneys in fact and all persons and entities of any nature acting or purporting to act on his behalf from alleging, asserting and/or claiming credit or acknowledgment as author and/or composer of "Noche de Fiesta" in any manner.

(g) Awarding Plaintiffs the actual damages and all profits attributable to Defendants' infringements in "Nena Linda" pursuant to 17 U.S.C. §504(b).

(h) Awarding Plaintiffs statutory damages pursuant to 17 U.S.C. §504(c), including damages for wilful infringement, based

10

upon Defendants' infringements of "Nena Linda".

(i) Ordering and directing each of the Defendants to account to Plaintiffs for all gains and profits derived by Defendants from the infringements of Plaintiff Vazquez's copyright in "Nena Linda".

(j) Awarding punitive damages according to proof as a result of Defendants' intentional and wilfull infringements of Plaintiff Vasquez's copyright in and to "Nena Linda".

(k) Awarding the costs and disbursements of this action.

(l) Awarding attorney's fees.

(m) Awarding and granting such other and further relief as may be just and proper.

Dated: New York, New York

      January 25 2006

                                    Borstein & Sheinbaum
                                    Attorneys For Plaintiffs

By:                                  
                                  James B. Sheinbaum (JS 0291)

                                  420 Lexington Avenue
                                  Suite 2920
                                  New York, New York 10170
                                  (212) 687-1600

11

# EXHIBIT 2

## 1986-1995

No.:

Rec'd: JAN 19 1994



# Agreement Between

FERNANDO A TORRES

AND

## American Society

OF

## Composers, Authors & Publishers

1 LINCOLN PLAZA
NEW YORK, N.Y. 10023



**ASCAP** THE **VOICE OF MUSIC.**

AMERICAN
SOCIETY OF
COMPOSERS
AUTHORS &
PUBLISHERS

**Agreement** made between the Undersigned (for brevity called "*Owner*") and the AMERICAN SOCIETY OF COMPOSERS, AUTHORS AND PUBLISHERS (for brevity called "*Society*"), in consideration of the premises and of the mutual covenants hereinafter contained, as follows:

1. The *Owner* grants to the *Society* for the term hereof, the right to license non-dramatic public performances (as hereinafter defined), of each musical work:

Of which the *Owner* is a copyright proprietor; or

Which the *Owner*, alone, or jointly, or in collaboration with others, wrote, composed, published, acquired or owned; or

In which the *Owner* now has any right, title, interest or control whatsoever, in whole or in part; or

Which hereafter, during the term hereof, may be written, composed, acquired, owned, published or copyrighted by the *Owner*, alone, jointly or in collaboration with others; or

In which the *Owner* may hereafter, during the term hereof, have any right, title, interest or control whatsoever, in whole or in part.

The right to license the public performance of every such musical work shall be deemed granted to the *Society* by this instrument for the term hereof, immediately upon the work being written, composed, acquired, owned, published or copyrighted.

The rights hereby granted shall include:

(a) All the rights and remedies for enforcing the copyright or copyrights of such musical works, whether such copyrights are in the name of the *Owner* and/or others, as well as the right to sue under such copyrights in the name of the *Society* and/or in the name of the *Owner* and/or others, to the end that the *Society* may effectively protect and be assured of all the rights hereby granted.

(b) The non-exclusive right of public performance of the separate numbers, songs, fragments or arrangements, melodies or selections forming part or parts of musical plays and dramatico-musical compositions, the *Owner* reserving and excepting from this grant the right of performance of musical plays and dramatico-musical compositions in their entirety, or any part of such plays or dramatico-musical compositions on the legitimate stage.

(c) The non-exclusive right of public performance by means of radio broadcasting, telephony, "wired wireless," all forms of synchronism with motion pictures, and/or any method of transmitting sound other than television broadcasting.

(d) The non-exclusive right of public performance by television broadcasting; provided, however, that:

(i) This grant does not extend to or include the right to license the public performance by television broadcasting or otherwise of any rendition or performance of (a) any opera, operetta, musical comedy, play or like production, as such, in whole or in part, or (b) any composition from any opera, operetta, musical comedy, play or like production (whether or not such opera, operetta, musical comedy, play or like production was presented on the stage or in motion picture form) in a manner which recreates the performance of such composition with substantially such distinctive scenery or costume as was used in the presentation of such opera, operetta, musical comedy, play or like production (whether or not such opera, operetta, musical comedy, play or like production was presented on the stage or in motion picture form): provided, however, that the rights hereby granted shall be deemed to include a grant of the right to license non-dramatic performances of compositions by television broadcasting of a motion picture containing such composition if the rights in such motion picture other than those granted hereby have been obtained from the parties in interest.

