EXHIBIT A



Bennett, Giuliano, McDonnell & Perrone, LLP
Attorneys for Defendants
225 West 34th Street, Suite 402
New York, New York 10122
Telephone:    (646) 328-0120
Fax:          (646) 328-0121
William R. Bennett, III (WB 1383)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

FELIPE ROBLES VÁSQUEZ p/k/a RALDY
VÁSQUEZ and CAMPESINO MUSIC
ENTERTAINMENT GROUP, INC.,

                            Plaintiffs,

                                                    NO. 06 CV 0619 (Mc Mahon)

        -against-



FERNANDO TORRES NEGRÓN,
TAMARA SOSA-PASCUAL and
JULIO DE LA ROSA-RIVE,

                            Defendants

------------------------------------------------------------X

## UNSWORN DECLARATION OF FERNANDO TORRES NEGRON UNDER PENALTY OF PERJURY PURSUANT TO 28 USC § 1746

        I, Fernando Torres Negron, declare under the penalty of perjury that the foregoing

is true and correct:

        1.      I am a lifetime resident of Puerto Rico. I presently live in Aibonito,

                Puerto Rico.

        2.      I have never been in the State of New York.

        3.      I do not, and never did, maintain an office, residence, bank

                account, or P.O. Box in the State of New York.

        4.      I do not, and never did, own any real estate in New York.

5.    I do not, and never did, have any assets located in the state of New York.

6.    I do not transact or conduct business within the State of New York.

7.    Mr. Vásquez, the plaintiff here, attempted to prove in the *Puerto Rico Actions* that I copied significant elements of the melody of his song entitled "Nena Linda" when I composed "Noche de Fiesta." The jury determined that I did not copy the melody.

Fernando Torres Negrón

EXHIBIT B

AO450 (Rev. 5/85)   Judgement in a Civil Ca

# UNITED STATES DISTRICT COURT

FOR THE JUDICIAL          DISTRICT OF          PUERTO RICO

FERNANDO TORRES-NEGRON

V.

ANTONIO L. RIVERA AND J & N RECORDS

## JUDGMENT IN A CIVIL CASE

Case Number:     02-1728 (HL)

02-1729 (HL)

X **Jury Verdict.** This action came before the Court for a trial by jury. The issues have been tried and the jury has rendered its verdict.

☐ **Decision by Court.** This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS ORDERED AND ADJUDGED

that plaintiff Fernando Torres-Negron recover damages as follows:

$100,00.00 from codefendant Antonio L. Rivera for the claim as to the Song "Noche de Fiesta".

$100,00.00 from codefendant Antonio L. Rivera for the claim as to the Song "Bebo por Ti" and

$400,000.00 from codefendant J & N Records for the claim as to the Song "Noche de Fiesta.

March 3, 2006
Date

FRANCES RIOS DE MORAN
Clerk

s/Minerva Figueroa
(By) Deputy Clerk



EXHIBIT C

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

<u>MINUTES OF PROCEEDINGS</u>

HONORABLE Hector M. Laffitte

COURTROOM DEPUTY: Nivea L. Ocasio          Date:   February 21, 2006

COURT REPORTER: Patricia Garshak           Civil No. 02-1728 (HL)
                                           Civil No. 02-1729 (HL)

===================================================================

FERNANDO TORRES NEGRON                     <u>Attorneys for Plaintiffs:</u>
                                           Tamara Sosa-Pascual
                                           Carlos Dalmau
                                           Manuel Quilichini-García

          vs.

Antonio Rivera, et al.                     <u>Attorneys for Defendants:</u>
                                           José Hernández-Mayoral
                                           James B. Steinbaum

===================================================================

Case called for Seventh Day of further Jury Trial. Further conference is held in chambers. Arguments were heard as to new jury instructions and a new jury verdict form presented by Attorney Steinbaum on behalf of J & N Records.

Jury was thereafter brought into Court and the Court read another jury instruction. At 10:50 the jury resumes deliberation. At 11:41 A.M. the jury announced they had reached a verdict. A verdict in favor of the plaintiff is read and is ordered to be filed. Jurors are excused from further participation in this action.

Out of the presence of the jury, Counsel Hernández-Mayoral on behalf of codefendant, Antonio Rivera, renews his motion for judgment as a matter of law under Rule 50(b). Same is denied. Judgment shall be entered accordingly. Court rules that any additional motions under Rule 50 or Rule 59 shall be submitted in writing.

s/ *Nivea L. Ocasio*
Nivea L. Ocasio
Courtroom Deputy Clerk

Jury Note #8
e-mailed to Jury Clerk

# EXHIBIT B

EXHIBIT D

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO**

FERNANDO TORRES-NEGRON,
    Plaintiff,

v.

J & N RECORDS,
    Defendant.

Civil No. 02-1728 (HL)
Civil No. 02-1729 (HL)

### VERDICT FORM: J & N RECORDS

The Jury must unanimously agree on the answers to the following questions:

**Question 1:**

Do you find by a preponderance of the evidence that Plaintiff Fernando Torres-Negron was the original author of the lyrics and the music of the song "Noche de Fiesta"?

ANSWER:        YES $\underline{\times}$        NO____

If you answered YES to Question 1, proceed to Question 2.
If you answered NO to Question 1, you should <u>not</u> answer any other questions, and the foreperson should sign and date this verdict form.

**Question 2:**

Do you find by a preponderance of the evidence that Plaintiff Fernando Torres-Negron's deposit of the recording of "Noche de Fiesta" with the Copyright Office was a bona fide copy or a reconstruction from memory without directly referring to the original?

ANSWER:        Bona Fide Copy $\underline{\times}$        Reconstruction from Memory____

If you answered *"Bona Fide Copy"* to Question 2, proceed to Question 3.
If you answered *"Reconstruction from Memory"* to Question 2, you should <u>not</u> answer any other questions, and the foreperson should sign and date this verdict form.

**Question 3:**

Do you find that Defendant J & N Records has proven by a preponderance of the evidence that Plaintiff Fernando Torres-Negron granted an implied license to Defendant Antonio L.

**EXHIBIT C**

Rivera to in turn grant Defendant J & N Records the rights to commercially exploit or distribute plaintiff's song "Noche de Fiesta"?

ANSWER:            YES____            NO ✗

If you answered YES to Question 3, you should <u>not</u> answer any other questions, and the foreperson should sign and date this verdict form.
If you answered NO to Question 3, proceed to Question 4.

**Question 4:**

Do you find that Defendant J & N Records has proven by a preponderance of the evidence that Defendant Antonio L. Rivera had actual, implied, or apparent agency authority from Plaintiff Fernando Torres-Negron to grant Defendant J & N Records the rights to commercially exploit or distribute Plaintiff's song "Noche de Fiesta"?

ANSWER:            YES____            NO ✗

If you answered YES to Question 4, you should <u>not</u> answer any other questions, and the foreperson should sign and date this verdict form.
If you answered NO to Question 4, proceed to Question 5.

**Question 5:**

Do you find that Defendant J & N Records has proven by a preponderance of the evidence that Plaintiff Fernando Torres-Negron knew, discovered, or by the exercise of reasonable care or diligence, could have or should have known or discovered *before* May 15, 1999 that his copyright in the song "Noche de Fiesta" was violated or infringed by J & N Records?

ANSWER:            YES____            NO ✗

If you answered YES to Question 5, you should <u>not</u> answer any other questions, and the foreperson should sign and date this verdict form.
If you answered NO to Question 5, proceed to Question 6.

**Question 6:**

Do you find that Defendant J & N Records has proven by a preponderance of the evidence that Plaintiff Fernando Torres-Negron failed to exercise sufficient due diligence in filing the complaint and that the resulting delay resulted in prejudice to Defendant J & N Records?

