UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
FELIPE ROBLES VASQUEZ p/k/a RALDY
VASQUEZ and CAMPESINO ENTERTAINMENT      06 Civ. 0619(CM)
GROUP, INC.,


                        Plaintiffs,


        -against-


FERNANDO TORRES NEGRON, TOMARA
SOSA-PASCUAL and JULIO DE LA
ROSA-RIVE,


                   Defendants.
----------------------------------X


                  PRETRIAL ORDER


        The parties having conferred among themselves and with the

Court pursuant to Fed.R.Civ.P. 16, the following statements,

directions and agreements and are adopted as the Pretrial Order

herein.


                1.   NATURE OF THE CASE

Plaintiffs' Version

        This is an action for copyright infringement.  Dk. No. 1.

        Plaintiffs claim that Defendant Fernando Torres-Negron

("Torres") infringed the musical composition entitled "Nena

Linda" authored and composed by Plaintiff Felipe Robles Vasquez

                              1

("Vasquez") in 1992, before Defendant Torres wrote "Noche de Fiesta". Plaintiffs allege that Defendant Torres infringed "Nena Linda" by exploiting the song entitled "Noche de Fiesta" through ASCAP and collecting and retaining ASCAP royalties on "Noche de Fiesta". Plaintiffs allege that Defendant Torres additionally infringed "Nena Linda" by obtaining and retaining payment for use of "Noche de Fiesta" on phonorecords in settlements of lawsuits he filed in Puerto Rico based upon his claim that he was the author and copyright owner of that work.

Plaintiffs seek statutory damages and actual damages and profits based upon the money Torres was paid based upon his claims to be the copyright owner of "Noche de Fiesta".

Plaintiffs request a permanent injunction enjoining Defendant's further exploitation of the infringing song entitled "Noche de Fiesta", assertion of any right, title or interest in that song and collection of any money based upon the use or other exploitation of that song.

Plaintiffs request a declaratory judgment that Torres infringed on "Nena Linda" and that "Noche de Fiesta" is an unauthorized derivative work based upon "Nena Linda".

Plaintiffs seek costs, attorney's fees and interest.


Defendant's Version

Defendant Torres-Negrón denies he infringed "Nena Linda."

2

Torres wrote the lyrics to "Noche de Fiesta." Torres never commercially released the song *Noche de Fiesta*. Torres never received any money for the commercially released version of *Noche de Fiesta*. The original musical director and arranger for the first commercially released version of *Nena Linda* and *Noche de Fiesta* was Israel Casado. The two songs were commercially released by essentially the same band which included Israel Casado, Joel Sanchez, Jose Diaz and Elias Lopez.

The two songs, according to plaintiffs own expert, are substantially dissimilar in many aspects.

Defendant believes the complaint should be dismissed.


## II.  JURY/NONJURY

No jury is requested. Estimated length of trial is two days.

Defendant Torres believes that he is entitled to a jury because the standard of review of a musical copyright case is the ordinary listener. Plaintiffs object and disagree that this is a jury case and note that any right to a jury trial has been waived. Fed.R.Civ.P. 38(d).

### III.  STIPULATED FACTS

#### The Parties

1.  Plaintiff Felipe Robles Vasquez p/k/a Raldy Vasquez ("Vasquez") is an individual residing in Santo Domingo, Dominican

Republic.

2.    Plaintiff Campesino Entertainment Group, Inc.
("Campesino") is a corporation organized and existing under the
laws of the State of New York with offices in Pomona, New York
and is engaged in the business of exploiting sound recordings and
musical compositions.

3..  Defendant Fernando Torres Negron ("Torres") is an
individual residing in Aibonito, Puerto Rico.

<u>Jurisdiction and Venue</u>

4.    Jurisdiction of this action is founded upon 28 U.S.C.
§§1331, 1338(a) and 1338(b).

5.    Venue of the claims in this action is founded upon 28
U.S.C. §§ 1391(b) and 1400(a).

<u>The Claim - Liability and Damages</u>

6.    Plaintiff Vasquez composed the words and music to a
musical composition entitled "Nena Linda" in 1992.

7.    In 1992 "Nena Linda" was released as one of the
selections on a commercially released audio cassette recording
entitled Comercial.

8.    In 1992 and 1993 "Nena Linda" was played on the radio in
Puerto Rico.

9.    In 1993 the album entitled Comercial, containing "Nena

4

Linda", was re-released and commercially distributed and sold in compact disc format.

10.  In 1992 and 1993, Comercial was distributed and sold commercially in the Dominican Republic and Puerto Rico.

11.  Plaintiff Vasquez registered the words and music of the musical composition entitled "Nena Linda" ("Nena Linda") with the United States Copyright Office in November 2005.

12.  Plaintiff Vasquez has complied in all respects with the registration and deposit requirements of the United States Copyright Act with respect to "Nena Linda".

13.  Plaintiff Vasquez has been issued United States Certificate of Registration of Copyright PA 1-267-305 which includes and covers the musical composition entitled "Nena Linda".

14.  Plaintiff Vasquez did not grant any rights, title or interest in and to "Nena Linda" to Defendant Torres or anyone acting on his behalf or for his benefit.

15.  Plaintiff Vasquez did not grant any rights, title or interest to Defendant Torres or anyone acting on his behalf or for his benefit to exploit or use "Nena Linda" or any portion thereof in any manner or by any means at any time.

16.  Plaintiff Vasquez did not grant any rights, title or interest in and to "Nena Linda" to Defendant Torres or anyone acting on his behalf or for his benefit to administer "Nena

Linda" at any time.

17.  Plaintiff Vasquez did not grant any rights, title or interest to Defendant Negron or anyone acting on his behalf or for his benefit to collect any money or royalties due to or resulting from the use and/or exploitation of "Nena Linda" or any portion thereof at any time.

18.  Plaintiff Vasquez did not grant any rights, title or interest to Defendant Torres or anyone acting on his behalf or for his benefit to license or grant licenses or authorizations to third parties to use or exploit "Nena Linda" or any portion thereof at any time.

19.  Prior to commencement of this action, Plaintiff Vasquez notified Defendant Torres of his rights in "Nena Linda" in writing.

20.  Prior to commencement of this action, Plaintiff Vasquez provided Defendant Torres with a copy of his United States copyright registration covering "Nena Linda" and a copy of a recording containing "Nena Linda".

21.  In October 2005, by written agreement with Vasquez, Campesino became the exclusive world wide administrator of the musical composition and sound recording of "Nena Linda" ("Nena Linda Agreement").

22.  Under the Nena Linda Agreement, Campesino is authorized exclusively to license "Nena Linda" and to collect all money and

6

royalties earned, generated or produced by the use and exploitation of "Nena Linda" in return for a fee.

23. Campesino is authorized by the Nena Linda Agreement to commence and maintain legal actions and proceedings to enforce the copyright in "Nena Linda" and to collect money and royalties from the use or exploitation of "Nena Linda".

24. Defendant Torres has received money based upon the exploitation of the song entitled "Noche de Fiesta".

25. In 1994 Defendant Torres became a member of the American Society of Composers, Artists and Publishers ("ASCAP").

26. ASCAP is a performing rights society that collects and pays royalties to composers and music publishers from public performances of musical compositions.

27. ASCAP is located in New York City, New York.

28. Defendant Torres was paid by and received performance royalties from ASCAP on "Noche de Fiesta".

29. The ASCAP agreement was entered into in 1994 and has not been terminated.

30. Defendant Torres has not requested or demanded that ASCAP to cease or discontinue granting ASCAP licenses covering "Noche de Fiesta".

31. Defendant Torres was paid $900 for royalties for the exploitation of "Noche de Fiesta" in March 1995.

32. Defendant Torres commenced two actions in the United

States District Court for the District of Puerto Rico captioned: Fernando Torres-Negron v. Antonio L. Rivera-Lopez, et. al., 02 Civ. 1728 (HL) (D. Puerto Rico) ("2002 Action") and Fernando Torres-Negron v. J&N Publishing, et. al., 05 Civ. 1216 (JAG) (D. Puerto Rico) ("2005 Action") (collectively hereafter "Puerto Rican Actions").

33.   In the Puerto Rican Actions, Defendant Torres alleged that he was the copyright owner and author of the song entitled "Noche de Fiesta".

34.   Defendant Torres did not write all or any part of "Noche de Fiesta" before "Nena Linda" was authored.

35.   Ruben Canuelas, a neighbor and friend of Defendant Torres, played a cassette of a musical group performing a musical composition ("Cassette") prior to Defendant Torres's writing the words to "Noche de Fiesta".

36.   Defendant Torres listened to the Cassette prior to and during the writing of "Noche de Fiesta" furnished by his friend and neighbor Ruben Canuelas.

37.   At trial of the 2002 Action in February 2006, Defendant Torres testified that he could not categorically deny or dispute that at the time he claims to have written the words to "Noche de Fiesta" that Cassette he listened to did not contain "Nena Linda".

38.   Defendant Torres does not categorically deny or dispute

that he did not listen to or hear "Nena Linda" prior to writing the words to "Noche de Fiesta".

39.   In 2005 and 2006, Defendant Torres entered into settlement agreements with certain named party defendants in the 2002 Action.

40.   In the 2002 Action, Defendant Torres asserted claims for copyright infringement and moral rights violations against EMI-Latin, an unincorporated division of Capitol Records, Inc., based upon the song entitled "Noche de Fiesta".

