UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF NEW YORK
-----------------------------------X
FELIPE ROBLES VASQUEZ p/k/a RALDY
VASQUEZ and CAMPESINO ENTERTAINMENT        06 Civ. 0619(CM)
GROUP, INC.,


                    Plaintiffs,


        -against-

FERNANDO TORRES NEGRON, TOMARA
SOSA-PASCUAL and JULIO DE LA
ROSA-RIVE,


                    Defendants.
-----------------------------------X


# **Plaintiffs' Affidavit In**
# **Opposition Exhibits 7-12**

# Exhibit 7

UNITED STATES DISTRICT COURT FOR

THE SOUTHERN DISTRICT OF NEW YORK

------------------------------------------x

FELIPE ROBLES VASQUEZ p/k/a RALDY

VASQUEZ and CAMPESINO ENTERTAINMENT

GROUP, INC.,

ORIGINAL

                                   06 CV 0619

              Plaintiffs,

      -against-

FERNANDO TORRES NEGRON, TOMARA

SOSA-PASCUAL and JULIO DE LA

ROSA-RIVE,

              Defendants.

------------------------------------------x

                  September 8, 2006

                  1:00 p.m.

    Deposition of FERNANDO TORRES NEGRON, taken

by plaintiffs, pursuant to Order, at the Law Firm of

Borstein & Sheinbaum, 420 Lexington Avenue, New

York, New York, before Denise L. Daniels, a

Shorthand Reporter and Notary Public.



**LEGALINK®**

**A MERRILL COMMUNICATIONS COMPANY**

420 Lexington Ave
Suite 2108
New York, NY 10170

tel (212) 557-7400
tel (800) 325-3376
fax (212) 692-9171

www.merrillcorp.com

GLOBAL COURT REPORTING · LEGAL VIDEOGRAPHY · TRIAL SERVICES

```
 1              Fernando Torres Negron
 2        A.    Okay.
 3        Q.    Do you see where it says
 4   "Derivative Work?
 5        A.    Uh-huh.
 6        Q.    And you see where it says
 7   "Complete, both space 6-A and 6-B for derivative
 8   work"?
 9        A.    Yes.
10        Q.    And do you see where it says
11   "Identify any pre-existing works on this
12   work" -- excuse me, "any pre-existing work or
13   works that this work is based on or
14   incorporates," do you see that?
15        A.    Yes.
16        Q.    Did you fill in any pre-existing
17   work in that space?
18        A.    No.
19        Q.    At the time you filled this out,
20   you were aware that when you wrote "Noche de
21   Fiesta" you listened to an audiocassette of
22   another group playing music and singing,
23   correct?
24              MR. BENNETT:  Objection.
25        A.    Several songs.
```

```
 1              Fernando Torres Negron

 2        Q.    I'm showing the witness what is

 3   marked as Plaintiffs' 10.  At the top it says

 4   "Case 3:  02 CV01728 - HL document 228-10 filed

 5   5/13/2004, 1 of 1.  It says "Sworn statement,

 6   Fernando A. Torres Negron.

 7              Have you seen that document before?

 8        A.    Yes.

 9        Q.    Did you read it before you signed

10   it?

11        A.    Yes.

12        Q.    Did you understand what you were

13   signing?

14        A.    Yes.

15        Q.    Did you understand that you made

16   that statement under oath?

17        A.    Yes.

18              MR. BENNETT:  Can I review the

19              document real quick?  I don't have a copy

20              of it.

21              MR. SHEINBAUM:  Sure.

22        Q.    Is there any statement in

23   Plaintiffs' Exhibit 10 concerning "Noche de

24   Fiesta"?

25        A.    Yes.
```

```
 1              Fernando Torres Negron
 2       Q.     Which number?
 3       A.     Number 2.
 4       Q.     Could you tell us what that says?
 5       A.     Should I read in English?
 6       Q.     If you can.
 7       A.     "I am the sole composer of the song
 8  entitled 'Triste Final,' 'Noche de Fiesta' and
 9  'Bobo por Ti.'
10       Q.     You swore to that statement in
11  August of 2002?
12       A.     Yes.
13       Q.     That statement is untrue, correct?
14              MR. BENNETT:  Objection.  At what
15       time?
16       A.     It is true.
17              MR. SHEINBAUM:  Mark this as
18       Plaintiffs' Exhibit 11.
19              (Whereupon, document re "Noche de
20       Fiesta" marked Plaintiffs' Exhibit 11 for
21       identification, as of this date.)
22       Q.     I'm showing the witness what's been
23  marked as Exhibit 11.  At the top it says,
24  "Sabrosos Publishing, Inc."  It consists of
25  four pages and according to the third paragraph
```

                    Fernando Torres Negron

1

2    federal court in Puerto Rico against music and

3    production.