(ii) Nothing herein contained shall be deemed to grant the right to license the public performance by television broadcasting of dramatic performances. Any performance of a separate musical composition which is not a dramatic performance, as defined herein, shall be deemed to be a non-dramatic performance. For the purposes of this agreement, a dramatic performance shall mean a performance of a musical composition on a television program in which there is a definite plot depicted by action and where the performance of the musical composition is woven into and carries forward the plot and its accompanying action. The use of dialogue to establish a mere program format or the use of any non-dramatic device merely to introduce a performance of a composition shall not be deemed to make such performance dramatic.

(iii) The definition of the terms "dramatic" and "non-dramatic" performances contained herein are purely for the purposes of this agreement and for the term thereof and shall not be binding upon or prejudicial to any position taken by either of us subsequent to the term hereof or for any purpose other than this agreement.

(e) The *Owner* may at any time and from time to time, in good faith, restrict the radio or television broadcasting of compositions from musical comedies, operas, operettas and motion pictures, or any other composition being excessively broadcast, only for the purpose of preventing harmful effect upon such musical comedies, operas, operetta, motion pictures or compositions, in respect of other interests under the copyrights thereof; provided, however, that the right to grant limited licenses will be given, upon application, as to restricted compositions, if and when the *Owner* is unable to show reasonable hazards to his or its major interests likely to result from such radio or television broadcasting; and provided further that such right to restrict any such composition shall not be exercised for the purpose of permitting the fixing or regulating of fees for the recording or transcribing of such composition, and provided further that in no case shall any charges, "free plugs", or other consideration be required in respect of any permission granted to perform a restricted composition; and provided further that in no event shall any composition, after the initial radio or television broadcast thereof, be restricted for the purpose of confining further radio or television broadcasts thereof to a particular artist, station, network or program. The *Owner* may also at any time and from time to time, in good faith, restrict the radio or television broadcasting of any composition, as to which any suit has been brought or threatened on a claim that such composition infringes a composition not contained in the repertory of *Society* or on a claim by a non-member of *Society* that *Society* does not have the right to license the public performance of such composition by radio or television broadcasting.

2. The term of this agreement shall be for a period commencing on the date hereof and expiring on the 31st day of December, 1995.

3. The *Society* agrees, during the term hereof, in good faith to use its best endeavors to promote and carry out the objects for which it was organized, and to hold and apply all royalties, profits, benefits and advantages arising from the exploitation of the rights assigned to it by its several members, including the *Owner*, to the uses and purposes as provided in its Articles of Association (which are hereby incorporated by reference), as now in force or as hereafter amended.

4. The *Owner* hereby irrevocably, during the term hereof, authorizes, empowers and vests in the *Society* the right to enforce and protect such rights of public performance under any and all copyrights, whether standing in the name of the *Owner* and/or others, in any and all works copyrighted by the *Owner*, and/or by others; to prevent the infringement thereof, to litigate, collect and receipt for damages arising from infringement, and it its sole judgment to join the *Owner* and/or others in whose names the copyright may stand, as parties plaintiff or defendants in suits or proceedings; to bring suit in the name of the *Owner* and/or in the name of the *Society*, or others in whose name the copyright may stand, or otherwise, and to release, compromise, or refer to arbitration any actions, in the same manner and to the same extent and to all intents and purposes as the *Owner* might or could do, had this instrument not been made.

5. The *Owner* hereby makes, constitutes and appoints the *Society*, or its successor, the *Owner's* true and lawful attorney, irrevocably during the term hereof, and in the name of the *Society* or its successor, or in the name of the *Owner*, or otherwise, to do all acts, take all proceedings, execute, acknowledge and deliver any and all instruments, papers, documents, process and pleadings that may be necessary, proper or expedient to restrain infringements and recover damages in respect to or for the infringement or other violation of the rights of public performance in such works, and to discontinue, compromise or refer to arbitration any such proceedings or actions, or to make any other disposition of the differences in relation to the premises.