ANSWER:            YES____            NO ✗

If you answered YES to Question 6, you should <u>not</u> answer any other questions, and the

2

foreperson should sign and date this verdict form.
If you answered NO to Question 6, proceed to Question 7.

**Question 7:**

Do you find that Defendant J & N Records has proven by a preponderance of the evidence that Plaintiff Fernando Torres-Negron knew of Defendant J & N Records infringing acts, and expressly or impliedly consented to such acts through inaction or acquiescence, with the intention that defendant act upon such acquiescence?

ANSWER:            YES___            NO _✗_

If you answered YES to Question 7, you should not answer any other questions, and the foreperson should sign and date this verdict form.
If you answered NO to Question 7, proceed to Question 8.

**Question 8:**

Do you find that Defendant J & N Records has proven by a preponderance of the evidence that Defendant J & N Records rightly believed that Plaintiff Fernando Torres-Negron intention was to expressly or impliedly consent to Defendant J & N Record's commercial exploitation and that Defendant J & N Records relied upon Plaintiff Fernando Torres-Negron's conduct to his injury?

ANSWER:            YES___            NO _✗_

If you answered YES to Question 8, you should not answer any other questions, and the foreperson should sign and date this verdict form.
If you answered NO to Question 8, proceed to Question 9.

**Question 9:**

If you have found for Plaintiff Fernando Torres-Negron on the aforesaid questions, what sum of money, if any, do you find to be the amount of actual damages suffered by Plaintiff Fernando Torres-Negron?

$ _400,000.00_

_2/17/06_
Date

_[signature]_
Signature of Foreperson

EXHIBIT E

## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF PUERTO RICO

FERNANDO TORRES NEGRON,
  Plaintiff

v.

ANTONIO L. RIVERA, ET AL.,
  Defendants.

Civil No. 02-1728 (HL)
Civil No. 02-1729 (HL)

> *"There is nothing more horrible than the murder of a beautiful theory by a brutal gang of facts."*
> — Francois De La Rochefoucauld.

### OPINION AND ORDER

Before the Court are Defendant Antonio L. Rivera's renewed motion for judgment as a matter of law;[1] and Defendant J & N Records' motion for renewed judgment as a matter of law or, in the alternative, for a new trial, to amend judgment or to dismiss the case for lack of subject matter jurisdiction.[2] Plaintiff Fernando Torres Negrón (hereinafter "Torres") filed an opposition to said motions[3] and defendants filed separate replies to Torres' opposition.[4]

After a careful review of the record and submissions of counsel, the Court grants Defendants' renewed motions for judgment as a mater of law.

---

[1] Dkt. No. 458. *See* Fed.R.Civ.P. 50(b)(1).

[2] Dkt. No. 461. *See* Fed.R.Civ.P. 50(b)(1), 59(a)(1) & (e), 12(h)(3).

[3] Dkt. No. 480.

[4] Dkt. Nos. 485, 486.

05/25/2006 13:13 FAX 212 687 8710    Case 1:06-cv-00619-CM-MDF    Document 18-2    Filed 06/20/2006    Page 14 of 36    BOR&SHEIN and LUR&FLA    ☑ 005/027

Case 3:02-cv-01728-HL    Document 488    Filed 05/24/2006    Page 2 of 24

2

## BACKGROUND

### I.

### Factual Background

The facts, as presented at trial and viewed in the light most favorable to the jury verdict are as follows: Plaintiff Fernando Torres Negrón is a high school teacher, musician, and song writer from Aibonito, Puerto Rico. At some point in 1992 or 1993, Ruben Cañuelas, a singer at that time for the musical group Tempo Merenguero, approached Torres and asked him to compose a song for Tempo Merenguero to be presented to the directors of the group. Torres accepted. One night in 1993, Torres was invited to Cañuelas' house. At his house, Cañuelas provided Torres with a cassette tape that contained several songs on it, so that Torres could listen to it and get a feel for the type of songs and style in which Tempo Merenguero played. The tape included recordings of Tempo Merenguero playing live. While still at Cañuelas' house, Torres listened to one of the songs, taking the rhythm and style of the music, and developed the song *Noche de Fiesta*. Torres immediately recorded himself singing *Noche de Fiesta*, accompanied only by clapping his hands, into the cassette tape. Torres also wrote down the lyrics of the song on a piece of paper. Torres did not make duplicates of this cassette tape or the paper containing the lyrics. Torres then gave Cañuelas the cassette and the piece of paper and never saw either item again. Cañuelas presented the cassette of *Noche de Fiesta* to the members of Tempo Merenguero. Torres never had a written agreement with Tempo Merenguero, but he orally authorized Tempo Merenguero to utilize *Noche de Fiesta* as part of the group's repertoire.

In 1992, before Torres wrote *Noche de Fiesta*, singer and songwriter Felipe Vasquez Robles, better known as Raldy Vasquez, composed the song *Nena Linda*.[5] *Nena Linda* was commercially released in the phonorecord *Raldy Vasquez "Comercial"* on cassette tape in

---

[5] Raldy Vasquez has written approximately 300 songs, approximately 150 of which have been commercially published. Raldy Vasquez has been nominated for five Grammy awards, receiving two, and has won the American Society of Composers, Authors and Publishers (ASCAP) Award multiple times.

3

1992 in Puerto Rico and later on compact disc in 1993.[6] *Nena Linda* was also played on the radio in Puerto Rico in 1993. The songs *Nena Linda* and *Noche de Fiesta* are similar in that the songs share the same melody, tone, structure, and are in the key of A minor. The songs are different only in their wording and rhythm. Specifically, *Nena Linda* is a merengue bomba and *Noche de Fiesta* is a faster paced merengue maco. Torres does not remember whether the song that he listened to from the tape provided by Cañuelas to write *Noche de Fiesta* was *Nena Linda* but admits that it might have been that song. Tempo Merenguero was, at least in part, a cover band that performed songs written and performed by other artists.

In 1993 Defendant Antonio Rivera was director of the musical group Sabrosos de Merengue, which had released commercial recordings. In that year, Cañuelas informed Torres that Antonio Rivera had heard the song *Noche de Fiesta* played by Tempo Merenguero and had liked it. Cañuelas asked Torres if he would submit an additional song to Antonio Rivera for Antonio Rivera's approval. Torres agreed. At Cañuelas' house, Torres simultaneous wrote the lyrics and music for the song *Bebo por Ti*. Cañuelas provided Torres with a blank cassette tape, and Torres recorded the song accompanying himself only by clapping his hands. Torres also wrote the lyrics of *Bebo por Ti* on a sheet of paper. Torres did not make duplicates of either the cassette tape or lyric sheet. Cañuelas retained the original paper and the cassette to ensure that Antonio Rivera received the items. Torres never saw the cassette tape or the paper containing the lyrics after that date.

Torres was very pleased that Antonio Rivera was going to review his song. Torres knew at the time that he gave Ruben Cañuelas the cassette tape of *Bebo por Ti* that Cañuelas was taking it to Antonio Rivera for his review, and that if Antonio Rivera liked the song he might choose to record it. Torres was impressed and somewhat elated that Antonio Rivera, whom he admired for his standing in the music business community, would have agreed to review his cassette.

At some point in the early 1990s, under the direction of Antonio Rivera, the musical

---

[6] *See* Defendant's Exs. H-34 & H-36.