41.   Trial of the 2002 Action was scheduled for June 2005.

42.   In May 2005, EMI-Latin paid Defendant Torres $80,000 in settlement and for release of his claims based upon "Noche de Fiesta" in the 2002 Action.

43.   In the settlement agreement between Defendant Torres and EMI Latin, Defendant Torres warranted and represented that he owned all right, title and interest in and to the musical composition "Noche de Fiesta" and released his claims against EMI-Latin.

44.   In the 2002 Action Defendant Torres asserted claims for copyright infringement and moral rights violations against Sony Discos Inc. based upon exploitation of the songs entitled "Noche de Fiesta" and "Triste Final".

45.   In February 2006, before the commencement of a jury trial in the 2002 Action, Defendant Torres and Sony Discos Inc.

9

entered into a written settlement agreement.

46.    In February 2006, Sony BMG Music Entertainment US Latin LLC, formerly known as Sony Discos Inc. ("Sony") paid Defendant Torres $55,000 in settlement and for release of his claims in the 2002 Action.

47.    In the settlement agreement between Defendant Torres and Sony, Defendant Torres warranted and represented that he was the sole author of "Noche de Fiesta" and released his claims against Sony.

48.    In May 2005, Universal Music & Video Distribution Corp. ("Universal") paid Defendant Torres $15,000 in settlement and for release of his claims in the 2002 Action and all claims concerning the recording entitled "Jomami: Merenhouse Mix" containing "Noche de Fiesta".

49.    In the settlement agreement between Defendant Torres and Universal, Defendant Torres warranted and represented that he was the sole and lawful owner of all rights, titles and interests in "Noche de Fiesta" and released his claims against Universal.

50.    Defendant Torres has never paid Plaintiffs Vasquez or Campesino all or any portion of the money he received from ASCAP, Universal, EMI-Latin or Sony.

51.    Defendant Torres's United States Copyright Registration No. Pau 2-623-262, covering "Noche de Fiesta", states that he is the author of the "words and music (rhytm)" of "Noche de Fiesta".

10

52.   Defendant Torres's United States Copyright Registration, No. Pau 2-623-262 covering "Noche de Fiesta", states "n/a", which means inapplicable, in the derivative work section.

53.   Torres did not deposit as his deposit in the Copyright Office any written notations or transcriptions of the music in "Noche de Fiesta".

54.   The settlements with Universal, EMI-Latin and Sony were confidential and the terms of these settlements were not publicly disclosed prior to the commencement of this action.

IV.   PARTIES' CONTENTIONS

A.   Plaintiffs' Proposed Findings of Fact (Non-Jury Trial)

Liability - Copyright Infringement

In addition to the Stipulated Facts above:

55.   Before Ruben Canuelas played the Cassette for Defendant Torres, he told Defendant Torres to write the words that would carry the tune and same rhythm of the song on the Cassette.

56.   At trial of the 2002 Action in February 2006, Defendant Torres could not categorically deny or dispute that prior to or

11

at time he claims to have written the words to "Noche de Fiesta"
he had not listened to or heard "Nena Linda".

57.  The ""Noche de Fiesta" is in A minor, the same key as
"Nena Linda".

58.  The structure and form of "Noche de Fiesta" is virtually
identical to that of "Nena Linda".

59.  The musical notes of the melody in "Noche de Fiesta" are
in almost every instance identical to "Nena Linda".

60.  After listening to both "Nena Linda" and "Noche de
Fiesta", the melody of "Noche de Fiesta" is virtually identical
to the melody of "Nena Linda".

61.  The musical notations containing a transcription of the
melodies of "Nena Linda" and "Noche de Fiesta" show that the
melodies are virtually identical.

62.  Although the lyrics are different in "Nena Linda" and
"Noche de Fiesta", both are stated in two parts, each preceded by
an instrumental introduction.

63.  To an ordinary listener of "Nena Linda" and "Noche de
Fiesta", the melodies are identical except for minor differences
in order to accommodate the different lyrics and differences in
tempo.

64.  The similarities are so striking that there is no
likelihood of coincidence or independent creation.

65.  Defendant Torres did not obtain any permission or

12

authorization to use the melody of "Nena Linda" from Plaintiff Vasquez or Plaintiff Campesino or anyone else.

66.  Defendant Torres exploited "Noche de Fiesta" by granting ASCAP the right to license "Noche de Fiesta" which was based on the melody of "Nena Linda".

67.  Defendant Torres was paid royalties from ASCAP based upon "Noche de Fiesta" containing the melody of "Nena Linda".

68.  Defendant Torres did not pay any portion of such ASCAP royalties to Plaintiff Vasquez or his authorized agents or representatives.

69.  In March 1995 Defendant Torres was paid royalties by Antonio Rivera of $900 based upon the use of "Noche de Fiesta" in a commercially released recording entitled "Bailando y Gozando con...Gozadera".

70.  Defendant Torres did not pay any portion of such royalties to Plaintiff Vasquez or his authorized agents or representatives.

71.  Defendant Torres was issued a United States Copyright in "Noche de Fiesta" on January 31, 2002 based upon his claim as author of the "words and music (rhthm)".

72.  Defendant Torres was assisted and counseled by Tamara Sosa Pascual, Esq. and his authorzed agent, in the preparation and filing for copyright over "Noche de Fiesta".

73.  Defendant Torres's claim in his copyright registration

13

as author and copyright owner was to the rhythm only.

74.  Defendant Torres did not acknowledge or state in his application for copyright of "Noche de Fiesta" that the melody was the melody of "Nena Linda".

75.  Defendant Torres did not state in his application for copyright of "Noche de Fiesta" that "Noche de Fiesta" was a derivative work based upon "Nena Linda", a preexisting work.

76.  Defendant Torres did not state in his application for copyright of "Noche de Fiesta" that he had the permission or authority of the author of "Nena Linda" to use the melody of "Nena Linda in "Noche de Fiesta".

77.  In the Puerto Rican Actions, Defendant Torres is represented by Tamara Sosa Pascual, Esq.

78.  Defendant Torres knew of Comercial, "Nena Linda" and Plaintiff Vasquez's claims as author and copyright owner of "Nena Linda" at least as early as December 2005.

79.  At no time has Defendant Torres amended or corrected his Copyright Registration in "Noche de Fiesta" to acknowledge or state that "Noche de Fiesta" is a derivative work based upon the melody of "Nena Linda".

80.  At no time has Defendant Torres amended or corrected his Copyright Registration in "Noche de Fiesta" to acknowledge or state that he had the permission or authority of the author of "Nena Linda" to use the melody of "Nena Linda" in "Noche de

14

Fiesta".

81.   Defendant Torres intentionally and knowingly did not state or disclose in his application for copyright of "Noche de Fiesta" that "Noche de Fiesta" was based on the melody of "Nena Linda" and that he did not have the permission of Plaintiff Raldy Vasquez or his authorized agents or representatives to use the melody of "Nena Linda" in "Noche de Fiesta".

82.   After being informed of Plaintiff Vasquez's claims prior to commencement of this action and again in the Complaint in this action, Defendant Torres intentionally and knowingly did not amend his copyright registration for "Noche de Fiesta" to state that "Noche de Fiesta" was based on the melody of "Nena Linda", that "Noche de Fiesta" was a derivative work or that he had the permission or authority of Plaintiff Raldy Vasquez or his authorized agents or representatives to use the melody of "Nena Linda" in "Noche de Fiesta".

83.   In the 2002 Action, Defendant Torres alleged that he did not discover or learn of the infringement of "Noche de Feista" sued upon until 2001.

## Damages

### A.   Statutory Damages

84.   Plaintiffs are entitled to statutory damages under 17 U.S.C. §504(c) based upon Defendant Torres's infringement of

Plaintiff Vasquez's copyright in "Nena Linda".

85.  Defendant Torres's infringement was willful.

86.  Plaintiffs are entitled to statutory damages for each separate infringement.

87.  Defendant Torres's exploitation of "Noche de Fiesta" through ASCAP infringed and continues to infringe Plaintiff Vasquez's copyright in "Nena Linda".

88.  Defendant Torres entered into settlement agreements with Universal, EMI-Latin and Sony, respectively, based upon the exploitaiton of "Noche de Fiesta" in which he warranted and represented that he was the author of "Noche de Fiesta" and released his claims against them for exploitation of "Noche de Fiesta".

89.  Defendant Torres was paid, collected and retained the payments made under those agreements, respectively.

90.  Defendant Torres was paid a total of $150,006.90 since January 1, 2003 by ASCAP, Universal, EMI-Latin and Sony.

91.  Plaintiffs are entitled to statutory damages for the each infringement in the sum of $30,000, for a total of $120,000.00.

92.  Based upon Defendant Torres's willful infringements, Plaintiffs are entitled to be awarded the sum of $150,000.00 on each separate infringement for a total of $600,000.

B.   Actual Damages And Profits

93.   Plaintiffs are entitled to actual damages and profits as a result of Defendant Torres's infringements pursuant to 17 U.S.C. §504(b).

94.   After January 2003, Defendant Torres received from ASCAP ($6.90), Universal ($15,000), EMI-Latin ($80,000) and Sony ($55,000) for a total of $150,006.90.