4        Q.    Were there any claims in this

5    complaint against Sony Music?

6        A.    Yes.

7        Q.    I show you what the next document

8    is.  What is that, it's Plaintiffs' Exhibit 13?

9        A.    That's another claim that was

10   submitted.

11       Q.    By you?

12       A.    Correct.

13       Q.    And it says, "Amended Complaint,"

14   correct?

15       A.    Exactly, that's right.

16       Q.    And you authorized the filing of

17   it?

18       A.    Correct.

19       Q.    And in this action, you made claims

20   based on "Noche de Fiesta"?

21       A.    Correct.

22       Q.    And you claim that you're the sole

23   composer of "Noche de Fiesta," correct, in this

24   action?

25       A.    Correct.

1                 Fernando Torres Negron

2       Office in Washington, D.C. of Judge Laffitte's

3       May 2006 decision?

4              A.    No.

5                    MR. SHEINBAUM:  Let's mark this as

6              17.

7                    MS. PASCUAL:  For the record, the

8              opinion he's referring to over and over

9              of Judge Laffitte is under appeal

10             currently.

11                   (Whereupon, document marked

12             Plaintiffs' Exhibit 17 for identification,

13             as of this date.)

14                   MS. PASCUAL:  So it's not final.

15             Q.    On the night that you wrote "Noche

16      de Fiesta," you listened to a tape or audio

17      cassette, correct?

18             A.    Correct.

19             Q.    And at the time you were listening

20      to it, you were working on the words to "Noche

21      de Fiesta," correct?

22             A.    Not at the same time.

23             Q.    It was played first?

24             A.    First and after also.  It was a

25      cassette full of songs.

1          Fernando Torres Negron

2          Q.    And it is possible that one of

3    those songs was "Nena Linda," correct?

4               MR. BENNETT:  Objection.

5          A.    It could be.  A lot of them could

6    be.

7          Q.    I'm going to show you a document

8    that was filed in the Puerto Rico action

9    assigned to Judge Laffitte.  It's a declaration

10   under penalty of perjury.  We'll mark this as

11   18.

12               (Whereupon, declaration in Puerto

13          Rico Action marked Plaintiffs' Exhibit 18

14          for identification, as of this date.)

15               MS. PASCUAL:  Let the record

16          reflect that he's being handed a document

17          that's in English.  He's not proficient

18          in English.  He doesn't speak it either.

19          And it has five single spaced pages.

20          Q.    Have you ever seen that before?

21          A.    Yes, correct.

22          Q.    Is your signature on the last page?

23          A.    Correct.

24          Q.    Did you provide the information in

25   that sworn statement under penalty of perjury?

```
 1              Fernando Torres Negron
 2    correct?
 3         A.    No.   What does that have to do with
 4    this?
 5         Q.    Were you present when "Nena Linda"
 6    was composed?
 7         A.    No.
 8         Q.    So you don't know anything about
 9    how it was written?
10         A.    No.
11         Q.    You mean correct?
12         A.    Correct.
13         Q.    As to "Noche de Fiesta," according
14    to the way I understand your testimony, there
15    was one other person present on that evening,
16    correct?
17         A.    Correct.
18         Q.    What's his name?
19         A.    Rubin Canuelas.
20         Q.    Where does he live?
21         A.    Aibonito in Puerto Rico.
22         Q.    Do you know his address?
23         A.    Not exactly.  He lived near my
24    mother's house.
25         Q.    He still lives in the same house as
```

# Exhibit 8

## Methodology

I was requested to render an objective analysis of two musical works: "Noche de fiesta" and "Nena linda." And, based upon the fact that "Nena linda" was written prior to "Noche de fiesta," as evidenced by the filed copyright certificate for each work, I was asked to provide an opinion as to whether the melody of "Noche de fiesta" was based in whole or in part on the melody of "Nena linda."

A copy of the copyright certificate for each work is attached hereto as Exhibit "A."

In order to render the analysis, I was provided with a copy of the commercially released sound recording containing each work: Bailando y Gozando Con Gozadera (as performed by the group Gozadera) containing "Noche de fiesta" on track 2 and Comercial containing "Nena linda" (as performed by Raldy Vasquez) on track 5.