6. The *Owner* agrees from time to time, to execute, acknowledge and deliver to the *Society*, such assurances, powers of attorney or other authorizations or instruments as the *Society* may deem necessary or expedient to enable it to exercise, enjoy and enforce, in its own name or otherwise, all rights and remedies aforesaid.

7. It is mutually agreed that during the term hereof the Board of Directors of the *Society* shall be composed of an equal number of writers and publishers respectively, and that the royalties distributed by the Board of Directors shall be divided into two (2) equal sums, and one (1) each of such sums credited respectively to and for division amongst (a) the writer members, and (b) the publisher members, in accordance with the system of distribution and classification as determined by the Classification Committee of each group, in accordance with the Articles of Association as they may be amended from time to time, except that the classification of the *Owner* within his class may be changed.

8. The *Owner* agrees that his classification in the *Society* as determined from time to time by the Classification Committee of his group and/or The Board of Directors of the *Society*, in case of appeal by him, shall be final, conclusive and binding upon him.

The *Society* shall have the right to transfer the right of review of any classification from the Board of Directors to any other agency or instrumentality that in its discretion and good judgment it deems best adapted to assuring to the *Society's* membership a just, fair, equitable and accurate classification.

The *Society* shall have the right to adopt from time to time such systems, means, methods and formulae for the establishment of a member's status in respect of classification as will assure a fair, just and equitable distribution of royalties among the membership.

9. **"Public Performance" Defined.** The term *"public performance"* shall be construed to mean vocal, instrumental and/or mechanical renditions and representations in any manner or by any method whatsoever, including transmissions by radio and television broadcasting stations, transmission by telephony and/or "wired wireless"; and/or reproductions of performances and renditions by means of devices for reproducing sound recorded in synchronism or timed relation with the taking of motion pictures.

10. **"Musical Works" Defined.** The phrase *"musical works"* shall be construed to mean musical compositions and dramatico-musical compositions, the words and music thereof, and the respective arrangements thereof, and the selections therefrom.

11. The powers, rights, authorities and privileges by this instrument vested in the *Society*, are deemed to include the World, provided, however, that such grant of rights for foreign countries shall be subject to any agreements now in effect, a list of which are noted on the reverse side hereof.

12. The grant made herein by the owner is modified by and subject to the provisions of (a) the Amended Final Judgment (Civil Action No. 13-95) dated March 14, 1950 in U.S.A. v. ASCAP as further amended by Order dated January 7, 1960, (b) the Final Judgment (Civil Action No. 42-245) in U.S.A. v. ASCAP, dated March 14, 1950, and (c) the provisions of the Articles of Association and resolutions of the Board of Directors adopted pursuant to such judgments and order.

SIGNED, SEALED AND DELIVERED, on this......15.....day of......January......................,19......

Owner {        FERNANDO A TORÉ

AMERICAN SOCIETY OF COMPOSERS,
AUTHORS AND PUBLISHERS,

Society {

# MEMBERSHIP EXTENSION AGREEMENT

American Society of Composers,
Authors and Publishers
ASCAP Building
One Lincoln Plaza
New York, New York 10023

Ladies and Gentlemen:

With respect to the membership agreement (*"the Agreement"*) entered into between us (hereinafter *"Owner"* and *"Society,"* respectively) for periods through December 31, 1995, *Owner* and *Society* hereby agree to extend the *Agreement* for all purposes for a further period commencing January 1, 1996, subject to the following:

1. Paragraph 2 of the *Agreement* is hereby amended to read as follows:
   "2. The term of this *Agreement* shall be for a period commencing on the date hereof and continuing indefinitely thereafter unless terminated by either party in accordance with the Articles of Association."

2. The final clause of Paragraph 7 of the *Agreement* is hereby amended to read as follows:
   "7. . . . in accordance with the system of apportionment and distribution of royalties as determined by the Board of Directors in accordance with the Articles of Association as they may be amended from time to time."

3. Paragraph 8 of the *Agreement* is hereby amended to read as follows:
   "8. The *Owner* agrees that the apportionment and distribution of royalties by the *Society* as determined from time to time by the Board of Directors of the *Society*, in case of appeal by him, shall be final, conclusive and binding upon him.

   "The *Society* shall have the right to transfer the right of review of any apportionment and distribution of royalties from the Board of Directors to any other agency or instrumentality that in its discretion and good judgment it deems best adapted to assuring to the *Society's* membership a just, fair, equitable and accurate apportionment and distribution of royalties.