4

group Los Sabrosos del Merengue was transformed into the group Gozadera. Specifically, female dancers were added and several musicians that had previously played with Tempo Merenguero joined to form the new group known as Gozadera. Cañuelas became a singer and musician for Gozadera. In 1993 after submitting the cassette of *Bebo por Ti* to Antonio Rivera, Cañuelas informed Torres that Antonio Rivera liked the song and that Gozadera was going to record it. Ruben Cañuelas also told Torres that Gozadera was going to a recording studio to commercially record the song *Noche de Fiesta*. Subsequently, Torres attended one of the recording sessions for this Gozadera album. Torres knew that the album would be commercially released and would contain both *Noche de Fiesta* and *Bebo por Ti* performed by Gozadera with lead vocals by Cañuelas. As anticipated, the Gozadera album was released in 1993, under the title *Bailando y Gozando con Gozadera*.[7] This phonorecord was produced by Antonio Rivera and distributed by Centro Records, a company owned by Antonio Rivera. Tracks two and seven of the phonorecord contain *Noche de Fiesta* and *Bebo por Ti*, respectively, and track nine contains a remix of *Noche de Fiesta*. The paper jacket accompanying the phonorecord credits Torres as the author for *Noche de Fiesta* and *Bebo por Ti*. The Centro Records' 1993 version of *Bailando y Gozando con Gozadera* was distributed exclusively in Puerto Rico.

In 1993 Ruben Cañuelas informed Torres that the record had been commercially released for sale, and Torres heard the song *Noche de Fiesta* being played on radio in Puerto Rico. Thereafter, Torres went to a record store and purchased a copy of the album. Torres was delighted that the record had been released and shared it with his family. At some point in 1994, after *Noche de Fiesta* had enjoyed a commercial release, Torres wrote a clean copy of the words to *Noche de Fiesta* from memory. Thereafter, the lyrics to the song were continuously copied on to clean pieces of paper with the passing of time.

After the 1993 Centro Records release of *Bailando y Gozando con Gozadera*, Torres spoke with Antonio Rivera about the songs *Noche de Fiesta* and *Bebo por Ti* on ten to fifteen

---

[7] *See* Plaintiff's Ex. 7.

5

separate occasions. Specifically, in 1995, Torres went to see Antonio Rivera at a travel agency that Antonio Rivera owned. Antonio Rivera told Torres that he would be paid royalties in the amount of three cents ($0.03) for each record sold and advised him to see Luis Rivera, owner of Luis Rivera Record Distributor, Inc. Torres went to Luis Rivera to collect money for the two songs. Thereafter, Luis Rivera provided Torres with two checks, dated March 24, 1995 and March 30, 1995, each in the amount of $450.00. These checks were royalty payments for the 1993 Centro Records' release of *Bailando y Gonzando con Gozadera*. Torres endorsed and deposited these checks. Torres also encountered Antonio Rivera at a Kmart store when Torres was employed there; at Holly's Pizza when Gozadera performed at that establishment; at a local patron saint festival; and repeatedly at Antonio Rivera's house. Torres would also occasionally accompany Cañuelas to Antonio Rivera's house when Cañuelas went to collect payment for performances. Every time that Torres met Antonio Rivera they would discuss the songs *Bebo por Ti* and *Noche de Fiesta* and their commercial progress or lack thereof. At no point, from when Ruben Cañuelas approached Torres to write the songs *Noche de Fiesta* and *Bebo por Ti* until the filing of the complaint, approximately ten years later on May 15, 2002, did Torres communicate any restriction on the use of the songs or tell Antonio Rivera or anyone else not to perform, record, sell, or distribute the songs.

When the 1993 Centro Records phonorecord *Bailando y Gozando con Gozadera* was released, Torres thought that it would be sold in both Puerto Rico and the continental United States. However, the 1993 Centro Records version of *Bailando y Gonzando con Gozadera* was sold only in Puerto Rico. In 1993 Antonio Rivera sold the master of the sound recording that he had produced of Gozadera to J & N Records Distributor, Inc. for a fee of $10,000.00 for distribution in the continental United States. In 1994, HMS Records released, in the United States, an album entitled *Bailando y Gozando con Gozadera* produced by Antonio Rivera and distributed by J & N Records Distributors.[8] This United States released phonorecord is an identical sound recording to the 1993 Centro Records version of the album of the same name

---

[8] *See* Plaintiff's Ex. 10.

6

which had been distributed exclusively in Puerto Rico. Thus, the 1994 HMS Records version of *Bailando y Gozando con Gozadera* contains the songs *Noche de Fiesta*, *Bebo por Ti*, and a remix of *Noche de Fiesta*. At one point in the mid to late 1990s, a husband of one of Torres' cousins, a man named Giovanni, brought Torres a homemade cassette tape from the United States which contained the song *Noche de Fiesta*. Torres claims that he did not learn about the 1994 HMS Records phonorecord *Bailando y Gozando con Gozadera* until the year 2001 or 2002.

In 1994 a compilation album entitled *Merenhits '94* was released by J & N Records Distributors and distributed by EMI Latin and Capitol Records.[9] This 1994 compilation phonorecord contains fourteen tracks. Track number nine is the song *Noche de Fiesta* performed by the group Gozadera. The sound recording of *Noche de Fiesta* is identical to the master sound recording that formed the basis of the 1993 Centro Records phonorecord *Bailando y Gozando con Gozadera* and the 1994 HMS Records version of *Bailando y Gozando con Gozadera*. Torres claims that he first learned that *Noche de Fiesta* was on the 1994 phonorecord *Merenhits '94* in 2001. In 1999 J & N Records released an anniversary phonorecord with the same title, *Merenhits '94*. This 1999 phonorecord differs from the 1994 version of the same name in that it only contains ten tracks, rather than fourteen.[10] Track number six contains the song *Noche de Fiesta* performed by Gozadera. Torres learned that *Noche de Fiesta* was on this album in 2001.

In early 1994, Torres registered the song *Noche de Fiesta* and entered into an agreement with the American Society of Composers, Authors and Publishers (ASCAP), authorizing ASCAP to license radio, television broadcasting, and other limited public performances of the musical work *Noche de Fiesta*.[11] Thereafter, Torres periodically received royalty checks from ASCAP when the song was played in various countries, including the

---

[9] *See* Plaintiff's Ex. 8.

[10] *See* Plaintiff's Ex. 19.

[11] *See* Defendant's Ex. 17.

7

United States, Italy, and Argentina.[12]

In May of 2001, Torres signed two contracts assigning all of his rights in the songs *Noche de Fiesta* and *Bebo por Ti* to Sabrosos Publishing, Inc.[13] Sabrosos Publishing, Inc. is owned by Sorymar Rivera Matos and managed by Gloria Garced. Sorymar Rivera Matos is the daughter of Antonio Rivera.

In January of 2002, Torres registered the songs *Noche de Fiesta* and *Bebo por Ti* with the United States Copyright Office.[14] In support of his registration, Torres submitted cassette tapes of himself singing the songs and transcriptions of the lyrics. On the certificate of registration Torres identified that the nature of his authorship was "Exclusive author of words and music (rhythm)."[15] In response to the field query concerning derivative work or compilation, Torres inscribed "N/A" for "not applicable." Torres later received a copyright certificate dated January 25, 2006.[16]

In February of 2002, Torres also registered the songs *Noche de Fiesta* and *Bebo por Ti* as part of a work entitled "Songs of Fernando Torres" with the Commonwealth of Puerto Rico Department of State Registry of Copyrights.[17] In response to the "derived work or compilations" inquiry of the Puerto Rico Registry of Copyrights' request for registration by author form, Torres wrote "N/A" for "not applicable." Torres received a copyright certificate from the Puerto Rico Department of State Registry of Copyrights.[18]

---

[12] *See* Defendant's Ex. H-18.

[13] *See* Defendant's Exs. C-1, C-3.

[14] *See* Plaintiff's Exs. 1 & 2. Torres also registered a third song *Triste Final* which is not implicated in the present bifurcated trial.

[15] *See* Plaintiff's Ex. 1.