95.   None of this money was paid to Plaintiffs.

96.   Plaintiffs are entitled to an award of actual damages and profits in the sum of $150,006.90.


Injunctive Relief

97.   Pursuant to 17 U.S.C. §502, Plaintiffs Vasquez and Campesino are entitled to a permanent injunction against Defendant Torres, his agents, representatives and all persons and entities acting or purporting to act on his behalf permanently restaining and enjoining them from directly or indirectly exploiting, licensing and/or using in any manner or by any means, procedure, device or method now known or hereafter developed, created or invented anywhere in the universe the work entitled "Noche de Fiesta" and any and all portions thereof and from collecting, receiving, accepting and/or retaining, directly or indirectly, any and all money, revenue, income and all other

17

consideration for or in connection with the exploitation,
licensing and/or use of the work "Noche de Fiesta".  See attached
order and judgment.

<u>Declaratory Relief</u>

98.   Plaintiffs are entitled to a declaratory judgment that
"Noche de Fiesta" infringes upon "Nena Linda" and that "Noche de
Fiesta" is an unauthorized derivative work based upon "Nena
Linda".

<u>Costs and Attorney's Fees</u>

99.   Plaintiffs are entitled to recovery and an award of full
costs and attorney's fees of this action.

<u>Interest</u>

100.   Plaintiffs are entitled to an award of interest.

<u>Plaintiffs' Proposed Conclusions Of Law</u>

<u>Liability - Copyright Infringement</u>

101.   A plaintiff in a copyright infringement action bears
the burden of proving: (i) ownership of a valid copyright and
(ii) copying of original portions of his work.  <u>Feist Pub. Inc.
v. Rural Tel. Service Co.</u>, 499 U.S. 340, 349, 361, 111 S.Ct.

1282, 1289, 113 L.Ed.2d 358 (1991) ("To establish [copyright] infringement, two elements must be proven: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." ).

102.  Copyright ownership vests initially in the author or authors of a work. 17 U.S.C. § 201(a).

103.  As a general rule, "the author is a party who actually creates the work, that is, the person who translates an idea into a fixed tangible expression entitled to copyright protection." Community for Creative Non-Violence v. Reid, 490 U.S. 730, 737, 109 S.Ct. 2166, 104 L.Ed.2d 811 (1989); Burrows Giles Lithographic Co. v. Sarony, 111 U.S. 53, 58, 4 S.Ct. 279, 281, 28 L.Ed. 349 (1884) (definition of author as "originator" "creator").

104.  Plaintiff Vasquez has established by a preponderance of the evidence ownership of a valid copyright in "Nena Linda" by presenting Copyright Registration No. PA 1-267-305 and his uncontradicted testimony that he authored the words and music of Nena Linda in 1992 before "Noche de Fiesta" was allegedly written.  Id.; 17 U.S.C. §410(c) (evidentiary weight of copyright certificate); Jorgensen v. Epic/Sony Records, 351 F.3d 46, 51 (2d Cir. 2003) ("A certificate of registration from the United States Register of Copyrights constitutes prima facie evidence of the valid ownership of a copyright.").

19

105.    Plaintiff Vasquez has established by a preponderance of the evidence through his own testimony as to composing "Nena Linda" and the portions copied from "Nena Linda", expert testimony and a comparison of "Noche de Fiesta" and "Nena Linda", that the melodies of "Noche de Fiesta" and "Nena Linda" are virtually identical and that "Noche de Fiesta" copies the melody of "Nena Linda".  See *Torres- Negron v. Rivera*, 433 F.Supp.2d 204, 216 (D. Puerto Rico) (finding after trial that "*Noche de Fiesta* and *Nena Linda* have the same melody, tone, structure and key of A minor and differ only in their wording and rhythm.... the similarities between the songs are comprehensive and are not limited to certain portions or segments of the songs, but are present throughout the entirety of the songs.").

106.    After listening to "Nena Linda" and "Noche de Fiesta", the Court concludes that to the "ordinary listener" the melodies of "Nena Linda" and "Noche de Fiesta" are indistinguishable. Rivera, supra. 433 F.Supp.2d at 216 ("An ordinary person of reasonable attentiveness would, upon listening to both *[Nena Linda* and *Noche de Fiesta]* conclude that the songs were identical except for differences in tempo and lyrics."). See Johnson v. Gordon, 409 F.3d 12, 18 (1st Cir. 2005) ("The 'ordinary observer' test or, in a musical milieu, the 'ordinary listener' test, supplies a framework for gauging substantial similarity.  Under that metric, the defendant's work will be said to be

20

substantially similar to the copyrighted work if an ordinary
person of reasonable attentiveness would, upon listening to both,
conclude that the defendant unlawfully appropriated the
plaintiff's protectable expression.... Works can be
substantially similar despite the presence of disparities. The
key is whether "the ordinary observer, unless he set out to
detect the disparities, would be disposed to overlook them, and
regard [the works'] aesthetic appeal as the same." ).

107. The two melodies are so strikingly similar as to
preclude the possibility of coincidence or independent creation.
Rivera, supra. 433 F.Supp.2d at 216 ("The similarities are to
such a degree as to preclude the possibility of coincidence or
independent creation... The songs are simply so strikingly
similar that an average lay observer would be obliged to come to
the inescapable conclusion that *Noche de Fiesta* and *Nena Linda*
are the same song with different words.").

108. In view of the striking similarity and the undisputed
fact that "Nena Linda" was composed before "Noche de Fiesta",
Plaintiffs are not required to prove copying by showing that
Defendant Torres had access to Nena Linda. See Jorgensen,
supra., 351 F.3d at 56. ("We have held that where the works in
question are 'are so strikingly similar as to preclude the
possibility of independent creation, copying may be proved
without a showing of access.'").

21

109.  "Noche de Fiesta" infringes upon "Nena Linda".  17
U.S.C. §501(a) ("Anyone who violates any of the exclusive rights
of the copyright owner...is an infringer of the copyright or
right of the author, as the case may be."); <u>Feist Pub. Inc.</u>,
<u>supra.</u>, 499 U.S. at 361, 111 S.Ct. at 1289.

110.  In addition, Defendant Torres had "access" to "Nena
Linda" because it is undisputed that "Nena Linda" was played on
the radio and sold and distributed commercially in cassette and
compact disc formats as part of a recording entitled "Commercial"
in Puerto Rico in 1992 and 1993, before Defendant Torres claims
that he wrote the lyrics to "Noche de Fiesta".  <u>See</u> <u>Jorgensen</u>,
<u>supra.</u>, 351 F.3d at 51 (Access means that an alleged infringer
had a 'reasonable possibility'-not simply a 'bare possibility'-of
hearing the prior work"); <u>Rivera</u>, <u>supra.</u> 433 F.Supp.2d at 216
("...it is clear that Torres had access to the song *Nena Linda*
before he wrote *Noche de Fiesta* in 1993.  *Nena Linda* had been
commercially released in Puerto Rico on cassette tape in 1992.
Additionally, *Nena Linda* was released on compact disc and played
on the radio in Puerto Rico throughout 1993.").

111.  It was further undisputed that Defendant Torres
listened to a cassette containing musical recordings that he does
not deny and admits may have included "Nena Linda" at the time
that he wrote the lyrics to Noche de Fiesta".  Dk. No. 1
(Complaint) at ¶¶ 26-27; Dk. No. 20 (Answer) at ¶¶ 26-27.

112.    It was undisputed that Defendant Torres never obtained
the consent or authorization of Plaintiffs or anyone acting on
their behalf to use the melody of "Nena Linda".  Dk. No. 1
(Complaint) at ¶¶ 15-19; Dk. No. 20 (Answer) at ¶¶ 15-19.

113.    Thus, even if Defendant Torres wrote the lyrics to
"Noche de Fiesta" as he claims, he did not obtain any rights in
"Noche de Fiesta" and may not exploit it without the express
authorization of Plaintiffs, which he admits he does not and has
never had.  See Zale v. Wadsworth, Div. Of Thompson Corp., 360
F.3d 243, 250 (1st Cir. 2004) ("Since the copyright owner's
bundle of exclusive rights includes the right to prepare
derivative works based upon the copyrighted work,...[the creator
of the derivative work] could not copyright them" without
permission to incorporate the pre-existing material'".); Pickett
v. Prince, 207 F.3d. 402, 405-406 (7th Cir. 2000) (dismissing
claim and holding that plaintiff who added material to
copyrighted work without authorization of copyright owner could
not sue copyright owner even if added material was original).

114.    "Noche de Fiesta" is an unauthorized derivative work
that infringes upon "Nena Linda".  See 17 U.S.C. §101 ("A
'derivative work' is a work based upon one or more preexisting
works...");  17 U.S.C. §103(a) ("The subject matter of copyright
as specified by section 102 includes compilations and derivative
works, but protection for a work employing preexisting material

in which copyright subsists does not extend to any part of the
work in which such material has been used unlawfully."); 17
U.S.C. §106(2) (...the owner of copyright...has the exclusive
rights to do and to authorize...(2) to prepare derivative works
based upon the copyrighted work"); 17 U.S.C. §501(a) ("Anyone who
violates any of the exclusive rights of the copyright owner...is
an infringer of the copyright or right of the author, as the case
may be."); Stuart v. Abend, 495 U.S. 207, 223, 110 S.Ct. 1750,,
1761, 109 L.Ed.2d 184 (1990) ("'It is moreover contrary to the
axiomatic copyright principle that a person may exploit only such
copyright literary material as he either owns or is licensed to
use'...  The aspects of a derivative work added by the derivative
author are that author's property, but the element drawn from the
pre-existing work remains on grant from the owner of the
preexisting work."); Zale, supra., 360 F.3d at 250; Dam Things
from Denmark v. Russ Berrie & Co., Inc., 290 F.3d 548, 563 (3rd
Cir. 2002) ("An author's right to protection of the derivative
work only extends to the elements that he has added to the work,
he cannot receive protection for the underlying work.
Furthermore, if the underlying work is itself protected by
copyright, then he will receive no protection at all; on the
contrary, he is a copyright infringer because in order to create
his work he has copied from the underlying work."); Rivera,
supra., 433 F.Supp.2d at 216-217 ("...the Court finds that Noche

24

*de Fiesta* is a derivative work of the underlying copyrighted musical composition *Nena Linda*....The record at trial clearly established that Torres failed to obtain any license or permission to use *Nena Linda* from Raldy Vasquez or any other individual duly authorized to license the use of *Nena Linda*.").