Attached as Exhibit "B" is a copy of the artwork of each of these recordings.

Attached as Exhibit "C" is a compact disc containing "Noche de fiesta" and "Nena linda" which was made from the above mentioned commercially released recordings.

I listened to the commercially released sound recordings repeatedly to make the analysis contained in this report. I then analyzed the music (melody) and the lyrics (words).

With respect to the music (melody), I transcribed each work using standard musical notation. ("Musical notation" is defined as the combination of symbols used for sound and rhythm. It is like the alphabet which is comprised of symbols for spelling words.)

Attached as Exhibit "D" are is the musical notation only of the music (melody) of "Noche de fiesta" and "Nena linda", respectively.

I also made a sketch of the musical arrangements of "Noche de fiesta" and "Nena linda." The sketch of the musical arrangements is attached hereto as Exhibit "E."

I also transcribed the lyrics (words) of "Noche de fiesta" and "Nena linda." These transcriptions of the lyrics (words) of each work are attached as Exhibit "F".

## Analysis:

After listening to "Noche de fiesta" and then "Nena linda" for the first time, I was struck immediately by the fact that the melody of both works is virtually identical. An ordinary listener or professional musician would not be able to distinguish between the two melodies.

1

The arrangement places a composition in the context of its style or genre. Neither an arrangement or the instrumentation employed (instruments playing the arrangement) change the basic song or melody around which the arrangement and its elements are built. The arrangement merely adorns the song in the same way a paint job, unique hubcaps or leather seats adorn a car, but do not change its make, model or engine. Thus, regardless of the arrangement or instrumentation employed, the music or melody remains the same.

If the virtually identical nature of the melodies of "Nena linda" and "Noche de fiesta" is readily recognized by the listener, it is further confirmed by the attached musical notation.

The attached musical notation of "Nena linda" and "Noche de fiesta" (Exhibit "D"), containing both melody and a sketch of the musical arrangements, show that though the arrangements differ, the melodies are virtually identical. The reason for this is that the musical arrangement is made after the song is composed; the arrangement is created AROUND the pre-existing melody to fit the style of the arranger, singer and group performing the work.

The following example contains two very popular songs with virtually identical melodies but different lyrics. (Because these melodies are so well known, I have not transcribed them in musical notation):

| TWINKLE TWINKLE LITTLE STAR | THE ABC SONG |
|---|---|
| Twinkle twinkle little star | A B C D E F G |
| How I wonder what you are | H I J K L M N O P |
| Up above the sky so high | Q R S, T U V |
| Like a diamond in the sky | W X Y Z |
| Twinkle twinkle little star | Now I know my A B Cs |
| How I wonder what you are | Next time won't you sing with me |

In line 1, there are 7 syllables in each song so that the melodies are identical
In line 2, there 7 syllables in TWINKLE but ABC SONG has 9
In line 3 there are 7 syllables in TWINKLE  In ABC there are 7 syllables but syllable 4 is a rest
Line 4 is the same as line three where ABC says "dou-ble-u (rest) X, Y, ZX
In lines 3 and 4, the melodies are varied slightly to accommodate the melodic rhythm of the different lyrics
In lines 5 and 6, both songs have 7 syllables and the melodies are identical

There is no question that these two songs share the same melody, and that, though the melody is slightly varied according to the melodic rhythm of the different lyrics, it is still the SAME melody and is readily recognized by the ordinary listener.

3

For an illustration of how the above example applies to this report, see Exhibit "D" at letter [A], measure 3 of both "Noche de fiesta" and "Nena linda". The first half of said measure 3 is identical in both songs. However, the second half of "Noche de fiesta" contains a synchopated 8th note followed by a quarter note, whereas "Nena linda" contains four 8th notes. In each case the notes are identical -- all are E. However, just as in line 2 of TWINKLE TWINKLE and the ABC Song, the melodic rhythm was varied to accommodate the change of lyrics.

If a different musical arrangement were built around each of the above songs, the melodies would remain the same and would be readily recognized, regardless of style, instrumentation, etc.

As explained above, the melodies and structures of "Nena linda" and "Noche de fiesta" are virtually identical. The sketches of the musical scores confirm this from a technical standpoint. Although the works differ in their introductions and "mambos", neither the intros or mambos constitute part of the musical composition. Rather, they are musical "choices" made by the arranger to accompany and adorn the composer's original melody which remains unchanged.