   "The *Society* shall have the right to adopt from time to time such systems, means, methods and formulae for the establishment of a member's apportionment and distribution of royalties as will assure a fair, just and equitable distribution of royalties among the membership."

Sincerely,    TORRES  FERNANDO  A

By: _____          _____
              Signature                                   Print name

Date: _November 29, 1995_

ACCEPTED:
AMERICAN SOCIETY OF COMPOSERS, AUTHORS AND PUBLISHERS

By: _____
         President and Chairman of the Board

# EXHIBIT 3



| HOME | ACE Title Search | News | Join ASCAP | About ASCAP | ASCAPLatino | Contact Us |

## ACE TITLE SEARCH

**Search** | **Results** | **Saved Results**

Disclaimer | Terms and Use Restrictions | ACE Comments | FAQ's | Help ⓘ

**Your search for writer(s) "FERNANDO A TORRES" returned 1 results.**
**Underlined text indicates that additional information is available.**

**Displaying Results 1 - 1**

| Composer/Writer | CAE/IPI No. | Society |
|---|---|---|
| 1. TORRES FERNANDO A | 336.17.86.52 | ASCAP |

HOME | ACE TITLE SEARCH | WHAT'S NEW | PRESS RELEASES
Join ASCAP | About ASCAP | ASCAPLatino | CONTACT US | SITE MAP
FOR MEMBERS | CAREER DEVELOPMENT | GENRES | CUSTOMER LICENSEES
LEGISLATION | ASCAP JAM | ASCAP STORE

Copyright and Terms of Use | Privacy Policy | www.ascap.com | info@ascap.com
Reproduction or use of editorial or pictorial content in any manner is strictly prohibited
without express written permission from ASCAP.
© 2006 ASCAP



**The American Society of Composers, Authors and Publishers**

| HOME | ACE Title Search | News | Join ASCAP | About ASCAP | ASCAPLatino | Contact Us |

# ACE TITLE SEARCH

**Search** | **Results** | **Saved Results**

Disclaimer | Terms and Use Restrictions | ACE Comments | FAQ's | Help ⑦

**Underlined text indicates that additional information is available.**

**Displaying Results 1 - 1**

Works written by:

Save

☐ **TORRES FERNANDO A**          **Society:** ASCAP          **CAE/IPI No.** 336.17.86.52

1 . NOCHE DE FIESTA                                        (Title Code: 440342443)

HOME | ACE TITLE SEARCH | WHAT'S NEW | PRESS RELEASES
Join ASCAP | About ASCAP | ASCAPLatino | CONTACT US | SITE MAP
FOR MEMBERS | CAREER DEVELOPMENT | GENRES | CUSTOMER LICENSEES
LEGISLATION | ASCAP JAM | ASCAP STORE

Copyright and Terms of Use | Privacy Policy | www.ascap.com | info@ascap.com
Reproduction or use of editorial or pictorial content in any manner is strictly prohibited
without express written permission from ASCAP.
© 2006 ASCAP

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

FELIPE ROBLES VASQUEZ p/k/a RALDY          )
VASQUEZ and CAMPESINO ENTERTAINMENT        )
GROUP, INC.,                               )
            Plaintiff,                       )
                                           )   06 Civ. 0619(CM)
                                           )
                                           )
        v.                                ) **CERTIFICATE OF SERVICE**
                                           )
FERNANDO TORRES NEGRON, TOMARA             )
SOSA-PASCUAL and JULIO DE LA               )
ROSA-RIVE,                                 )
                                           )
          Defendants.                      )
----------------------------------------- )

    I HEREBY CERTIFY that on April 28, 2006, a true and correct copy of Plaintiffs' "Affidavit In Opposition" with three exhibits and Plaintiffs' "Memorandum of Law In Opposition To Defendant Torres-Negron's Pre-Answer Motion To Dismiss Pursuant To Fed.R.Civ.P. 12(b) (2), (3) and (6)" was served on William R. Bennett, III, Esq., Defendants' attorney in this action, by facsimile to the following number:

          William R. Bennett, Esq.
          Fax No. (646) 328-0121


Dated: New York, New York
       April 28, 2006

                   By:                    
                   James B. Sheinbaum(JS 0291)

                   Borstein & Sheinbaum
                   Attorney for Plaintiffs
                   420 Lexington Avenue, Suite 2920
                   New York, NY 10170
                   Tel: (212) 687-1600