[16] *See* Plaintiff's Ex. 2.

[17] *See* Defendant's Ex. H-33.

[18] *See* Plaintiff's Ex. 3.

8

## II.

### Travel of the Case

Torres filed two separate actions for copyright infringement on May 15, 2002.[19] Upon motion by Defendant Antonio Rivera, the two cases were consolidated. On July 18, 2003, Torres amended his complaint to add additional parties.[20] Upon motion by Defendants J & N Records and Sony Discos, Inc., the Court ordered severance and separate trials for Torres' claims as to the songs *Noche de Fiesta* and *Bebo por Ti* from his claims for the song *Triste Final*.[21]

The bifurcated jury trial as to the songs *Noche de Fiesta* and *Bebo por Ti* commenced on February 1, 2006. Appearing as defendants in this trial were J & N Records; Antonio Rivera; Luis Rivera; Luis Rivera Record Distributor, Inc.; Sabrosos Publishing, Inc.; Yesenia Rivera-Matos; and Sorymar Rivera-Matos.[22] At the close of Plaintiff's case, defendants moved for judgement as a matter of law pursuant to Rule 50(a)(1). After argument from counsel, the Court ruled that Torres' claims against Defendants Luis Rivera; Luis Rivera Record Distributor, Inc.; Sabrosos Publishing; and Sorymar Rivera-Matos were dismissed for

---

[19] *See* Civ. No. 02-1728 (HL) (Dkt. No. 1); Civ. No. 02-1729 (HL) (Dkt. No. 1). In case number 02-1728 (HL) Torres brought claims for copyright infringement of the songs *Triste Final* and *Bebo por Ti* against Antonio L. Rivera; Centro Records; Gozadera; Sóló Éxitos; Yesenia Rivera-Matos; Luis Rivera Record Distributors, Inc.; CDT Records, Inc., d/b/a Casa de Los Tapes; and Cruz Manuel Hernandez-Santiago, a/k/a Manny Manuel. In the complaint filed in case number 02-1729 (HL) Torres alleged copyright violations related to the songs *Triste Final* and *Noche de Fiesta* by Musical Productions, Inc.; J & N Records; Sony Discos, Inc., d/b/a Sony Music Distribution; Antonio L. Rivera d/b/a Gozadera; and Los Sabrosos de Merengue.

[20] *See* Dkt. No. 81. The additional defendants were: Angélica Rivera (wife of Antonio Rivera); Sabrosos Publishing, Inc.; Sorymary Rivera-Matos; Nota Publishing, Inc.; Antonio Moreno; National Fire Insurance Company of Pittsburgh, P.A.; EMI Latin; Luis Rivera-Mejía; Aponte Distributors, d/b/a Distribuidora Aponte; HMS Records; SPR, Inc.; Privilege Corp.; Richie Viera; Universal Music; and Henry Rosario.

[21] *See* Dkt. Nos. 411, 416.

[22] *See* Dkt. No. 420.

9

insufficient evidence.[23] Further, the Court held that Torres' claims as to the Centro Records'
1993 phonorecord *Bailando y Gozando con Gozadera* were time-barred. At the close of all
evidence, defendants renewed their motions for judgment as a matter of law. The Court
reserved judgment.

In a pre-charge conference held in chambers at the conclusion of the five-day trial, the
parties agreed that Torres' claims against Defendant J & N Records were to be limited to the
song *Noche de Fiesta*. Thereafter, the case was submitted to the jury. On February 17, 2006,
after multiple days of deliberation, the jury returned verdicts in favor of Torres.[24] The jury
found that Torres had suffered $400,000.00 of damages as the result of J & N Records'
copyright infringement to the song *Noche de Fiesta*. The jury further determined that Torres
had incurred damages in the amount of $200,000.00 ($100,000.00 for the song *Noche de
Fiesta* and $100,000.00 for the song *Bebo por Ti*) as the result of Antonio Rivera's copyright
infringement-related activities.

## STANDARD OF REVIEW

The Court's review of a renewed motion for judgment as a matter of law is very
limited. A motion for judgment as a matter of law under Rule 50(b) of the Federal Rules of
Civil Procedure may be granted only when there is no legally sufficient evidentiary basis for
a reasonable jury to find for the non-moving party. *See Richards v. Relentless, Inc.*, 341 F.3d
35, 41 (1st Cir.2003); *Guilloty Perez v. Pierluisi*, 339 F.3d 43, 50 (1st Cir.2003). "A party
seeking to overturn a jury verdict faces an uphill battle." *See Marcano Rivera v. Turabo Med.
Ctr. P'ship*, 415 F.3d 162, 168 (1st Cir.2005). "Courts may only grant a judgment
contravening a jury's determination when the evidence points so strongly and overwhelmingly
in favor of the moving party that no reasonable jury could have returned a verdict adverse to

---

[23] The Court also granted Defendant Sabrosos Publishing, Inc.'s counterclaim. *See* Dkt. No.
150.

[24] *See* Dkt. Nos. 450-452.

10

that party." *Id.* (quoting *Rivera Castillo v. Autokirey, Inc.*, 379 F.3d 4, 9 (1st Cir.2004));
*Acevedo-Garcia v. Monroig*, 351 F.3d 547, 565 (1st Cir.2003); *Keisling v. SER-Jobs for
Progress, Inc.*, 19 F.3d 755, 759-60 (1st Cir.1994).

A motion for judgment as a matter of law may only be granted if "the evidence together
with all reasonable inferences in favor of the verdict, could lead a reasonable person to only
one conclusion, namely, that the moving party [is] entitled to judgment." *PH Group Ltd. v.
Birch*, 985 F.2d 649, 653 (1st Cir.1993). In evaluating the evidence, however, the Court "may
not assess the credibility of witnesses, evaluate the weight of the evidence or resolve conflicts
in testimony, but must view all facts and reasonable inferences therefrom in the light most
favorable to the non-movant." *Davet v. Maccarone*, 973 F.2d 22, 28 (1st Cir.1992).

Similarly, "[w]hen considering a Rule 59(a) motion [to amend or alter judgment], 'a
district court may set aside a jury's verdict and order a new trial only if the verdict is against
the demonstrable weight of the credible evidence or results in a blatant miscarriage of justice."
*Acevedo-Garcia v. Monroig*, 351 F.3d at 565 (quoting *Sanchez v. Puerto Rico Oil Co.*, 37
F.3d 712, 717 (1st Cir.1994)).

## DISCUSSION

Defendant J & N Records moves pursuant to Rule 50 for entry of judgment as a matter
of law on a litany of grounds, to wit: (1) Torres failed to comply with statutory registration
formalities which are prerequisites to suit; (2) Torres has failed to establish a prima facie case
of copyright infringement because *Noche de Fiesta* is not original and there was an
insufficient showing that J & N Records copied original elements of the work; (3) *Noche de
Fiesta* is not eligible for copyright protection because it is an unauthorized derivative work;
(4) the action is barred as untimely under the statute of limitations and the doctrine of laches;
(5) Torres failed to demonstrate actual damages or lost profits; and (6) the Court lacks
jurisdiction over the action. Defendant J & N Records alternatively seeks a new trial or to
amended judgment, to dismiss the action, or to reduce the award of damages, alleging that (1)
error was committed during trial; (2) the damages awarded against J & N Records were

11

excessive and speculative; and (3) the verdict was against the weight of the evidence. Because J & N Records' Rule 50 renewed motion for judgment as a matter of law disposes of Plaintiff's case, the Court does not reach J & N Records' alternative motion for a new trial or amended judgment.