115.  Plaintiffs are entitled to elect between statutory damages and actual damages and profits.  17 U.S.C. 504(a) (infringer is liable for copyright owner's actual damages and additional profits of the infringer or statutory damages).

116.  Statutory damages may be awarded for sums between $750 and $30,000 per infringement per work and may be increased to not more than $150,000 in the event the court finds that infringement is willful.  17 U.S.C. §504(c).

117.  "To prove 'willfulness' under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendants's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights."  <u>Island Software and Computer Service v. Microsoft Corp.</u>, 413 F.3d 257, 263 (2d Cir. 2005).

118.  Plaintiffs have established that Defendant Torres' infringement is willful.

119.  For example, it was undisputed that prior to commencement of this action between December 12, 2005 and

commencement of this action on January 25, 2006, Plaintiffs
Vasquez and Campesino notified Defendant Torres that of their
rights and that Plaintiff Vasquez was the author and copyright
owner of "Nena Linda", provided a copy of his copyright
certificate in "Nena Linda" and a copy of a recording containing
Nena Linda and that thereafter in February 2006 Defendant Torres
settled his claims based upon "Noche de Fiesta" with Sony and
accepted payment warranting and representing that he was the
author of "Noche de Fiesta" and releasing his claims based upon
exploitation of that song, did not amend his ASCAP agreement to
delete "Noche de Fiesta" or notify ASCAP to stop licensing "Noche
de Fiesta", and did not amend his copyright registration covering
"Noche de Fiesta". Dk. No. 1 (Complaint) at ¶51; Dk. No. 44
(Answer) at ¶51.

120. Plaintiffs are awarded $30,000 per infringement for a
total sum of $120,000, as statutory damages, based upon the
separate infringements of exploiting Noche de Fiesta through
ASCAP (Defendant Torres received royalties of $6.90 since 2003),
settlement with Universal involving Jomami: Merenhouse Hits
containing "Noche de Fiesta" under which Defendant was paid the
sum of $15,000.00, settlement with EMI-Latin involving Merenhits
'94 released in 1994 containing "Noche de Fiesta" under which
Defendant was paid the sum of $80,000.00 and settlement with Sony
involving Merenhits '94 re-released in 1999 containing "Noche de

Fiesta" under which Defendant Torres was paid the sum of
$55,000.00.  See 17 U.S.C. §504(c)(amount of award of statutory
damages discretionary); F.W. Woolworth Co. v. Contemporary Arts,
Inc., 344 U.S. 228, 232, 73 S.Ct. 222, 225, 87 L.Ed. 276 (1952)
(under predecessor 1909 Copyright Act stating and holding that an
award of statutory copyright damages is within "the court's
discretion and sense of justice").

121.  Plaintiffs are awarded the total sum of $600,000
($150,000 for each of the foregoing separate willful
infringements), as statutory damages based upon Defendant Torres'
willful infringement.

122.  Alternatively, 17 U.S.C. §504(b) permits Plaintiffs to
recover actual damages suffered as a result of the infringement
and profits attributable to the infringement which are not
included in computing actual damages.  17 U.S.C. §504(b) ("The
copyright owner is entitled to recover the actual damages
suffered as a result of the infringements and any profits that
are attributable to the infringement and are not taken into
account in computing actual damages.").

123.  "In establishing infringer's profits, the copyright
owner is required to present proof only of the infringer's gross
revenue and the infringer is required to prove his deductible
expenses and elements of profit attributable to factors other
than the copyrighted work."  17 U.S.C. §504(b).

27

124.  Plaintiffs established by a preponderance of the evidence that in 2005 and 2006 Defendant Torres entered into settlement agreements with Universal, EMI-Latin and Sony in which Defendant Torres warranted and represented that he was the author of "Noche de Fiesta" and released his claims for unlawful exploitation against them based upon that song and was paid a total of $150,000.00.

125.  Defendant Torres had the burden to establish any deductible expenses or elements of damages or profits not attributable to "Noche de Fiesta".  17 U.S.C. §504(b) ("the infringer is required to prove his deductible expenses and elements of profit attributable to factors other than the copyrighted work.").

126.  Defendant Torres did not meet his burden to establish any deductible expenses or elements not attributable to "Noche de Fiesta".

127.  Plaintiffs are awarded the sum of $150,006.90 as profits pursuant to 17 U.S.C. 504(b).

<u>Interest</u>

128.  Plaintiffs are awarded interest.  28 U.S.C. §1961(a) ("Interest shall be allowed on any money judgment in a civil case recovered in a district court.").

Case 1:06-cv-00619-CM-MDF    Document 37    Filed 01/19/2007    Page 29 of 60

129.  Interest on statutory damages shall run from May 31, 2005.

130.  Interest on the actual damages and profits shall run as follows: on the date of the Universal, EMI-Latin and Sony Discos settlement agreements, respectively, May 31, 2005 for the Universal and EMI-Latin payments to Defendant Torres, and February 1, 2006 for the Sony payments to Defendant Torres, on the full amount paid under each agreement.

<u>Injunction</u>

131.  Pursuant to 17 U.S.C. §502 permits the court to grant permanent injunctions on such terms as are just to prevent or restrain infringement of copyright.  17 U.S.C. §502(a).

132.  Plaintiffs are entitled to and are granted a permanent injunction enjoining and restraining Defendant Torres and all of his agents, employees, representatives and all other persons and entities of any nature acting or purporting to act on his behalf or for his benefit from: (a) manufacturing, selling, distributing, copying, reproducing, performing, licensing, adapting, modifying, adapting, arranging, exploiting, using, profiting or otherwise benefitting from "Noche de Fiesta" in any manner or way, directly and indirectly through or by any means, process, procedure, invention, creation, device or method or way known or hereafter developed or created throughout the universe,

29

(b) applying for, obtaining and/ or maintaining any copyright registration or the equivalent covering or protecting "Noche de Fiesta", in whole or part, anywhere in the universe and (c) asserting, claiming or maintaining any right, title or interest of any nature in and to "Noche de Fiesta", in whole or part, and any works or things based in whole or part thereon or taken in whole or part therefrom anywhere in the universe, and (d) accepting, collecting, getting, obtaining, receiving, requesting, soliciting, keeping and/or retaining, directly or indirectly, any and all income, money, revenue and/or other consideration of any nature manufacturing, selling, distributing, copying, reproducing, performing, licensing, adapting, modifying, adapting, arranging, exploiting and/or using "Noche de Fiesta", directly or indirectly, in whole or part, anywhere in the universe.  See attached Order and Judgment of Permanent Injunction.

### Declaratory Relief

133.  It is hereby declared and adjudged that "Noche de Fiesta" covered by United States Copyright Registration Pau 2-624-261 infringes upon "Nena Linda" covered by United States Copyright Registration PA 1-267-305.

134.  It is hereby declared and adjudged that "Noche de

Fiesta" covered by United States Copyright Registration Pau 2-
624-261 is an unauthorized derivative work that incorporates the
preexisting and copyrightable melody of "Nena Linda" covered by
United States Copyright Registration PA 1-267-305 without the
permission of Raldy Vasquez, the author of "Nena Linda" or his
authorized agents and representatives.

Attorney's Fees And Costs

135.   Pursuant to 17 U.S.C. §505, Plaintiffs are entitled to
recovery of full costs and attorney's fees of this action.

136.   An award of attorney's fees under the Copyright Act, 17
U.S.C. §505 is justified based upon the finding of willfulness,
the lack of merit of Defendant Torres' defenses, and in
furtherance of the Copyright Act's goal of deterrence.  See
Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 n. 19, 114 S.Ct.
1023, 127 L.Ed.2d 455 (1994) (stating award of attorney's fees
under 17 U.S.C. §505 is discretionary and setting forth factors
to be considered); Kepner-Tregoe, Inc. v. Vroom, 186 F.3d 283,
288 (2d Cir. 1999) (affirming district court's award of attorney
fees under the Copyright Act 17 U.S.C. §505 "based on the court's
finding of willfulness and it is in line with the statutory goal
of deterrence.").

137.   Pursuant to 17 U.S.C. §505, Fed.R.Civ.P. 54 and the

31

court's inherent powers, Plaintiffs are awarded costs and
attorney's fees.  See Chambers v. NASCO, Inc., 501 U.S. 32, 43
(1991) (a court has, as part if its inherent power, the ability
to impose sanctions for improper conduct, including the
imposition of reasonable costs and attorneys' fees, where a party
has "acted in bad faith, vexatiously, wantonly, or for oppressive
reasons."); 28 U.S.C. §1927.  See also Fed.R.Civ.P.11; Nuwesra v.
Merrill Lynch, Fenner & Smith, Inc., 174 3d 87, 91 (2d Cir. 1999)
declining to award fees under inherent powers or §1927 but
awarding attorney's fees and costs pursuant to Rule 11);
Fed.R.Civ.P. 54(d)(1) ("Except when express provision is made
either in a statute of the United States or these rules, costs
other than attorneys' fees shall be allowed as of course to the
prevailing party unless the court otherwise directs...").