Another way to think of the relationship of "melody" to "arrangement" is to think of the melody as a scoop of vanilla ice cream to which a topping has been added.
The vanilla ice cream is fundamental and the same in both dishes. Therefore, whether you top the vanilla ice cream with fudge, sprinkles, granola or a combination of all, the vanilla ice cream (like the melody) remains identifiable and distinct.

"Nena linda" and "Noche de fiesta" are both merengues. Merengues are a sub-genre under the heading of "tropical music." Tropical music is usually divided into two main sections: the song and the *estribillo* or refrain. The *estribillo* is often less structured section of a song where the singer and/or instrumentalists may improvise. A world of choices may be made in this section. Many times a composer will suggest a "coro" with a specific structure to the arranger. (A "coro" is the "call" section of "call and response" – the response is usually an improvisation but may be written down in the studio). But even in the "coro" section, the similarities between the structures and melodies of "Nena linda" and "Noche de fiesta" are undeniable. The notes and their corresponding rhythms are almost identical; the "coro" section is 16 bars, followed by the call and response of the "coro" and lead vocals. Again, the melodies are virtually identical.

Both "Nena linda" and "Noche de fiesta" are in the key of A minor. In Western music there are 12 tonal centers or "keys." In popular music (including merengue), each key may have two variants called major and minor. There are twenty four keys and thus twenty four choices. Despite the number of choices "Nena linda" and "Noche de fiesta" are in the same key of A minor.

4

twenty four possible choices. Despite the number of choices, Nena Linda and Noche de Fiesta are in the same key of A minor.

## Conclusions And Opinions

After listening to both Noche de Fiesta and Nena Linda and analyzing the music by examining the notes in the melodies of both works and listening to both of the works, it is my opinion that: (a) to the ordinary listener the melodies of both Noche de Fiesta and Nena Linda are the same and are not distinguishable and (b) technically and musically the melodies of Noche de Fiesta and Nena Linda are virtually identical and not materially distinguishable.

Based upon my professional experience (as a musician, arranger, composer and producer of music) and in my opinion and considering that Nena Linda was created in 1992 and Noche de Fiesta in 1993 as indicated on their respective copyright certificates, because the lyrics (words) of Noche de Fiesta fit and go so well and closely with the melody of Nena Linda, it is highly unlikely and extremely improbable that the lyrics of Noche de Fiesta were not written to fit the melody of Nena Linda.

Based upon my professional experience (as a musician, arranger, composer and producer of music) and in my opinion and considering that Nena Linda was created in 1992 and Noche de Fiesta in 1993 as indicated on their respective copyright certificates, it is my opinion that the melody of Noche de Fiesta was copied and taken from Nena Linda.

Dated: September 15, 2006

Angel Fernandez

4

# Exhibit 9

1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------x

FELIPE ROBLES VASQUEZ p/k/a RALDY VASQUEZ

and CAMPESINO ENTERTAINMENT GROUP, INC.,

                              Plaintiffs,

        - against -

FERNANDO TORRES NEGRON, TOMARA SOSA --

PASUCAL, and JULIO DE LA ROSA-RIVE,

                              Defendants.

-------------------------------------------x

                        November 22, 2006

                        11:00  a.m.


            DEPOSITION of ANGEL FERNANDEZ,

taken by the Defendants, pursuant to

Notice, held at the offices of Borstein &

Sheinbaum, LLP, 420 Lexington Avenue, New

York, New York, before Debbie Zaromatidis,

a Shorthand Reporter and Notary Public of

the State of New York.

23

1              FERNANDEZ

2    identical nature of the melodies in Nena

3    Linda and Noche de Fiesta is readily

4    recognized by the listener, it is further

5    recognized by the attached musical

6    notation."  Do you see that?

7        A.     Right.

8        Q.     And that is a true and accurate

9    statement?

10       A.     Yes.

11       Q.     In the next paragraph down,

12   middle of the third line at the end after

13   a comment it says "The melodies are

14   virtually identical."

15           Do you see that?

16           MR. SHEINBAUM:    Which line is

17   it?  I am sorry.

18           MR. BENNETT:    The third line

19   down in the third paragraph.

20       A.     Okay.

21       Q.     After the comment "the melodies

22   are virtually identical."  Do you see

23   that?

24       A.     I see that.

25       Q.     So the melodies are not exactly

24

FERNANDEZ

identical, correct?

    A.    They are -- they have differences.  They are based on the same -- the same melody on the -- there are differences that I -- that are there to accomodate the lyrics, which were written in my opinion based on -- on the Nena Linda, the lyrics of Noche de Fiesta.