Defendant Antonio Rivera moves for judgment as a matter of law on the grounds that (1) the jury's findings that Rivera had an implied license precludes a finding of copyright infringement; (2) the action is time-barred; and (3) there was no evidence of damages attributable to Antonio Rivera. After requesting an extension of time, Torres filed a consolidated opposition to the aforementioned post-trial motions. In his opposition, Torres only addresses the issue of implied license and evidence of damages. J & N Records and Antonio Rivera filed separate replies to Torres' opposition.

I.

First, the Court turns to Defendant J & N Records' argument that Torres' action is barred because he lacks a valid copyright registration since in support of his application for copyright registration he deposited only reconstructions, rather than bona fide copies, of the musical works *Noche de Fiesta* and *Bebo por Ti*.

A valid copyright registration is a jurisdictional prerequisite for maintaining a copyright infringement action under the Copyright Act of 1976, as amended, 17 U.S.C. § 101 *et seq.*; 17 U.S.C. § 411(a);[25] *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 493, 104 S.Ct. 774, 815 n.44 (1984); *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1160 (1st Cir.1994); *Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.*, 354 F.3d 112,

---

[25] At the time that the present suit commenced, section 411(a) provided that "no action for infringement of the copyright in any United States work shall be instituted until registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a). On April 27, 2005, Congress amended section 411 to permit the institution of infringement suits where either preregistration or registration of the copyright claim had been achieved. *See* Family Entertainment and Copyright Act of 2005, 17 U.S.C. § 411(a). As preregistration was not possible when this suit was filed, the amended language and related preregistration provisions are not implicated in the present case. *See La Resolana Architects, PA v. Clay Realtors Angel Fire*, 416 F.3d 1195, 1200 (10th Cir.2005).

05/25/2006 13:14 FAX 212 687 8710    BOR&SHEIN and LUR&FLA    Case 1:06-cv-00619-CM-MDF    Document 18-2    Filed 06/20/2006    Page 24 of 36    ☒015/027

Case 3:02-cv-01728-HL    Document 488    Filed 05/24/2006    Page 12 of 24

12

115 (2d Cir.2003). Among the numerous requirements of copyright registration is the requirement that an application for a certificate of registration include a copy or copies of the work to be copyrighted.[26] 17 U.S.C. § 408(b). In order to be valid, "'any copy deposited as part of an application for a certificate of copyright registration must be virtually identical to the original and must have been produced by directly referring to the original.'" *Coles v. Wonder*, 283 F.3d 798, 800 (6th Cir.2002) (quoting *Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1212 (9th Cir.1998)); *Seiler v. Lucasfilm, Ltd.*, 808 F.2d 1316, 1322 (9th Cir.1986), *cert. denied*, 484 U.S. 826, 108 S.Ct. 92 (1987). A copy produced by directly referring to the original is a "bona fide copy" and subsequent copies can be made by directly referring to this bona fide copy. *Coles*, 283 F.3d at 802; *Kodadek*, 152 F.3d at 1212.

However, a copy that is simply created or reconstructed from memory without directly referring to the original, known as "reconstruction," does not comply with the deposit requirements of the Copyright Act. *Coles*, 283 F.3d at 802 (holding that artist could not claim a valid copyright for a song because the recording he deposited along with his application for a certificate of copyright registration was a reconstruction from memory and thus did not satisfy the requirements for copyright registration); *Kodadek*, 152 F.3d at 1211-1212 (holding that an artist's copyright infringement action was foreclosed because his reconstructions of cartoon characters from memory were not appropriate copies of work for the purpose of obtaining a valid certificate of copyright registration); *Seiler*, 808 F.2d at 1322 (holding that § 408 of the Copyright Act permits the deposition of "bona fide copies of the original work only"). *See also Geoscan, Inc. of Tex. v. Geotrace Technologies, Inc.*, 226 F.3d 387, 393 (5th Cir.2000) (quoting *Kodadek*, 152 F.3d at 1210). "While it may be possible for an artist to accurately reproduce his or her previous work from memory, for the purpose of certainty in obtaining copyright registration, such reproductions are simply insufficient." *Kodadek*, 152 F.3d at 1212.

---

[26] "[T]he material deposited for registration shall include (1) in the case of an unpublished work, one complete copy or phonorecord; (2) in the case of a published work, two complete copies or phonorecords of the best edition." 17 U.S.C. § 408(b)(1) & (2).

13

In the present case, Torres wrote the songs *Noche de Fiesta* and *Bebo por Ti* in 1993. He recorded the songs on cassette tapes, wrote the lyrics on separate sheets of paper, and gave these items to Ruben Cañuelas. It is undisputed that Torres never saw the original recordings of the songs of lyrics sheets again. At some point in 1994, after the 1993 Centro Records phonorecord *Bailando y Gozando con Gozadera* had been commercially released in Puerto Rico and played on the radio, Torres wrote a clean copy of the words to *Noche de Fiesta* from memory. Thereafter, he copied the lyrics to *Noche de Fiesta* on to clean pieces of paper with the passing of time and possibly entered the lyrics into a computer. In 2002, Torres recorded himself singing *Noche de Fiesta* and *Bebo por Ti* into cassette tapes and prepared transcriptions of the lyrics. These cassette tapes and lyric transcriptions were then submitted with his application for copyright registration to the United States Copyright Office.

Like the unsuccessful plaintiffs in *Coles* and *Kodadek*, Torres did not refer to the original works or a bona fide copy of the works in producing the recordings of the works that he then deposited with his copyright application. Thus, Torres' deposits constitute impermissible reconstructions. As such, no reasonable jury could find that the recordings and lyric sheets submitted with Torres' copyright application were qualifying copies of the musical works. As Torres did not comply with the deposit requirement of § 411(a), Torres never obtained valid copyright registrations for *Noche de Fiesta* or *Bebo por Ti*. *See Coles* 283 F.3d at 802. As a valid copyright registration is a jurisdictional prerequisite for maintaining a copyright infringement suit, Torres' copyright action is precluded. *See Data Gen. Corp.*, 36 F.3d at 1160; *Johnson v. Gordon*, 409 F.3d 12, 20 (1st Cir.2005).

**II.**

In the alternative, even if Torres had satisfied the jurisdictional prerequisites of § 411(a), the Court could not uphold the jury's verdicts because, as discussed below, (1) *Noche de Fiesta* is an unauthorized derivative work not entitled to copyright protection; (2) Torres granted Antonio Rivera an implied license to exploit the songs *Noche de Fiesta* and *Bebo por Ti*; and (3) the amount of damages awarded by the jury is untenable due to insufficiency of the evidence.

05/25/2006 13:14 FAX 212 687 8710    Case 1:06-cv-00619-CM-MDF    Document 18-2    Filed 06/20/2006    Page 26 of 36
BOR&SHEIN and LUR&FLA                                                                          ☒017/027

Case 3:02-cv-01728-HL    Document 488    Filed 05/24/2006    Page 14 of 24

14

## A.

### Derivative Work

To establish a copyright infringement claim, in addition to compliance with statutory registration requirements, a plaintiff must prove: (1) ownership of a valid copyright and (2) "copying of constituent elements of the work that are original" by defendants. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361, 111 S.Ct. 1282, 1296 (1991); *Johnson*, 409 F.3d at 17 (quoting *Feist Publ'ns Inc.*, 499 U.S. at 361). "The *sine qua non* of copyright is originality. To qualify for copyright protection, a work must be original to the author. Original, as the term is used in copyright, means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity."*Feist Publications*, 499 U.S. at 346 (internal citations omitted).