138.  Plaintiffs shall submit proof of costs and attorneys
fees within thirty days after entry of judgment.


B.  Defendant Torres-Negron's Proposed Findings of Fact
(Defendant Torres-Negron believes he is entitled to a jury trial
and submits herein without prejudice the following Proposed
Findings of Fact.)


1. This matter is intimately related to several actions in
Puerto Rico, Torres-Negrón v. Rivera, et al, 02 Civ 1728; Torres-

Negrón v. Musical Production, 02 Civ 1729 and Torres-Negrón v.
J&N Publishing et al., 05 Civ. 1216 (the "Puerto Rico Actions").
Plaintiffs' counsel, Mr. Sheinbaum, represented defendant J&N in
Puerto Rico.

2. This action was filed after Torres' settlement with the
majority of the defendants in the Puerto Rico Actions and a week
before trial commenced in the Puerto Rico Actions. This action
was originally filed against two lawyers representing Torres in
the Puerto Rico Actions.

3. Torres is from the rural town of Aibonito, Puerto Rico.
(Declaration of Fernando Torres-Negrón dated January __, 2007 at
¶___; referred to hereinafter as "Torres Dec. at ¶__".) Torres
developed an interest in music at an early age and began taking
music classes when he was eight (8) years old. (Torres Dec. at
__.) By junior high school he began playing percussion
instruments and was chosen to become a member of a band comprised
of students selected from all schools in the district. (Torres
Dec. at ¶__.) After five years of playing with the band, at age
fifteen, he began playing with different artists and orchestras
as a freelance percussionist. (Torres Dec. at ¶__.) At the age of
sixteen he started writing lyrics. (Torres Dec. at ¶__ .) (See
TTR Day Two, pp. 22-25)[1].

---

[1] References to "TTR" herein are to the trial transcript of
the trial conducted in <u>Fernando Torres-Negrón v. J&N Publishing,
Inc.</u> Civ. No. 05-1216 (JAG) (Dist. P.R.)

4. In 1993, Rubén Cañnuelas, a friend of Torres who sang meringue music in a cover band named *Tempo Merenguero*, asked Torres to write some songs for the band. (Torres Dec. at ¶___.) Canuelas gave Torres a cassette containing several songs performed by *Tempo Merenguero* so that he could "get a feel for the style" that *Tempo Merenguero* played. (Torres Dec. at ¶___.) Torres was asked to write something "a bit more fast paced, more sort of an aggressive tune." Torres Dec. at ¶___.)

5. After listening to the cassette, Torres wrote the lyrics *Noche de Fiesta* to be sung to a meringue bomba rhythm (Torres Dec. at ¶___.) (TTR, Day Three Volume I, pp. 19-20, Addendum pp. 37-38.) After writing the lyrics on a piece of paper, Torres sang the song *Noche de Fiesta* to a meringue bomba rhythm on an audiocassette that Canuelas took and played for *Tempo Merenguero*. (Torres Dec. at ¶___.) (TTR Day Three Volume I, pp. 25). Torres never saw the audiocassette again, but allowed *Tempo Merengureo* to perform *Noche de Fiesta*. Torres Dec. at ¶___.) (TTR Day Three Volume I, p. 32.)

6. Canuelas told Torres that a musical entrepreneur named Antonio Rivera ("Rivera") heard Tempo Merengureo performing *Noche de Fiesta* and liked it. (Torres Dec. at ¶___.) Canuelas asked Torres if he had more songs to submit to Rivera. (Torres Dec. at ¶___.) Torres wrote a second song, *Bebo por Ti* and sent a cassette to Rivera for consideration. (Torres Dec. at ¶___.) (TTR, Day

34

Three Volume I pp. 21.)

7. In late 1993, without Torres' consent, *Noche de Fiesta* and *Bebo por Ti* were included in a commercial phonorecord released by the musical group Gozadera entitled "Bailando y Gozando con Gozadera". (Torres Dec. at ¶___.) Rivera never sought Torres' authorization to record and release *Noche de Fiesta* or *Bebo por Ti* nor did Rivera inform Torres that the phonorecord including his songs had been released. (Torres Dec. at ¶___.) (TTR Day Three Volume I, pp. 40, 91-92).

8. In 1994, Torres learned that his songs were included in this first phonorecord when he heard it played over the radio. (Torres Dec. at ¶___.) Shortly, thereafter, on January 19, 1994, Torres registered his songs with the American Society of Composers, Authors and Publishers (hereinafter "ASCAP") (Torres Dec. at ¶___.) (TTR, Day Three Volume I, pp. 46, See Appendix pp. 39.) Torres learned of ASCAP during a conversation he had with the plaintiff Vásquez in or about late 1993 when the two met at a club in Puerto Rico. (Torres Dec. at ¶___.)

9. After releasing the first phonorecord, Rivera, without Torres' knowledge or authorization, sold the master to J&N (a defendant in the Puerto Rico Action) for $10,000.00. J&N proceeded to release and re-release versions of *Noche de Fiesta* without Torres' authorization. J&N released a version of the phonorecord in the United States (hereinafter the "second

phonorecord".) J&N also released a compilation of meringue music
hits, entitled Merenhits '94, which included *Noche de Fiesta*
(hereinafter the "third phonorecord") (Torres Dec. at ¶___.)
Several years later, J&N included *Noche de Fiesta* in a re-release
of a meringue compilation, distributed by what is now known as
Sony BMG (hereinafter the "fourth phonorecord") (Torres Dec. at
¶___.) Torres became aware of the existence of the second, third
and fourth phonorecords between 2001 and 2002. (Torres Dec. at
¶___.)

10. Torres learned he needed to copyright his songs in order
to file his legal claims in Puerto Rico. Torres, thereafter,
registered *Noche de Fiesta* along with his other songs in the U.S.
Copyrights Office. A Copyright Certificate for *Noche de Fiesta*,
#PAU2-624-261 was issued to Torres on January 31, 2002. (Torres
Dec. at ¶___.)

11. In 2002 and 2005, Torres filed actions in the District
Court of Puerto Rico for copyright infringement of three of his
lyrical compositions entitled *Noche de Fiesta, Bebo por Ti* and
*Triste Final*. The cases were entitled <u>Torres-Negrón v. Rivera</u>, et
al. 02-CV-1728 <u>Torres-Negrón v. Musical Production</u>, 02 Civ 1729,
and <u>Torres-Negrón v. J&N Publishing, et al.</u> 05-CV-1216. (Torres
Dec. at ¶___.) Prior to trial, Torres settled his claims against
several defendants. (Torres Dec. at ¶___.) Plaintiff seeks here to
disgorge Torres of his right to the settlement funds based upon

the alleged infringement of Nena Linda.

12.  On the eve of trial in the Puerto Rico Actions, J&N proposed inclusion of a new witness that had not been previously disclosed during discovery - - Mr. Raldy Vásquez, the plaintiff herein. Mr. Vásquez, who claims that Noche de Fiesta infringed on Nena Linda, admitted at trial in the Puerto Rico Actions, and at deposition in this matter, that in 1993 he heard Noche de Fiesta being performed by the group Gozodera.

13. Upon cross-examination at trial Mr. Vásquez testified as follows:

> Q: Mr. Vásquez, your defense is that the song
> Noche de Fiesta copies Nena Linda; right?
>
> A. That is correct.
>
> Q. When did you learned about this copy?
>
> A. It's been years.
>
> Q. How many years?
>
> A. I heard it ever since it came out.
>
> Q. So it is fair to say that you heard Noche
> de Fiesta in 1993, when it came out?
>
> A. That is correct.
>
> Q. An your learned that, but you didn't do
> anything in 1993; Right?

A. No.

Q. In 1994?

A. No.

Q. '95?

A. No.

Q. Any year of the decade of the nineties.

A. No.

Q. And 2001 and 2002 and 2000 and three and 2005, did you do anything?

A. No.

(TTR, Day Five Volume I, pp. 69-70, Appendix pp. 156-158.)

14. During deposition, Vásquez testified as follows:

Q. When did you first hear the song *Noche de Fiesta*?

A. In the year that they were promoting it, 1993.

Q. At that time what did you do after you first heard the song?

A. I listened to it. It was a group that didn't grab my attention.

Q. After hearing the song *Noche de*

38

*Fiesta* in 1993, that group was performing

that song did not grab your attention?

     A. No.

15.  Vásquez cannot read or write music (Vásquez Dep. Trans.
P. 13, line 13-24; p. 16 lines 4-7.) Vásquez did not file a
copyright for *Nena Linda* until November 3, 2005. (Copyright
application Exh. ___ hereto.) Thereafter, in January 2006, four
years after Torres filed his copyright for *Noche de Fiesta*, he
commenced this action.