    Q.    But are the melodies identical or virtually identical?

    A.    They are -- they are not identical.  They are virtually identical. They are not note for note identical.

    Q.    Going to the next page, page 4, the third line down which starts "however," it says, "However the second half of Noche de Fiesta contains a syncopated eighth note.

    A.    Where --

    Q.    It is (indicating) -- "However, the second half of Noche de Fiesta contains a syncopated eighth note followed by a quarter note whereas Nena Linda contains four eighth notes."

# Exhibit 10



# AMERICAN SOCIETY OF COMPOSERS, AUTHORS AND PUBLISHERS
## ONE LINCOLN PLAZA
### NEW YORK, NEW YORK 10023

AUGUST 19, 2004

ASCAP

17130

MR FERNANDO A TORRES
EST SAN LUIS
CALLE PERGAMO #14
AIBONITO PR 00705

INTERNATIONAL DISTRIBUTION        WRITERS        BALANCE DUE A/C ADVANCE

| DISTRIBUTION | DEDUCTIONS | |
|---|---|---|
| | DUES | DATE 08/19/2004 |
| | ADVANCES | |
| | RELIEF | |
| | W/H TAX | CONTROL No.    0017799 |
| | CREDIT UNION | |
| | ASCAP FOUNDATION | |
| | LEGISLATIVE FUND | |
| | OTHER | |
| TOTAL    $6.90 | TOTAL    $0.00 | AMOUNT OF CHECK    $6.90 |

FORXI

1537061                USA    TORRES FERNANDO A



THE FACE OF THIS DOCUMENT HAS A VOID PANTOGRAPH

AMERICAN SOCIETY OF COMPOSERS, AUTHORS AND PUBLISHERS
ONE LINCOLN PLAZA
NEW YORK, NEW YORK 10023

62-26
911    5167-00

A S C A P

0000877697

DATE
08/19/2004

PAY TO THE ORDER OF
FERNANDO A TORRES

PAY                        AMOUNT OF CHECK
$6.90

NOT VALID AFTER ONE YEAR

INTERNATIONAL
Chase Manhattan Bank USA, N.A.
1201 Market Street
Wilmington, DE 19801

AUTHORIZED SIGNATURES

THE BACK OF THIS DOCUMENT CONTAINS A SIMULATED WATERMARK

VOID VOID VOID VOID VOID

"0000877697"  :031100676:  6304457690509"

# Exhibit 11

Page 1

1
2

UNITED STATES DISTRICT COURT

3

SOUTHERN DISTRICT OF NEW YORK

4

5    FELIPE ROBLES VASQUEZ p/k/a        )
     RALDY VASQUEZ and CAMPESINO        )
6    MUSIC ENTERTAINMENT GROUP, INC.)
                                        )
7                Plaintiffs,            )
                                        )
8        vs.                            )No. 06 CV 0619
                                        )
9    FERNANDO TORRES NEGRON, TAMARA )
     SOSA-PASCUAL and JULIO DE LA       )
10   ROSA-RIVE,                         )
                                        )
11               Defendants.            )
     --------------------------------)
12
13                                      COPY
14
15
16         DEPOSITION OF FELIPE ROBLES VASQUEZ
17               New York, New York
18           Thursday, September 7th, 2006
19
20
21
22
23   Reported by:
     Jeremy Frank, MPM
24   JOB NO. 187325a
25

1          Vasquez

2     M A R K   B U C K W A L T E R,   was duly

3     sworn to interpret the questions from

4     English into Spanish, and the answers

5     from Spanish into English.

6     F E L I P E   R O B L E S   V A S Q U E Z,

7     called as a witness, having been duly sworn by

8     a Notary Public, was examined and testified

9     through the interpreter as follows:

10    EXAMINATION BY

11    MR. BENNETT:

12          Q.     State your name for the record.

13          A.     Felipe Robles Vasquez.

14          Q.     State your address for the record.

15          A.     Caretera La Isabela Residencial

16    Irene #17 Alto Arro Hondo 3ro, Santo Domingo,

17    Dominican Republic.

18                 (Defendant's Exhibits A through D,

19          premarked, for identification.)

20          Q.     Good morning, Mr. Vasquez.  My

21    name is Bill Bennett.  I'm going to be asking

22    you some questions today.  I expect that all

23    of your answers will be honest and truthful.