Defendant J & N Records argues that Torres failed to prove that *Noche de Fiesta* is sufficiently original because the evidence at trial established that *Noche de Fiesta* was copied from artist Raldy Vasquez's copyrighted song *Nena Linda*. In the copyright infringement context, copying of a preexisting work may be inferred from a showing that (1) the alleged copier had prior access to the work and (2) there is "substantial similarity" between the works.[27] *Johnson*, 409 F.3d at 18 (citing *Lotus Dev. v. Borland Int'l, Inc.*, 49 F.3d 807, 813 (1st Cir.1995)); *CMM Cable Rep, Inc. v. Ocean Coast Properties, Inc.*, 97 F.3d 1504, 1513 (1st Cir.1996); *Grubb v. KMS Patriots, L.P.*, 88 F.3d 1, 3 (1st Cir.1996) (citing *Baxter v. MCA, Inc.*, 812 F.2d 421, 423 (9th Cir.1987); *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 48 (2d Cir.1986), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2278 (1986)). Proof of access and similarity raises a presumption of copying which can be rebutted by proof of independent creation. *Benson v. Coca-Cola Co.*, 795 F.2d 973, 974 (11th Cir.1986)(quoting *Original*

---

[27] "In a copyright infringement action, while copying by defendant is an element to be proven by plaintiff, copying may also be an issue in establishing the validity of the plaintiff's copyright, since if the copyrighted work of the plaintiff was itself directly copied from a prior source, it lacks the requisite originality to support a copyright. *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 489 F.Supp. 174, 179 (N.D.Ga. 1980), *aff'd*, 684 F.2d 821 (5th Cir.1982) (citing *Alfred Bell & Co. v. Catalda Fine Arts*, 191 F.2d 99 (2d Cir.1951)).

15

*Appalachian Artworks, Inc. v. Toy Loft*, 684 F.2d 821, 829 (11th Cir.1982) (quoting *Novelty Textile Mills, Inc. v. Joan Fabrics Corp.*, 558 F.2d 1090, 1092 (2d Cir.1977)).

     As to the first prong of the test, it is clear that Torres had access to the song *Nena Linda* before he wrote *Noche de Fiesta* in 1993. *Nena Linda* had been commercially released in Puerto Rico on cassette tape in 1992. Additionally, *Nena Linda* was released on compact disc and played on the radio in Puerto Rico throughout 1993. The cassette tape that Torres listened to in creating *Noche de Fiesta* included recordings of the group Tempo Merenguero playing live. Tempo Merenguero was a cover band that performed songs by other artists, and thus could have been playing *Nena Linda* on the recording. Further, although Torres does not remember whether the song that he listened to from the tape to write *Noche de Fiesta* was *Nena Linda*, he admitted at trial that it might have been *Nena Linda*.

     Substantial similarity is determined under an "ordinary listener" test. *Johnson*, 409 F.3d at 18 (citing *Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 607 (1st Cir.1988)); *Educ. Testing Servs. v. Katzman*, 793 F.2d 533, 541 (3d Cir.1986)). Pursuant to this test, two works are deemed "substantially similar" where "the ordinary [listener], unless he set out to detect the disparities, would be disposed to overlook them, and regard the work's aesthetic appeal as the same.'" *Id.* (quoting *Peter Pan Fabrics, Inc. v. Martin Weiner Corp.*, 274 F.2d 487, 489 (2d Cir.1960)); *Castle Rock Entertainment, Inc. v. Carol Publ'g Group, Inc.*, 150 F.3d 132, 139 (2d Cir.1998) (quoting *Arica Inst., Inc. v. Palmer*, 970 F.2d 1067, 1072 (2d Cir.1992) (quoting *Peter Pan Fabrics, Inc.*, 274 F.2d at 489)).

     It is uncontested that *Noche de Fiesta* and *Nena Linda* have the same melody, tone, structure, and key of A minor and differ only in their wording and rhythm. The similarities between the songs are not slight or trivial and go straight to the copyrightable elements of the song, namely the melody. The similarities between the songs are comprehensive and are not limited to certain portions or segments of the songs, but are present throughout the entirety of the songs. An ordinary person of reasonable attentiveness would, upon listening to both songs, conclude that the songs were identical except for differences in tempo and lyrics. *See Johnson*, 409 F.3d at 18 (citing *Concrete Mach. Co.*, 843 F.2d at 607 ); *Educ. Testing Servs.*

Case 1:06-cv-00619-CM-MDF    Document 18-2    Filed 06/20/2006    Page 28 of 36
05/25/2006  13:15 FAX  212 687 8710    BOR&SHEIN and LUR&FLA    ☒ 019/027

Case 3:02-cv-01728-HL    Document 488    Filed 05/24/2006    Page 16 of 24

16

*v. Katzman*, 793 F.2d at 541). The similarities are to such a degree as to preclude the possibility of coincidence or independent creation. This is particularly salient since Torres failed to proffer any evidence of independent creation. The songs are simply so strikingly similar that an average lay observer would be obliged to come to the inescapable conclusion that *Noche de Fiesta* and *Nena Linda* are the same song with different words.

This conclusion, however, does not end the Court's inquiry. A song which utilizes a melody or music from a preexisting work but adds original lyrics may be eligible for copyright as a derivative work. The Copyright Act defines a derivative work as "based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted." 17 U.S.C. § 101. The statutory rights of a copyright include the exclusive right "to prepare derivative works based upon the copyrighted work." 17 U.S.C. § 106(2); *Stewart v. Abend*, 495 U.S. 207, 220, 110 S.Ct. 1750 (1990) ("An author holds a bundle of exclusive rights in the copyrighted work, among them the right to copy and the right to incorporate the work into derivative works."). However, "because the owner of the original copyright has the exclusive right to prepare derivative works, the creator of an original derivative work is only entitled to a copyright if [he or] she had permission to use the underlying copyrighted work." *Mulcahy v. Cheetah Learning, LLC.*, 386 F.3d 849, 852 (8th Cir.2004) (citing *Dam Things from Denmark v. Russ Berrie & Co. Inc.*, 290 F.3d 548, 563 (3d Cir.2002)); *Palladium Music, Inc. v. EatSleepMusic, Inc.*, 398 F.3d 1193, 1197 (10th Cir.2005) (an artist cannot copyright a derivative work unless the author has the authority to use the copyrighted material from which the new work is derived); 17 U.S.C. § 103(a) ("The subject matter of copyright as specified by section 102 includes compilations and derivative works, but protection for a work employing preexisting material in which copyright subsists does not extend to any part of the work in which such material has been used unlawfully"); *TMTV, Corp. v. Mass Productions, Inc.*, 345 F.Supp.2d 196, 208 (D.P.R.2004).

Turning to the present case, the Court finds that *Noche de Fiesta* is a derivative work

17

of the underlying copyrighted musical composition *Nena Linda*. As such, *Noche de Fiesta* can be protected by the Copyright Act only if there was lawful use of the preexisting material utilized. *See* 17 U.S.C. § 103(a); *Palladium Music, Inc.*, 398 F.3d at 1197; *Mulcahy*, 386 F.3d at 852; *Dam Things from Denmark*, 290 F.3d at 563. The record at trial clearly established that Torres failed to obtain any license or permission to use *Nena Linda* from Raldy Vasquez or any other individual duly authorized to license the use of *Nena Linda*. Thus, a reasonable jury could come to but one conclusion: Torres did not lawfully use the preexisting material from *Nena Linda* when he created *Noche de Fiesta*. Therefore, Torres' copyright in *Noche de Fiesta* is invalid and his infringement claims as to this song cannot lie.

### B.

### Implied License

"Usually transfers of copyright must be made in writing, 17 U.S.C. § 204(a), but this requirement does not apply to nonexclusive licenses where ownership of the copyright is not transferred. A copyright owner may grant such nonexclusive licenses orally, or they may be implied from conduct which indicates the owner's intent to allow a licensee to use the work. Uses of the copyrighted work that stay within the scope of a nonexclusive license are immunized from copyright infringement suits." *John G. Danielson, Inc. v. Winchester-Conant Properties, Inc.*, 322 F.3d 26, 40 (1st Cir.2003).