16.  The plaintiffs' nominated expert, Mr. Angel Fernandez,
testified at deposition that the songs *Noche de Fiesta* and *Nena
Linda* were different. (Deposition Transcript of Angel Fernandez
at p. 16 line 1-6; a copy of the relevant pages of the Fernandez
Transcript is Exh. ___.) In fact, Fernandez admitted that there
are several key differences between the songs. (Exh. __ p. 16-17
at lines 14-25, 1-5.) Fernandez obviously admitted that the
lyrics are different (Exh. ___, p. 17 lines 3-5.) Likewise,
Fernandez admitted that the songs had different musical
introductions. (Exh. ___, p. 25, lines 15-17.) He also admitted
that the rhythm of the songs were different as a result of the
difference in lyrics and syllables (Exh. ___, p. 17 lines 15-20;
p. 20 lines 20-22). In analyzing the two songs, Fernandez broke
the song into sections and testified that there were variations
to the structure of the songs. (Exh. __ p. 18 lines 7-12.)

Fernandez also conceded that the melodies were not the same. (Exh. ___, p. 23-24, lines 25, 1-14.) Fernandez also testified that the second half of *Noche de Fiesta* contained syncopated half notes which made that section of the music different. (Exh. ___, p. 24, 25, lines 15-25, 1-5.)

17.  Not surprisingly, Fernandez admitted that it was common for a band to play similar sounding songs as a part of its repertoire. (Exh. ___, p. 29, lines 22-25.) Fernandez failed to consider, however, that the commercially released versions of *Noche de Fiesta* and *Nena Linda*, which Torres took no part in either, had similar musicians, arrangers, mixers and engineers.

18.  It is undisputed (i) that neither Vásquez nor Torres wrote the music to either song at issue; (ii) that Israel Casado was the musical arranger for both *Nena Linda* and *Noche de Fiesta*; (iii) that the commercially released versions of *Noche de Fiesta* and *Nena Linda* were played essentially by the same band; and (iv) that Torres did not commercially release *Noche de Fiesta*.

19.  Torres does not read or write music.

20.  Vásquez does not read or write music.

21.  Israel Casado was the musical arranger for the commercially released version of *Noche de Fiesta* performed by Gozadera.

22. Israel Casado was the original musical arranger and director for the commercially released version of *Nena Linda* performed on the album Commercial.

23. Elias Lopez played trumpet in the commercially released version of *Noche de Fiesta*.

24. Elias Lopez played trumpet in the commercially released version of *Nena Linda*.

25. Israel Casado played piano in the commercially released version of *Noche de Fiesta* and was the musical arranger and director of the commercially released version of *Nena Linda*.

26. Jose Diaz played saxophone in the commercially released version of *Noche de Fiesta*.

27. Jose Diaz played saxophone in the commercially released version of *Nena Linda*.

28. Joel Sanchez played the "bajo" on the commercially released version of *Noche de Fiesta*.

29. Joel Sanchez played the "bajo" on the commercially released version of *Nena Linda*.

30. Ramon Martinez was an engineer and mixer on the albums that contained the commercially released versions of *Nena Linda* and *Noche de Fiesta*.

Defendant's Proposed Conclusions of Law

## PLAINTIFFS' CLAIM IS TIME BARRED

1. The Second Circuit has held that a claim accrues under the Copyright Act "when a plaintiff knows or has reason to know of the injury upon which the claim is premised." Ackoff-Ortega v. Windswept Pacific Ent. Co. (Inc.) 120 F.Supp.2d 273, 279 (S.D.N.Y. 2000), citing Merchant v. Levy, 92 F.3d 56 (2d Cir. 1996). Thus, a plaintiff claiming to be an author of a copyrighted song "must seek a declaration of his rights within three years from the date he knows or has reason to know he has been deprived of those rights." Ackoff-Ortega v. Windswept Pacific Ent. Co. (Inc.) 120 F.Supp.2d 273, 279 (S.D.N.Y. 2000), citing Margo v. Weiss, 96 Civ. 3842, 1998 WL 2558, at 5 (S.D.N.Y. Jan. 5, 1998), aff'd, 213 F.3d 55, 59 (2d Cir. 2000).

2. As a general rule, an individual author is first deprived of his or her ownership rights in a copyrighted work at the time a copyright registration which fails to list the individual as an author is filed. Ackoff-Ortega v. Windswept Pacific Ent. Co. (Inc.) 120 F.Supp.2d 273, 279 (S.D.N.Y. 2000), citing Margo v. Weiss 1998 WL 2558. ("Any injury plaintiffs suffered by virtue of not receiving credit as author occurred the year in which the copyright certificate listing the lyricists as authors was filed."); see also Willsea v. Theis, 98 Civ. 6773, 1999 WL

42

595629, at 5 (S.D.N.Y. Aug. 6, 1999) ("[O]nce an author registers his copyright, any [unlisted] author exercising reasonable diligence should be aware that another person has clamed authorship."); <u>Ackoff-Ortega v. Windswept Pacific Ent. Co. (Inc.)</u> 120 F.Supp.2d 273, 279 (S.D.N.Y. 2000).

3. Here, Torres filed his copyright on January 31, 2000. Vásquez was aware of the alleged infringement since 1993, yet plaintiffs' complaint was not filed until on or about January 25, 2006, nearly a year after the three year statute of limitations expired.

PLAINTIFFS CANNOT ESTABLISH THE ESSENTIAL

<u>CRITERIA TO PROVE COPYRIGHT INFRINGEMENT</u>

1.  There is no case law which support plaintiffs' claim that Torres' settlement with various defendants in the Puerto Rico Actions for the unauthorized commercial exploitation of the lyrics of Torres' three songs is an infringement of *Nena Linda*. As noted in <u>ULLOA v. Universal Music and Video Dist. Corp.</u>, 303 F.Supp.2d 409 (S.D.N.Y. 2004) copyright protection extends to two distinct aspects of music: (i) the musical composition, which is itself usually composed of two distinct aspects – music and lyrics . . . <u>Staggers v. Real Authentic Sound</u>, 77 F.Supp.2d 57, 61 (D. D.C. 1999.) Torres commenced his actions in Puerto Rico to

43

protect his lyrics.[2]

2.  In a copyright infringement action, plaintiff may prove copying indirectly by showing: (1) the defendant had access to the plaintiff's work; and (2) there exists between the two works substantial similarity of protectible expression. <u>Intersong USA v. CBS Inc.</u>, 757 F.Supp. 274 (S.D.N.Y. 1991), 3 M.B. Nimmer, *Nimmer on Copyright*, § 13.0[B] (1990). "More simply stated, the plaintiff must show that his work "was 'copied,' by proving access and substantial similarity between the works, and also show that his expression was 'improperly appropriated,' by providing that the similarities relate to copyrightable material." <u>Walker v. Time Life Films, Inc.</u>, 784 F.2d 44, 48 (2d Cir.), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2278, 90 L.Ed.2d 721 (1986) (citations omitted)." <u>Intersong USA v. CBS Inc.</u>, 757 F.Supp. 274 (S.D.N.Y. 1991).

3.  Plaintiffs cannot establish access substantial similarity. Torres can rebut an inference of copying because he can prove that the work was created independently of the

---

[2]  To prevail on a copyright infringement action a plaintiff must own a valid copyright. <u>Williams v. Broadus</u>, 2001 WL 984714 (S.D.N.Y. Mukasey) citing <u>Feist Publications, Inc. v. Rural Tel. Serv. Co.</u>, 499 U.S. 340, 361 (1991). Plaintiffs failed to submit a Certificate of Registration for "*Nena Linda*" issued by the Register of Copyrights within five years of the song's first publication. The Copyright Certificate dated November 22, 2005, therefore, is not *prima facie* evidence of a valid copyright. *See* 17 U.S.C. § 410(c).

plaintiffs' work. <u>Eden Toys, Inc. v. Marshall Field & Co.</u>, 675
F.2d 498, 501 (2d Cir. 1982); <u>American Greetings Corp. v. Easter</u>
<u>Unlimited, Inc.</u>, 579 F.Supp. 607, 613 (S.D.N.Y. 1983). Torres
never heard *Nena Linda* prior to writing *Noche de Fiesta*. (Torres
Dec. at ¶ __.) Further, the music for both songs was created by
Israel Cazado, not Vásquez or Torres. (Torres Dec. at ¶ __.)

   4.   "Access is hearing or having a reasonable opportunity to
hear the plaintiff's work, in other words having the opportunity
to copy. <u>Bevan v. Columbia Broadcasting System, Inc.</u>, 329 F.Supp.
601, 604 (S.D.N.Y. 1971); <u>Smith v. Little, Brown & Co.</u>, 245
F.Supp. 451 (S.D.N.Y. 1965), *Aff'd*, 360 F.2d 928 (2d Cir. 1966)."
<u>Intersong USA v. CBS Inc.</u>, 757 F.Supp. 274 (S.D.N.Y. 1991). A
plaintiff must offer significant, affirmative and probative
evidence to support a claim of access.   <u>Intersong USA v. CBS</u>
<u>Inc.</u>, 757 F.Supp. 274 (S.D.N.Y. 1991). <u>Scott v. Paramount</u>
<u>Pictures Corp.</u>, 449 F.Supp. 518, 520 (D.D.C. 1978), *aff'd*, 607
F.2d 494 (D.C. Cir. 1979), *cert. denied*, 449 U.S. 849, 101 S.Ct.
137, 66 L.Ed.2d 60 (1980). Conjecture or speculation of access
will not suffice. <u>Alexander v. Irving Trust Co.</u>, 132 F.Supp. 364,
367 (S.D.N.Y.), *aff'd*, 228 F.2d 221 (2d Cir. 1955), *cert. denied*,
350 U.S. 996, 76 S.Ct. 545, 100 L.Ed. 860 (1956). Here, there is
no evidence that Torres had access to *Nena Linda* prior to writing
*Noche de Fiesta*.