24    If at any time you need a break, let me know.

25    If it is an appropriate time, we will give you

**Esquire Deposition Services**
**1-800-944-9454**

1                      Vasquez

2    giving the ideas sung so that the arranger

3    writes the notes that correspond to that idea.

4         Q.    Has an artist ever hired you to be

5    the musical arranger?

6         A.    No.

7         Q.    Do you know who the musical

8    arrangers were for the song Noche de Fiesta?

9         A.    I think it was Israel Casado.

10        Q.    Did you ever work with Israel

11   Casado before?

12        A.    Yes, he worked on my record.

13        Q.    What record is that?

14        A.    Just One Night, Una Noche Nada

15   Mas; just that one.  Just that one.

16        Q.    When you were working on the album

17   Comercial, was Israel present?

18        A.    While I was?

19        Q.    In order to create the disk

20   Comercial, there had to be musicians in a room

21   playing music, correct?

22        A.    Do you mean to finish this?

23        Q.    No, let me start over.

24              Is it fair to say that the

25   gentleman Israel worked on some of your

1                          Vasquez

2    arrangements?

3          A.      One arrangement.

4          Q.      He also worked on the arrangement

5    Noche de Fiesta?

6                MR. SHEINBAUM:   Objection.

7          A.      I think he did the arrangement for

8    Noche de Fiesta, the musical arrangement.

9          Q.      Did you ever play for him Nena

10   Linda?

11         A.      For Israel Casado?

12         Q.      Yes.

13         A.      No.

14         Q.      He was not familiar with Nena

15   Linda at any point in time?

16         A.      It's impossible to say, maybe he

17   heard it on the radio.

18         Q.      Did you ever play the song for him

19   with your guitar to get his opinion on how he

20   would musically arrange Nena Linda?

21         A.      To Israel?

22         Q.      Yes.

23         A.      It's impossible.  He's not the one

24   who arranged it, it was me and Alegria.

25         Q.      Was the song, tell me what the

1                              Vasquez

2    song is again that Israel worked on?

3         A.      Una Noche Nada Mas, Just One

4    Night.

5         Q.      Was that song arranged at or about

6    the time that Nena Linda was being arranged?

7         A.      It's possible because it's part of

8    the production.  It's possible that there was

9    an arrangement.  I'm just saying that because

10   I didn't have a company that, a strong company

11   to -- and so things were done.

12        Q.      Let me ask you this.

13               Do you know whether Alegria, is

14   that his name?

15        A.      We called him Alegria.

16        Q.      Did Alegria work with musicians on

17   the arrangement for Nena Linda without you

18   being present?

19        A.      No, he and I did it.

20        Q.      Okay.

21               Do you know what musicians worked

22   on your song Nena Linda?

23        A.      To make the album, you mean?

24        Q.      Yes.

25        A.      I can mention some of them.

# Exhibit 12

## SWORN STATEMENT

COMES NOW, FERNANDO A. TORRES NEGRÓN, of legal age, married, musician, school teacher, social security number 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, and resident of Aibonito, Puerto Rico, and declare under penalty of perjury that:

1. My personal circumstances are correctly set above.

2. I am the sole composer of the songs entitled "Triste Final", "Noche de Fiesta", and "Bebo por Tí".

3. I registered the above mentioned compositions with ASCAP in 1994, under the belief that it was the adequate manner of protecting my Intellectual Property and Copyrights.

4. I additionally registered these songs with the U.S. Copyright Office in January, 31, 2002.

5. I composed the song "Triste Final" without requesting nor receiving any aid from Mr. Antonio Rivera, and it was inspired by a difficult personal situation I was undergoing at the time.

6. I have never authorized the use, copy, adaptation, recording, or distribution of the songs "Triste Final", "Noche de Fiesta" or "Bebo por Tí".

7. I have never met, spoken to, nor entered into an agreement with Ms. Sorymar Rivera-Matos.

The foregoing is true to the best of my personal knowledge and belief.

In San Juan, Puerto Rico, this 24th day of August, 2002.

FERNANDO A. TORRES-NEGRÓN

Affidavit No. 262 (COPY)

Sworn and subscribed before me, personally appeared Fernando A. Torres-Negrón, of the above mentioned personal circumstances, identified by driver's license no. 2227045 issued by the Commonwealth of Puerto Rico.

In San Juan, Puerto Rico, this 24th day of August, 2002.

NOTARY PUBLIC

EXH 10
FOR IDENT
IN EVD    DATE 9/8/06

DENISE L. DANIELS