In the verdicts against Antonio Rivera, the jury found that Torres had granted implied licenses to Antonio Rivera to commercially exploit the songs *Noche de Fiesta* and *Bebo por Ti*. The jury, however, found that Torres had not granted an implied license to Antonio Rivera to grant others the rights to commercially exploit these songs. Defendant Antonio Rivera argues that the jury's finding that he had an implied license as to both *Noche de Fiesta* and *Bebo por Ti* precludes a finding of copyright infringement against him. Torres in turn contends that the jury's finding that Antonio Rivera had a nonexclusive implied license does not immunize Antonio Rivera from liability for the 1994 HMS Records phonorecord *Bailando y Gozando con Gozadera* and the two *Merenhits '94* phonorecords released by J & N Records because (1) these phonorecords were beyond the scope of the implied license and (2) Antonio

05/25/2006 13:15 FAX 212 687 8710     BORSHEIN and LUR&FLA     Case 1:06-cv-00619-CM-MDF     Document 18-2     Filed 06/20/2006     Page 30 of 36     ⦿021/027

Case 3:02-cv-01728-HL     Document 488     Filed 05/24/2006     Page 18 of 24

18

Rivera is liable under theories of vicarious and contributory infringement.

No party challenges the jury's finding that Antonio Rivera had an implied license to commercially exploit *Noche de Fiesta* and *Bebo por Ti* on the 1993 Centro Records phonorecord *Bailando y Gozando con Gozadera* which was released exclusively in Puerto Rico. The parties also do not contest the jury's finding that Antonio Rivera did not have the authority to grant others the rights to commercially exploit these songs. The conflict centers on whether Antonio Rivera's implied license to exploit *Noche de Fiesta* and *Bebo por Ti* extended to the United States release of *Bailando y Gozando con Gozadera* in 1994 and whether Antonio Rivera is vicariously or contributorily liable for J & N Records' infringement of *Noche de Fiesta* on the two *Merenhits* '94 phonorecords. The relevant facts are undisputed. Antonio Rivera directly commercially exploited *Noche de Fiesta* and *Bebo por Ti* by producing both the 1993 Centro Records phonorecord *Bailando y Gozando con Gozadera* and the 1994 HMS Records phonorecord *Bailando y Gozando con Gozadera*. Antonio Rivera also sold the master of the sound recording that he had produced of Gozadera to J & N Records for a one-time fee of $10,000.00. Subsequently, in 1994, J & N Records released a compilation album entitled *Merenhits '94*. Then in 1999, J & N Records released an anniversary phonorecord with the same title of *Merenhits '94*. Both *Merenhits '94* albums contain the song *Noche de Fiesta* performed by Gozadera.

Construing the facts in the light most favorable to the jury verdict, the Court finds that Torres granted Antonio Rivera an implied license to exploit *Noche de Fiesta* and *Bebo por Ti* on not only the 1993 Centro Records phonorecord *Bailando y Gozando con Gozadera*, but also on the 1994 HMS Records phonorecord of *Bailando y Gozando con Gozadera*. The facts are clear that Torres wanted and intended that his songs *Noche de Fiesta* and *Bebo por Ti* be distributed internationally by Antonio Rivera and that he knew that *Bailando y Gozando con Gozadera* was going to be commercially released and distributed in both Puerto Rico and the continental United States. The record is devoid of any facts which would permit a reasonable jury to infer that Torres intended that Antonio Rivera commercially exploit, and consequently effect distribution of *Noche de Fiesta* and *Bebo por Ti* – as appearing on the album *Bailando*

19

*y Gozando con Gozadera*– in Puerto Rico exclusively, and not in the United States. Plaintiff's attempt to derive such a distinction from the jury's verdict is wholly unfounded.

Thus, even if Torres held valid copyrights in *Noche de Fiesta* and *Bebo por Ti*, Torres' claims as to the two *Bailando y Gozando con Gozadera* phonorecords are precluded because the uses of the songs on these phonorecords were squarely within the scope of the implied license bestowed upon Antonio Rivera by Torres. *See John G. Danielson, Inc.*, 322 F.3d at 40. Therefore, Torres' copyright infringement action cannot lie for these albums.[28] Moreover, the practical affect of this ruling is that Torres' claims as to the song *Bebo por Ti* are foreclosed because the song appeared only on the *Bailando y Gozando con Gozadera* phonorecords and not the *Merenhits '94* phonorecords.

The Court now turns to the issue of whether Antonio Rivera could be found liable for infringement of *Noche de Fiesta* for its reproduction on the 1994 and 1999 *Merenhits '94* phonorecords. It is uncontroverted that Antonio Rivera did not directly participate in the development, production, or distribution of these phonorecords. While conceding that Antonio Rivera did not directly infringe Torres' copyright in *Noche de Fiesta* through the *Merenhits '94* phonorecords, Torres argues that Antonio Rivera is liable for copyright infringement for

---

[28] As discussed at the outset, Plaintiff's claims as to the 1993 Centro Records phonorecord *Bailando y Gozando con Gozadera* were dismissed as time-barred upon defendants' motion for judgment as a matter of law made pursuant to Rule 50(a)(1) at the conclusion of Plaintiff's case. No party has challenged this ruling. The Court notes that even if Torres had valid copyrights for *Noche de Fiesta* and *Bebo por Ti* and if Antonio Rivera had failed to demonstrate that he possessed an implied license to exploit the works on the 1994 HMS Records phonorecord *Bailando y Gozando con Gozadera*, Plaintiff's claims as to this phonorecord would be time-barred. Section 507(b) of the Copyright Act provides that "no civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b). "A cause of action for copyright infringement accrues when one has knowledge of a violation or is chargeable with such knowledge." *Roley v. New World Pictures, Ltd.*, 19 F.3d 479, 481 (9th Cir.1994). The evidence at trial clearly established that Torres knew and expected that *Bailando y Gozando con Gozadera* would be commercially released and distributed in the continental United States as early as 1993 but failed to exercise reasonable diligence to inquire into the possible existence of an infringement claim. Notwithstanding, Torres did not commence his infringement action until May 15, 2002. Accordingly Plaintiff's claims concerning the 1994 HMS Records phonorecord *Bailando y Gozando con Gozadera* are time-barred under 17 U.S.C. § 507(b).

05/25/2008 13:19 FAX 212 587 6710          BURSHEIN and LUR&FLA          @023/027

20

these albums under theories of vicarious and contributory infringement.

The theory of vicarious infringement "allows imposition of liability when the defendant profits directly from the infringement and has a right and ability to supervise the direct infringer, even if the defendant initially lacks knowledge of the infringement."*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 125 S.Ct. 2764, 2776 & n.9 (2005). The Court need not tarry. The record does not contain any indication, much less any evidence, that Antonio Rivera had any right or ability to supervise any activity of J & N Records or any other entity or person responsible for the production or distribution of either the 1994 or 1999 versions of *Merenhits '94*. Thus, Antonio Rivera cannot be liable under a vicarious infringement theory.

"Similarly, one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer." *Gershwin Pub. Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d. 1971); *Metro-Goldwyn-Mayer Studios Inc.*, 125 S.Ct. at 2776. Plaintiff alleges that Antonio Rivera materially contributed to J & N Records' copyright infringement by selling J & N Records a master sound recording containing *Noche de Fiesta* (and *Bebo por Ti*) without authorization from Torres and with the knowledge that the songs would be reproduced and distributed in various albums in the United States. The Court rejects this argument for two reasons.