   5.   Plaintiffs have also claimed that *Noche de Fiesta* is a

derivative work of *Nena Linda*. The test for whether a newly created work infringes the copyright holder's right to create a derivative work is the same as the test for whether that newly created work infringes the copyright holder's exclusive right to reproduce the copyrighted work itself. Williams, 2001 WL 984714. *See* 2 Nimmer § 8.09 at 8-137. If the latter work does not incorporate sufficient amounts of the pre-existing work as to constitute an infringement of either the reproduction right, or of the performance right, then it likewise will not infringe the right to make a derivative work because no derivative work will have resulted. Williams, 2001 WL 984174, *see also* Twin Peaks Prod. v. Publications Int'l, 996 F.2d 1366, 1373 (2d Cir. 1993).

6.  Therefore, to establish that "*Noche de Fiesta*" is a derivative work of "*Nena Linda*" defendants must establish that (1) plaintiffs copied "*Noche de Fiesta*," and (2) the copying amounted to an improper or unlawful appropriation. Williams, supra, Castle Rock Entertainment, Inc. v. Carol Publishing Group, Inc., 150 F.3d 132, 137 (2d Cir. 1998) (quoting Laureyssens v. Idea Group, Inc., 964 F.2d 131, 139-40 (2d Cir. 1992)). Unlawful appropriation is established "by showing that the second work bears 'substantial similarity' to protected expression in the earlier work." Williams, supra, Castle Rock, 150 F.3d at 137 (citing Repp v. Webber, 132 F.3d 882, 889 (2d Cir. 1997)); *see also id*. at 143 n. 9. If a secondary work transforms the

46

expression of the original work such that the two works cease to be substantially similar, as *Noche de Fiesta* does here, then the secondary work is not a derivative work and, for that matter, does not infringe the copyright of the original work.") (citing 1 Nimmer § 3.01 at 3-3).

7. The testimony of plaintiffs' expert, Angel Fernandez, establishes that the two songs are quite different. Mr. Vásquez testified unequivocally that the two songs differ precisely in their structure and rhythm.

8. In <u>Arnstein v. Porter</u>, 154 F.2d 464 (2d Cir. 1946), the Second Circuit set forth a two part test for determining the issue of substantial similarity. As stated in <u>Walker</u>, the <u>Arnstein</u> decision "framed a two-part test for similarity by drawing a distinction between noninfringing 'copying' on the one hand, which may be inferred from substantial similarities between the two works, and infringing 'illicit copying,' on the other, which demands that such similarities relate to protectible material." <u>Walker</u>, 784 F.2d at 51. On the issue of copying, the Second Circuit has held that "'analysis (dissection) is relevant, and the testimony of experts may be received.'" <u>Walker</u>, 784 F.2d at 51 (quoting <u>Arnstein</u>, 154 F.2d at 468). If copying is established under this first inquiry, only then does the Court consider the issue of illicit copying. On that issue "'the test is the response of the ordinary lay listener'" and expert

47

testimony on this issue is inappropriate. Walker, 784 F.2d at 51 (quoting Arnstein, 154 F.2d at 468). *See generally* Note, The Role of the Expert Witness in Music Copyright Infringement Cases, 57 Fordham L.Rev. 127 (1988-89).

9.   A song will be said to be substantially similar to another "if an ordinary person of reasonable attentiveness" would, upon listening to both works, conclude that the alleged infringer appropriated protectable expression. Pursuant to this test, two works are substantially similar where "'the ordinary [listener], unless he set out to detect the disparities, would be disposed to overlook them, and regard the aesthetic appeal of the two works as the same." Williams, supra, *Id.* at 139 (quoting Arica Inst., Inc. v. Palmer, 970 F.2d 1067, 1072 (2d Cir. 1992)).

10. Originality - *i.e.*, "distinguishable variation" and the presence of a "minimal element of creativity" - is a prerequisite to copyright protection. L. Batlin & Son, Inc. v. Snyder, 536 F.2d 486, 490 (2d Cir. 1976), ULLOA, supra at 413. The Second Circuit has characterized the test of originality as modest, minimal," and "a low threshold." ULLOA, supra, citing to Dorham Indust. Inc. v. Tony Corp., 630 F.2d 905, 910 (2d Cir. 1950). As the Second Circuit explained in Eden Toys Inc. v. Florelee Undergarment Co., 697 F.2d 27, 34 (2d Cir. 1982), the standard for sufficient originality in whether the work contains some substantial, not merely trivial, originality. The standard for

copyright infringement, by contrast, is whether the defendant's work is substantially similar to the plaintiff's work. <u>Eden Toys</u> 697 F.2d at 34; <u>ULLOA</u>, supra at 414. Plaintiffs' expert establishes that the two works are sufficiently different so as to be considered original works.

## V.  ISSUES TO BE TRIED

Whether "Noche de Fiesta" infringes on "Nena Linda".

Whether "Noche de Fiesta" is an unauthorized derivative work.

The amount of damages.

## VI.  PLAINTIFFS' EXHIBITS

| <u>Exhibit Number</u> | <u>Description</u> |
|---|---|
| Px1 | Copyright Certificate (Vasquez- Nena Linda) |
| Px2 | CD containing Nena Linda |
| Px3 | Expert Report of Angel Fernandez and accompanying exhibits |
| Px4 | CD containing Noche de Fiesta |
| Px5 | CD containing Raldy Vasquez humming the melody of Nena Linda during trial on February 8, 2006 |
| Px6 | CD containing Raldy Vasquez singing the lyrics to Nena Linda during trial |

49

|       | On February 8, 2006 |
|-------|---------------------|
| Px7 | CD containing Fernando Torres-Negron humming the melody of Noche de Fiesta during trial on February 2, 2006 |
| Px8 | CD containing Fernando Torres-Negron Singing the words of Noche de Fiesta during trial on February 2, 2006 |
| Px9 | Plaintiffs' Complaint (Dk. No. 1 January 25, 2006) |
| Px10 | Torres-Negron Answer (Dk. No. 20 June 20, 2006) |
| Px11 | Torres-Negron Complaint (Dk. No. 1 May 15, 2002) |
| Px12 | Torres-Negron Amended Complaint (Dk. No. 81 July 18, 2005) |
| Px13 | Declaration of Fernando Torres-Negron dated May 13, 2005 (Torres Depo. Ex. 10) |
| Px14 | Campesino Letter to Sosa Pascual and Rivera Rive dated December 12, 2005 (RV/CE 001) |
| Px15 | Campesino Letter to Sosa Pascual and Rivera Rive dated December 12, 2005 E-mail version (RV/CE 002) |
| Px16 | Borstein & Sheinbaum Letter to Tamara Sosa-Pascual, Esq. and Julio de la Rosa Rive, Esq. dated January 5, 2006 (RV/CE 009) |
| Px17 | Borstein & Sheinbaum Letter to Tamara Sosa-Pascual, Esq. and Julio de la Rosa Rive, Esq. dated January 17, 2006 and enclosures (RV/CE 0012-0019) |

50

Px18                            Campesino - Vasquez Exclusive
                                Administration Agreement dated
                                October 19, 2005 (RV/CE 022-0025)

Px19                            Copy of Artwork and credits of
                                CD entitled Comercial (RV/CE 0050-
                                0051)

Px20                            Copy of Artwork and credits of
                                CD entitled Bailando y Gozando
                                con...Gozadera (Centro Records 1993)

Px22                            Decision Torres- Negron v. Rivera,
                                433 F.Supp.2d 204 (D. Puerto Rico
                                2006)

Px23                            Copy of Portions of Deposition
                                Testimony of Torres-Negron taken on
                                August 27, 2002 (First session pages
                                36, lines 16-23, 37, lines 9-11, 15,
                                43, lines 7-10 and Second Session
                                pages 23, lines 18-25, 24, lines 1-
                                19, page 27, lines 8-22)

Px24                            Copy of Portions of Trial Testimony
                                of Torres-Negron on February 2,
                                2006 (pages 16, lines 9-14, lines 21-
                                25, 97, lines 3-4, 21-25, 115, lines
                                15-25, 116, lines 1-13, 117, lines
                                2-12)

Px25                            Copy of Portions of Trial Testimony
                                of Torres Negron on February 6, 2006
                                (pages 24, lines 22-24, 60, lines 22-
                                25, 61, lines 1-25, 62, lines 1-25,
                                63, lines 1-22, 64, lines 13-16, 22-
                                24, 73, line 1, 74, lines 1-10, 75,
                                lines 16-21, 80, lines 9-25, 81,
                                lines 1-11, 82, lines 13-25, 84,
                                lines 15-21, 90, lines 13-25, 91,
                                lines 10-25, 92, lines 2-17, 95,
                                lines 17-19, 99, lines 2-18, 107,
                                lines 25-108, lines 1-12)

Px26                        Copy of Portions of Deposition
                            Testimony of Torres-Negron taken on
                            September 8, 2006 (pages 9-26, 31,
                            33, 41-45, 48, 50-57, 61-62, 67-68,
                            78, 86-88, 91-93, 100-105, 109-
                            112, 115, 119 exclusive of lawyer
                            colloquy and objections)

Px27                        Torres-Negron ASCAP Agreement - 2004

Px28                        Torres-Negron ASCAP Extension
                            Agreement - 1995

Px29                        Torres-Negron ASCAP Statements
                            (including summaries and checks)