First, it is uncontradicted that Antonio Rivera was the copyright owner of the sound recording that it sold to J & N Records. "The Copyright Act defines sound recordings as 'works that result from the fixation of a series of musical, spoken, or other sounds, but not including the sounds accompanying a motion picture or other audiovisual work, regardless of the nature of the material objects, such as disks, tapes, or other phonorecords, in which they are embodied.' 17 U.S.C. § 101. Sound recordings and their underlying musical compositions are separate works with their own district copyrights. *See* 17 U.S.C. § 102(a)(2), (7)." *Palladium Music, Inc. v. EatSleepMusic, Inc.*, 398 F.3d at1197 n.3. As Antonio Rivera, and not Torres, owned the copyright in the sound recording, he was free to sell it to J & N Records

21

without Torres' permission. Second, there is no evidence in the record, and no evidence can be inferred, that Antonio Rivera knew or should have known that J & N Records would utilize, publish, and distribute *Noche de Fiesta* without first obtaining the proper authorization from Torres. In fact, there is no evidence that Antonio Rivera even knew about the *Merenhits '94* phonorecords before Torres filed the present action. After reviewing the record and drawing inferences from it in the light most favorable to the verdict, the Court concludes that the evidence does not support a finding of contributory infringement against Antonio Rivera.

## C.

### Damages

Finally, even assuming Torres had succeeded on his copyright infringement claims—which he did not— the evidence in the record does not support the amount of damages awarded by the jury. A prevailing plaintiff in an infringement action "is entitled to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing actual damages." 17 U.S.C. § 504(b). "Actual damages are generally calculated with reference to the loss in the fair market value of the copyright, often measured by the profits lost as a result of the infringement." *Data Gen. Corp.*, 36 F.3d at 1170. "In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 17 U.S.C. § 504(b). Calculation of damages under section 504(b) does not require mathematical precision. *Bruce v. Weekly World News, Inc.*, 310 F.3d 25, 31 (1st Cir.2002). However, damages awards must not be "unduly speculative." *Id.* (quoting *Data Gen. Corp*, 36 F.3d at 1171; *Bus. Trends Analysts, Inc. v. Freedonia Group, Inc.*, 887 F.2d 399, 404 (2d Cir.1989); *Stevens Linen Assocs., Inc. v. Mastercraft Corp.*, 656 F.2d 11, 14 (2d Cir.1981)).

In the case at bar, the jury awarded Torres $400,000.00 of damages against J & N Records, and damages in the amount of $200,000.00 ($100,000.00 for the song *Noche de Fiesta* and $100,000.00 for the song *Bebo por Ti*) against Antonio Rivera. After reviewing

22

the record, with a view of the evidence in the light most favorable to Torres, the Court finds that these damages awards cannot be substantiated.

The bulk of the evidence on damages submitted at trial concerned only the 1993 Centro Records phonorecord *Bailando y Gozando con Cozadera*, which was dismissed upon defendants' motions for judgment as a matter of law at the close of Plaintiff's case and is not implicated in the post-trial motions presently before the Court. As to the other three phonorecords, the evidence is markedly limited. The evidence of damages is confined to trial testimony by Juan Hildago and two one-page sales reports from EMI Music, N.A. and Sony Discos, Inc.[29] None of this evidence supports a showing of damages attributable to Antonio Rivera.

Moreover, the evidence offered to support a damages verdict against J & N Records is meager. An exceptionally liberal and generous estimation of J & N Records' gross profits as to *Noche de Fiesta* –which does not account for any deductible expenses– would not amount to more than \$23,743.81 (\$11,550.00 for the 1994 *Bailando y Gonzando con Gozadera*;[30]

---

[29] *See* Joint Exs. I & II. By stipulation between the parties these sales reports could not be used against Antonio Rivera. Additionally, this documentary evidence does not directly show gross profits or revenues for J & N Records, rather it provides sales information for EMI Music, N.A. and Sony Discos, Inc. and thus does not adequately satisfy Torres' burden to prove nonduplicative profits. Moreover, Juan Hildago's testimony concentrated on the profits of his company, J & N Records. His testimony did not point to any gross profits related to Antonio Rivera.

[30] According to the testimony of Juan Hildago, approximately 6,000-7,000 copies of the 1994 HMS Records phonorecord *Bailando y Gozando con Gozadera* were sold. The wholesale cost of copies of these records were \$6.50-\$7.50. Juan Hildago testified that J & N Records profits were reduced by publication, distribution, album cover, and pressing costs. However, estimate figures for these deductible expenses were not provided. The phonorecord contains nine tracks: track one is *Noche de Fiesta*; track seven is *Bebo por Ti*; and track nine contains a remix of *Noche de Fiesta*. Thus, 1/3 or 33% of the phonorecord contains Plaintiff's works (including the remix). Therefore, at an absolute maximum, gross profits attributable to Plaintiff's works for this album were \$17,325.00 (7,000 x \$7.50 = \$52,500.00 x 0.33 = \$17, 325.00), with only \$11,550.00 of that amount for *Noche de Fiesta*.

05/25/2006 13:16 FAX 212 687 8710   BOR&SHEIN and LUR&FLA   Case 1:06-cv-00619-CM-MDF   Document 18-2   Filed 06/20/2006   Page 35 of 36   @026/027

Case 3:02-cv-01728-HL    Document 488    Filed 05/24/2006    Page 23 of 24

23

$11,954.25 for the 1994 *Merenhits '94*;[31] and $289.56 for the 1999 *Merenhits '94*.[32]). Further, Plaintiff did not provide any evidence which would support an inference of Torres' lost profits or lost market value.

Accordingly, the Court concludes that there is no sufficient evidentiary basis to support the jury's damages awards.

## CONCLUSION

For the aforementioned reasons, both Defendant Antonio Rivera's and Defendant J & N Records' renewed motions for judgment as a matter of law are **granted**. An amended partial judgment dismissing Plaintiff Fernando Torres Negrón's claims as to the musical works *Noche de Fiesta* and *Bebo por Ti* shall be entered accordingly.

---

[31] Juan Hildago testified that J & N Records was paid $20,000.00- $30,000.00 by EMI for the license for the 1994 *Merenhits '94* phonorecord. Sales reports for EMI indicate that 16,478 compact discs and cassette tapes of this album were shipped and not returned. Testimony was heard that the wholesale price of these compact discs or cassette tapes were $7.50-$8.34. Juan Hildago testified that some compact discs and cassettes were sold at a discount, but did not provide an amount. The phonrecord contains fourteen tracks, one of which is *Noche de Fiesta*. Thus, 1/14 or 7.14% of the phonorecord contains Plaintiff's works. Therefore, at the very most, the maximum amount of profits attributable to *Noche de Fiesta* was $11,954.25 (16,478 x $8.34 = $137,426.52 + $30,000 = $167,426.52 x 0.0714 = $11,954.25) ($2,142.00 from the license and $9,812.25 from the sale of compact discs and cassette tapes).

[32] Sales reports from Sony Discos indicates that a total of 798 copies were distributed of the 1999 *Merenhits '94* phonorecord. This number includes distribution from January 1999 through September 2002. Torres assigned all of his rights in *Noche de Fiesta* in May 2001 to Sabrosos Publishing, Inc. Therefore, he would not have standing to recover profits accrued for this album after May 2001. According to uncontested testimony by Juan Hildago, the 1999 *Merenhits '94* album distributed only approximately 400 copies, with total net sales of 314 and gross profits of $1,997.00. Juan Hildago further testified that J & N Records received only 14.5% of this amount, which would be $289.56. Juan Hildago also testified that these profits were reduced by marketing, distribution, and other expenses, but did not provide an amount.

**IT IS SO ORDERED.**

San Juan, Puerto Rico, May 24, 2006.

. S/ HECTOR M. LAFFITTE
United States District Judge