Px30                        Copy of Luis Rivera Record Dist. Inc.
                            Check No. 2193 dated Marzo 24, 1995
                            in the sum of $450 to Torres-Negron's
                            order

Px31                        Copy of Luis Rivera Record Dist. Inc.
                            Check No. 2195 dated Marzo 30, 1995
                            in sum of $450 to Torres-Negron's
                            order

Px32                        Settlement Agreement between
                            Torres-Negron and EMI-Latin - 2005

Px33                        Settlement Agreement between Torres-
                            Negron - Universal - 2005

Px34                        Copy of CD entitled Jomami Merenhouse
                            Mix

Px35                        Settlement Agreement between
                            Torres-Negron and Sony-BMG - 2006

Px36                        Settlement Agreement between
                            Torres-Negron and Antonio Rivera -
                            2006

Px37                        Settlement Agreement between Torres-
                            Negron and Antonio Moreno/Nota
                            Publishing - 2006

Px38                          Publishing Agreement between
                              Sabrosos Publishing and Torres-Negron
                              for Noche de Fiesta - 2001 (English
                              translation and Spanish original)

Px39                          Torres-Negron's Application For
                              Copyright Registration of Noche de
                              Fiesta - Form PA

Px40                          Torres-Negon's Copyright Registration
                              Covering Noche de Fiesta - January 31,
                              2002

Px41                          CD of Bailando y Gozando
                              con...Gozadera (HMS version)
                              containing "Noche de Fiesta"

Px42                          Torres Statement Under Penalties of
                              Perjury May 14, 2004 (Torres Depo. Ex.
                              18)

Px43                          Torres Declaration August 24, 2002

Px44                          Torres Complaint February 2005
                              (Jomami)

Px45                          Torres Amended Complaint July 2005
                              (Jomami)


VII.  DEFENDANT'S EXHIBITS


Defendant incorporates herein the entire list of exhibits

set forth by Plaintiffs above and adds the following exhibits:

DxA                           Excerpts of Deposition Transcript of
                              Vasquez

DxB                           Excerpts of Deposition Transcript of
                              Cuevas

DxC                           Excerpts of Deposition Transcript of
                              Fernandez

DxD                              Lyrics of Noche de Fiesta authored by
                                 Torres-Negron

## VIII.   STIPULATIONS AND OBJECTIONS WITH RESPECT TO EXHIBITS

Plaintiff objects to all of Defendant Torres's exhibits DxA, DxB, DxC and DxD on the grounds that they are not relevant, and even if relevant, they are unfairly prejudicial, confuse the issues before the Court and will unduly delay of the trial and waste time.  Fed.R.Evid. 403.

With respect to Defendant's Exhibits DxA, DxB and DxC, to the extent that the portions of the transcripts to be offered are other than or different from those specifically quoted above in Defendant's Proposed Findings of Fact, Plaintiffs reserve the right to object at the time the exhibits or testimony or transcripts are offered.  Plaintiffs further object to the admissibility of DxA, DxB and DxC and transcripts of testimony cited to therein in their entirety on the grounds of hearsay. Fed.R.Evid. 802.

With respect to Defendant's Exhibit DxD, lyrics of "Noche de Fiesta", Plaintiffs' object on the grounds of lack of authentication and that the proposed exhibit is not an original because the proposed exhibit is a reconstruction from memory of lyrics allegedly written in 1993 without reference to the original lyrics and on the grounds of hearsay.  Fed.R.Evid. 802;

54

901; 1001(3); 1002.

Defendant does not make any objections as to Plaintiffs'
exhibits and stipulates that all of Plaintiffs' exhibits are
admissible.

IX.   PLAINTIFFS' WITNESS LIST

Witnesses in Plaintiffs' case in chief:

Plaintiff Vasquez

Plaintiff Campesino by Marti Cuevas

Angel Fernandez

Defendant Torres (live, by transcripts of his depositions, sworn
statements and by transcripts of trial testimony in federal
action involving claim over "Noche de Fiesta" in Puerto Rico
before Judge Hector Laffitte in February 2006)

X.   DEFENDANT'S WITNESS LIST

Defendant Torres-Negron

Plaintiff Vasquez

Plaintiff Campesino by Marti Cuevas

Angel Fernandez

Ruben Canuelas

Israel Casado

(Plaintiffs object to Ruben Canuelas and Israel Casado as
witnesses because they were not disclosed by Defendant Torres in

his initial Rule 26 disclosures and Plaintiffs have not had an opportunity to depose these potential witnesses).

## X.  RELIEF SOUGHT

Plaintiffs request a judgment awarding and granting:

Damages: Judgment awarding statutory damages in the amount of $150,000 and actual damages and profits in the amount of $150,006.90.

Injunction: Judgment granting a permanent injunction in form attached.

Declaratory judgment: Judgment declaring and adjudging: (a) that "Noche de Fiesta" covered by United States Copyright Registration Pau 2-624-261 infringes upon "Nena Linda" covered by United States Copyright Registration PA 1-267-305 and (b) that "Noche de Fiesta" covered by United States Copyright Registration Pau 2-624-261 is an unauthorized derivative work that incorporates the preexisting and copyrightable melody of "Nena Linda" covered by United States Copyright Registration PA 1-267-305 without the permission of Raldy Vasquez, the author of "Nena Linda" or his authorized agents and representatives.

Costs and Attorneys Fees: Judgment awarding costs and fees. Plaintiffs estimate the costs and fees through trial will be $125,000.

Interest: Interest on all sums awarded from May 31, 2005.

Dated: January 19, 2007



                                          _____
                                                                U.S.D.J.



Borstein & Sheinbaum                      Bennett, Giuliano, McDonnell &
                                          Perrone, LLP
Attorneys for Plaintiffs                  Attorneys for Defendant

By _____          By: _____
James B. Sheinbaum (JS0291)               William R. Bennett, III (WB1383)

420 Lexington Avenue                      225 West 34th Street
Suite 2920                                Suite 402
New York, N.Y. 10170                      New York, N.Y. 10122
Tel. (212) 687-1600                       Tel. (646) 328-0120
Fax (212) 687-8710                        Fax (646) 328-0121


57

UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK
--------------------------------X
FELIPE ROBLES VASQUEZ p/k/a RALDY
VASQUEZ and CAMPESINO ENTERTAINMENT          06 Civ. 0619(CM)
GROUP, INC.,


                    Plaintiffs,


                                             <u>Order and Judgment</u>

        -against-


FERNANDO TORRES NEGRON, <u>et al.</u>,

                    Defendants.
--------------------------------X


    It is hereby ORDERED and ADJUDGED:


    Defendant Fernando Torres-Negron and all of his agents,

employees, representatives and all other persons and entities of

any nature acting or purporting to act on his behalf or for his

benefit and all persons or entities of any nature having

knowledge or notice hereof are permanently enjoined, restrained

and stayed from:

    (a) manufacturing, selling, distributing, copying,

reproducing, performing, licensing, adapting, modifying,

adapting, arranging, exploiting, using, profiting or otherwise

benefitting from the song entitled "Noche de Fiesta" (identified

and claimed in United States Copyright Registration No. Pau 2-

624-261 effective date January 31, 2002), including, but not limited to any and all versions, adaptations, arrangements and derivatives thereof (hereafter "Noche de Fiesta") in any manner or way, directly and indirectly through or by any means, process, procedure, invention, creation, device or method or way known or hereafter developed or created throughout the universe,

(b) applying for, obtaining and/or maintaining any copyright registration and/or the equivalent covering and/or protecting "Noche de Fiesta", in whole or part, anywhere in the universe,

(c) asserting, claiming or maintaining any right, title or interest of any nature in and to "Noche de Fiesta", in whole or part, and any works or things based in whole or part thereon or taken in whole or part therefrom anywhere in the universe, and

(d) accepting, collecting, getting, obtaining, receiving, requesting, soliciting, keeping and/or retaining, directly or indirectly, any and all income, money, revenue and/or other consideration of any nature manufacturing, selling, distributing, copying, reproducing, performing, licensing, modifying, adapting, arranging, exploiting and/or using "Noche de Fiesta", directly or indirectly, in whole or part, anywhere in the universe.

Dated:            , 2007

_____

U.S.D.J.

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| FELIPE ROBLES VASQUEZ p/k/a RALDY VASQUEZ and CAMPESINO ENTERTAINMENT GROUP, INC.,<br><br>     Plaintiff,<br><br><br><br>     v.<br><br>FERNANDO TORRES NEGRON, TOMARA SOSA-PASCUAL and JULIO DE LA ROSA-RIVE,<br><br>     Defendants.<br>----------------------------------------- | )<br>)<br>)<br>)<br>)  **06 Civ. 0619(CM)**<br>)<br>)<br>)  **CERTIFICATE OF SERVICE**<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

  I HEREBY CERTIFY that on January 19, 2007, a true and correct copy of Plaintiffs' "Pretrial Order" was served on William R. Bennett, III, Esq., Defendants' attorney in this action, via facsimile:

     William R. Bennett, Esq.
     Bennett, Giuliano, McDonnell & Perrone, LLP
     225 West 34th Street, Suite 402
     New York, New York 10122
     Fax No. (646) 328-0121


Dated: New York, New York
    January 19, 2007

           By: _____
            James B. Sheinbaum(JS 0291)

           Borstein & Sheinbaum
           Attorney for Plaintiffs
           420 Lexington Avenue, Suite 2920
           New York, NY 10170
           Tel: (212) 687-1600