# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————x

FELIPE ROBLES VASQUEZ, p/k/a RALDY
VASQUEZ and CAMPESINO MUSIC
ENTERTAINMENT GROUP, INC.,

       Plaintiffs,                  06 Civ. 619 (CM)

   -against-

FERNANDO TORRES-NEGRON,

       Defendant.

———————————————————————x

### DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

McMahon, J.:

### Introduction

    Defendant Fernando Torres-Negron ("Torres" or "defendant") moves for summary judgment dismissing the instant complaint for copyright infringement, brought by singer/songwriter Raldy Vasquez and the New York corporation that controls the rights to Vasquez's composition Nena Linda. Plaintiffs allege that, since January 25, 2003, Torres has infringed Nena Linda with his composition Noche de Fiesta.

    This is one of several lawsuits involving Noche de Fiesta and Nena Linda. In two of those actions, Negron v. Rivera, Civ. 02-1728 and 02-1729, 433 F. Supp. 2d 204 (D. Puerto Rico 2006) (the "Puerto Rican action"), the Hon. Hercule Laffitte of the United States District Court

of the District of Puerto Rico, granting judgment as a matter of law, ruled that Torres (1) did not obtain a valid copyright in Noche de Fiesta and (2) could not have obtained a valid copyright (notwithstanding his having registered his purported copyright), because Noche de Fiesta was an unauthorized derivative work taken from Vasquez's Nena Linda. The Puerto Rican judgment is currently on appeal in the First Circuit.

## Background

Composition of the Songs

The facts applicable to the motions are, for the most part, undisputed.

In 1992 plaintiff "Raldy" Vasquez composed the words and music for a song entitled Nena Linda, which was commercially released on the audiocassette Comercial that same year and on compact disc in the Dominican Republic and Puerto Rico in 1993. Negron, supra, 433 F. Supp. 2d at 207. The recording of Nena Linda was played on the radio in Puerto Rico throughout 1993. Id. at 208.

Although Vasquez did not register his copyright in Nena Linda with the United States Copyright Office at the time the song was composed and did not do so until many years later, a song becomes "copyrighted" to its author at the moment it is fixed in a tangible medium of expression. See 17 U.S.C. § 102(a) ("Copyright protection subsists, in accordance with this title, in original works of authorship fixed in any tangible medium of expression . . ."); 17 U.S.C. § 408(a) ("[R]egistration is not a condition of copyright protection."); see also Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp., 210 F. Supp. 2d 147, 157 (E.D.N.Y. 2002), aff'd, 354 F.3d 112 (2d Cir. 2003) ("Registration with the United States Copyright Office is not required to obtain

copyright protection."). Since Nena Linda was fixed in a tangible medium in 1992, when the song was "fixed" on an audio cassette, Vasquez owned the copyright in Nena Linda from that time.

At some point in 1992 or 1993 (after Vasquez authored Nena Linda), Ruben Canuelas—the singer of the musical group Tempo Merenguero—asked Torres to compose a song for his group. Negron, 433 F. Supp. 2d at 207. Canuelas played Torres an audiocassette of Tempo Merenguero playing live so that Torres could get a sense of the band's style. Tempo Merenguero was a cover band that performed other artists' songs, and the tape may have included a version of Vasquez's Nena Linda, which Tempo Merenguero performed. Id. at 215. However, there is no clear evidence on that point.

After listening to the audiocassette, Torres created his song Noche de Fiesta. He recorded himself singing the song and wrote its lyrics on a piece of paper. Torres gave the recording and the written lyrics to Canuelas and granted him permission to use the song. Id. at 207. Tempo Merenguero recorded the work, and Noche de Fiesta was released for sale in 1993. Tempo Merenguero's recording played on the radio in Puerto Rico that same year.

The song Noche de Fiesta has the same tune as Nena Linda. The "beat" or rhythm of Noche de Fiesta differs from that of Nena Linda, and the words are different. But the melody, tone, structure and key were found by Judge Laffitte to be the same. Id. at 208.

Torres did not register Noche de Fiesta with the United States Copyright Office at the time he created the piece. However, he registered Noche de Fiesta with the American Society of Composers, Authors and Producers (ASCAP) in 1994. From time to time since 1994, Torres has received royalty payments from ASCAP for radio broadcasts of Noche de Fiesta. (Def.'s Rule

-3-

56.1 Statement ¶¶ 25, 27.) Some of those payments were made within three years of the filing of this action. (Pls.' Opp'n, Ex. 10.)

Over time, Torres has litigated with various individuals and record companies, asserting that he holds a valid copyright in Noche de Fiesta. Among those lawsuits were actions against Universal Music & Video Distribution Corp., EMI Latin, and Sony BMG Music Entertainment US Latin LLC—all of which settled with Torres—and J & N Records, Antonio Rivera, Luis Rivera, Luis Rivera Record Distributor, Inc., Sabrosos Publishing, Inc., Yesenia Rivera-Matos, and Sorymar Rivera-Matos—who were parties in the Puerto Rican action. In settling his claims against the first three of these parties, Torres entered into separate written settlement agreements. In each of those agreements, Torres warranted and represented that he was the author and owner of the rights in Noche de Fiesta, and released and settled all "his" claims for the settling companies' unauthorized use of Noche de Fiesta.

Vasquez registered his copyright in Nena Linda on or about November 3, 2005, which enabled him to bring suit to protect his copyright. (Pls.' Opp'n, Ex. 3.)


The Complaint in this Action

Although the complaint in this action does not separately state the various causes of action asserted, plaintiffs seek two forms of relief.

First, they seek a declaratory judgment annulling, invalidating, and canceling Torres's registration PAU 2-624-261 in the work entitled Noche de Fiesta, as well as an order declaring that Torres is not the "author" of Noche de Fiesta and enjoining Torres from prosecuting lawsuits to protect his purported "rights" in Noche de Fiesta.

-4-

Second, plaintiffs allege that Torres is infringing Vasquez's copyright in <u>Nena Linda</u> by asserting his ownership of <u>Noche de Fiesta</u>, and seek an injunction against Torres's infringement of Vasquez's copyright in <u>Nena Linda</u> and damages from past infringements.

Defendant has moved for summary judgment dismissing the complaint on two grounds: the statute of limitations bars plaintiffs from asserting their claims, and no infringement has occurred. (Mem. Supp. Def.'s Summ. J. 1.)

## Discussion

<u>Standard of Review</u>

Under Federal Rule of Civil Procedure 56(c), a court will grant summary judgment if the evidence offered shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 106 S. Ct. 2548 (1986); <u>see also</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 106 S. Ct. 2505 (1986). Furthermore, "'the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.' When no such showing is made, '[t]he moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she had the burden of proof.'" <u>Lujan v. National Wildlife Federation</u>, 497 U.S. 871, 884, 110 S. Ct. 3177, 3187 (1990) (citing <u>Celotex</u>, 477 U.S. at 322-23, 106 S. Ct. at 2552) (internal citations omitted). On a motion for summary judgment, the Court views the record in the light most favorable to the

non-moving party and resolves all ambiguities and draws all reasonable inferences against the moving party. See United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 994 (1962); Donahue v. Windsor Locks Bd. of Fire Commn'rs, 834 F.2d 54, 57 (2d Cir. 1987). "To prevail on a motion for summary judgment, the defendant[] must demonstrate the absence of material evidence supporting an essential element of [plaintiffs'] copyright infringement claim." Jorgensen v. Epic/Sony Records, 351 F.3d 46, 50 (2d Cir. 2003).


A. Torres is Collaterally Estopped from Relitigating the Issue of the Invalidity of his Copyright in Noche de Fiesta

In the Puerto Rican action, Judge Laffitte made a number of findings. He concluded that the tunes to Noche de Fiesta and Nena Linda were indistinguishable; that the songs differed only in their words and their rhythms; and that Torres had access to Nena Linda prior to composing Noche de Fiesta. See Negron, 433 F. Supp. 2d at 214-18. Judge Laffitte also found that, when Torres attempted to register Noche de Fiesta with the United States Copyright Office, he wrote on the certificate that he was the exclusive author of the "words and music (rhythm)," and responded to a field inquiry about whether the song was a derivative work with the words "n/a (not applicable)." Id. at 210. It does not appear that the facts on which any of these findings depend were disputed, or that the findings themselves (except for access) were disputed in the Puerto Rican action, to which defendant, but not plaintiffs, were parties.

Based upon Judge Laffitte's findings, Torres is collaterally estopped from relitigating the validity of his copyright or the fact that Noche de Fiesta was an unauthorized derivative of Nena Linda.

-6-

The doctrine of collateral estoppel prevents a party from relitigating an issue of fact or law that was fully and fairly litigated in a prior proceeding. See Montana v. United States, 440 U.S. 147, 153, 99 S. Ct. 970, 974 (1979); Marvel Characters, Inc. v. Simon, 310 F.3d 280, 288 (2d Cir. 2002). Collateral estoppel applies when "(1) the identical issue was raised in the previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." Interoceanica Corp. v. Sound Pilots, Inc., 107 F.3d 86, 91 (2d Cir. 1997) (internal quotation marks omitted). Because the plaintiffs in this case are using collateral estoppel "offensively" to preclude a defendant from raising an issue, the "court must [also] satisfy itself that application of the doctrine is fair" to the defendant. Bear, Stearns & Co. v. 1109580 Ontario, Inc., 409 F.3d 87, 91 (2d Cir. 2005) (citing Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 n.5, 99 S. Ct. 645, 649 (1979)).

Torres contends that the Puerto Rican judgment is not dispositive of his claim to a valid copyright because, "Judge Laffitte did not have all of the relevant facts when he granted judgment notwithstanding the verdict" in the Puerto Rican action. He also asserts that the Puerto Rican judgment is not dispositive of the validity of his copyright because the plaintiffs in this action were not deposed in the Puerto Rican action. (Def. Reply Br. 3.)

Unfortunately for Torres, Judge Laffitte's ruling constitutes a valid and final judgment on the issues of Torres's copyright and whether Noche de Fiesta was an unauthorized derivative of Nena Linda. These issues were actually and fully litigated in the Puerto Rican action. See Negron, 433 F. Supp. 2d at 214-18. After a review of both songs and the factual background, Judge Laffitte determined that Noche de Fiesta was an unauthorized derivative work taken from

-7-

Vasquez's song Nena Linda. Torres had every incentive to argue against this position to the fullest extent so as to establish the validity of his copyright and recover damages in this earlier litigation. Nothing prevented Torres from putting any relevant evidence before the court in Puerto Rico, or for that matter from deposing Vasquez and Campesino as non-parties in the Puerto Rican action. Torres cannot hide behind any deficiencies in the record to relitigate the matter in this Court.

Torres also appears to believe that, regardless of the adjudicated similarities between Noche de Fiesta and Nena Linda, he holds a valid copyright in the lyrics he set to Noche de Fiesta's melody, as well as the rhythmic variation he used in Noche de Fiesta.  This understanding is reflected in numerous statements made by Torres's counsel to this court—most recently, in a supplemental brief filed on April 13, 2007. But as the facts set forth above demonstrate, Torres did not register the copyright in lyric. Rather, he claimed that he was the exclusive author of the "words and music (rhythm)" of Noche de Fiesta—and then denied that the work was a derivative work (which, according to the undisputed record before Judge Laffitte, it clearly is).

## B. Torres's Summary Judgment Motion to Dismiss the Complaint as Time-Barred is Granted in Part and Denied in Part

Defendant asserts that the statute of limitations bars plaintiffs from asserting their claims. As explained above, plaintiffs have asserted two different claims—one for infringement and one for nullification of Torres's copyright registration and associated declaratory and injunctive relief. In the Second Circuit, each of these claims must be analyzed separately for statute of

limitations purposes. See Merchant v. Levy, 92 F.3d 51 (2d Cir. 1996); Carell v. Shubert Org., Inc., 104 F. Supp. 2d 236, 254 (S.D.N.Y. 2000) ("[P]laintiff's infringement claim is separate and distinct from the adjudication of her ownership claims.") (citations omitted); Maurizo v. Goldsmith, 84 F. Supp. 2d 455 (S.D.N.Y. 2000) (treating plaintiff's claim of joint authorship separately from infringement claims); see also 3 M. Nimmer & D. Nimmer on Copyright § 12.05[C] (describing Second Circuit practice as such). Despite defendant's contention that this is primarily a claim for "ownership," (see Def.'s Reply Pls.' Opp'n to Def.'s Mot. Summ. J. 3-4), defendant's argument is based on nothing more than counting the different types of plaintiffs' claims for relief. The reliefs sought here were based upon potentially substantial infringement claims as well as copyright cancellation claims, and thus the gravamen of the complaint is not clearly one of ownership. See Minder Music Ltd. v. Mellow Smoke Music Co., No. 98 Civ. 4496, 1999 WL 820575 (S.D.N.Y. Oct. 14, 1999) (dismissing slight infringement claims when gravamen of complaint was a time-barred ownership claim).

Pursuant to 17 U.S.C. § 507(b), no civil action for copyright infringement may be brought unless it commenced within three years after the claim accrued. The Copyright Act does not define whether an action accrues when the infringement takes place (the "injury rule"), or when the plaintiff knows or has reason to know about the injury on which his claim is based (the "discovery rule"). In this Court's opinion, both of plaintiff's claims are governed by the injury rule.

### 1. Claim for Copyright Infringement

Neither the Supreme Court nor the Second Circuit has discussed whether the injury or the discovery rule applies to the accrual of a claim of copyright infringement. In recent years, most district courts within this Circuit have employed a discovery rule because the Second Circuit applied that rule to claims of co-ownership of copyrighted materials. See Merchant, supra, 92 F.3d at 51. However, in the recent case of Auscape Int'l v. Nat'l Geographic Soc'y, 409 F. Supp. 2d 235, 243 (S.D.N.Y. 2004), one of my colleagues concluded that the injury rule made more sense in the context of copyright infringement. I agree.

In Auscape, the plaintiffs were the assignees of copyrights to photographical works for National Geographic Magazine. They alleged that the defendants infringed their copyrights by digitally reproducing an archive of images of the magazine—including the photographs—in CD-ROM and microform formats without the plaintiffs' authorization. All allegedly infringing activities, however, ceased more than three years before the plaintiffs filed suit. The plaintiffs' argued that their claims were nevertheless timely as they accrued not when the infringements occurred, but when plaintiffs first knew or had reason to know of the infringements. Id. at 242. The district court disagreed with the plaintiffs and adopted an injury rule to determine the date of accrual.

The district court (Kaplan, J.) acknowledged that a majority of courts had applied the discovery rule in such a context, but noted that these cases "rely almost exclusively upon" the Second Circuit's decisions in Merchant and Stone v. Williams, 970 F.2d 1043 (2d Cir. 1992). Auscape, 409 F. Supp. 2d at 243. Judge Kaplan noted that these two decisions derive from cases

in areas other than copyright "the general rule that accrual of a federal claim is governed by a discovery rule unless the statute upon which it is founded explicitly provides otherwise." Id.

However, as Judge Kaplan observed, that general rule regarding the accrual of federal claims changed after Merchant and Stone were decided. In TRW v. Andrews, 534 U.S. 19, 122 S. Ct. 441, 151 L. Ed.2d 339 (2001), the United States Supreme Court "reversed application of a discovery rule in determining when a claim accrued under the Fair Credit Reporting Act. It rejected the previously dominant view that federal courts should apply an injury rule only when Congress explicitly has adopted that rule, requiring instead that federal courts look beyond the specific language of a statute to its text and structure in determining what rule should apply when the statute is silent." Auscape, 409 F. Supp. 2d at 244. Finding the rule of TRW to be of general applicability and not just limited to the Fair Credit Reporting context, Judge Kaplan looked to the structure and legislative history of the Copyright Act for guidance on the injury versus discovery accrual question.

Judge Kaplan determined that "the goal of a uniform three year limitations period was to remove the uncertainty concerning timeliness that had plagued the copyright bar." He said it was "unlikely that Congress intended that accrual of an infringement claim . . . would depend on something as indefinite as when the copyright owner learned of the infringement." Id. Furthermore, it appeared from the testimony that Congress and the witnesses at the hearings on the copyright bill all "intended the three-year period to begin at the date of infringement." Id. This reflected the general belief that, because of the generally public nature of copyright infringement, three years was enough time for the copyright owner to receive prompt notice of the infringement. Id.

-11-

Judge Kaplan also found support for the adoption of an injury rather than a discovery rule in the hearings' "substantial focus" on whether to provide an exception to the three-year limitations period for cases in which there was fraudulent concealment of the infringing activity. Id. at 246. Obviously, a statutory exception for fraudulent concealment is only necessary if actions accrue under the injury rule. A statutory exception for fraudulent concealment would have been entirely superfluous if accrual were thought to begin with discovery: "[W]hether the holder's ignorance was attributable to simple ignorance or concealment would have been immaterial." Id. at 246-47. Moreover, while Congress did not pass a fraudulent concealment exception, it did not do so only because it "plain[ly] . . . expected that federal courts would continue to apply fraudulent concealment and other equitable case law as they had done previously. H.R. Rep. No. 85-150, 85th Cong., 1st Sess., at 2 (1957)." Auscape, 409 F. Supp. 2d at 247 n.55.

Several of my colleagues have followed Auscape since it was handed down, finding Judge Kaplan's reasoning "entirely persuasive." Roberts v. Keith, No. 04 Civ. 10079, 2006 WL 547252 (S.D.N.Y. Mar. 7, 2006); see also Chivalry Film Productions v. NBC Universal, Inc., No. 05 Civ. 5627, 2006 WL 89944 (S.D.N.Y. Jan. 11, 2006).

I, too, find Judge Kaplan's reasoning persuasive, and I adopt the date of the infringing activity as the date of accrual for plaintiffs' copyright infringement claims. This means that this Court can take cognizance only of infringements that occurred less than three years from the date plaintiffs filed their complaint (which was January 25, 2006)—or, put otherwise, all claims of infringement that occurred on or after January 25, 2003.

Torres argues that Vasquez cannot bring any infringement claim because he has known about Torres's infringement since 1993, when Vasquez, by his own admission, first heard Torres's song. (Vasquez Dep. 38:4-40:15, Sept. 7, 2006.) What Torres really means is that Vasquez has known since 1993 that defendant created a derivative work from Nena Linda without permission. Yes, this the seminal act of infringement, but it is not the *only* act of infringement alleged in the complaint. "If such [intervening] infringement occurred within three years prior to the filing, the action will not be barred even if prior infringements by the same party as to the same work are barred because they occurred more than three years previously." Lennon v. Seaman, 63 F. Supp. 2d 428, 443 (S.D.N.Y. 1999) (citing 3 M. Nimmer & D. Nimmer on Copyright § 12.05[A]). So while Torres's initial creation of an unauthorized derivative work based on Nena Linda falls far outside the statutory period, either under the injury rule or the discovery rule, plaintiffs' claims alleging subsequent acts of infringement are timely "if instituted within three years of each infringing act for which relief is sought." Merchant, 92 F. 3d at 57, n.8.

Plaintiffs allege that Torres infringed upon Nena Linda by (1) asserting his ownership of Noche de Fiesta in the settlement agreements he signed in 2004, 2005 and 2006, and (2) receiving royalty payments from ASCAP for plays of Noche de Fiesta. (Pls.' Opp'n to Def.'s Mot. Summ. J. 4.) The first of these acts certainly occurred within the three years prior to the filing of the complaint as each lawsuit was settled within the last three years. (Pls.' Opp'n, Ex. 6.) And the second infringement claim is timely as long as plaintiffs prove that the plays that led to royalty payments occurred in the last three years. See Mount v. Book-of-the-Month Club, Inc., 555 F.2d 1108 (2d Cir. 1977) (requiring that an actual direct infringement occur within the

-13-

statutory period for an indirect infringement claim to be timely); 11 M. Nimmer & D. Nimmer on

Copyright § 12.04[C][2] n.383.

Accordingly, Torres's motion for summary judgment dismissing plaintiffs' copyright

infringement claims as time-barred is denied.


### 2. Claim for Cancellation of Registration

Plaintiffs also ask this court to annul and cancel Torres's 2002 copyright registration of

Noche de Fiesta, on the ground that the work is an unauthorized derivative work and, collateral

to this, seek a declaration that Torres is not the author of Noche de Fiesta.

The first question to be answered is whether this claim is subject to the same three-year

statute of limitations applicable to copyright actions generally. See 17 U.S.C. § 507(b). The

answer is yes. As discussed above, the three-year limitations period applies in both infringement

actions, see, e.g., Kregos v. Associated Press, 3 F.3d 656 (2d Cir. 1993), and declarations seeking

co-ownership, see Merchant, supra. This Court, extending Merchant, has applied the same

limitations period to claims seeking various declarations that are related to the question of

copyright ownership. See e.g., Carell, supra, 104 F. Supp. 2d at 248-49 (applying three-year

limitations period to plaintiff's declaration of *sole* ownership claim over the rights to the makeup

designs in the musical *Cats*); Fort Knox Music, Inc. v. Baptiste, 47 F. Supp. 2d 481, 483-84

(S.D.N.Y. 1999) (applying the three-year limitations to plaintiff's claim seeking declaratory

judgment barring defendant songwriter from asserting sole ownership in a musical composition),

rev'd on other grounds, 203 F.3d 193 (2d Cir. 2000); Aday v. Sony Music Entm't, Inc., No. 96

Civ. 0991, 1997 WL 598410, at *3-5 (S.D.N.Y. Sept. 25, 1997) (applying three-year limitations

-14-

to claim seeking declaration that plaintiff did not assign his copyrights in three songs to defendants). Since plaintiffs' claim to cancel defendant's copyright, like these cases, relates to a claim of copyright ownership, the normal three-year limitations period applies.

The critical question for the purposes of this motion is when these three years started to run. Prior to TRW, the Second Circuit applied a discovery rule to claims related to co-ownership claims. For example, in Merchant, the plaintiffs claimed to be co-authors of the Frankie Lymon hit song, "Why Do Fools Fall in Love," which was registered for copyright in 1961. The plaintiffs brought an action seeking a declaration that they were co-owners in 1987. The district court interpreted the three-year statute of limitations period under the Copyright Act as limiting the plaintiffs' ability to recover royalties earned on the song prior to 1984, but not to bar their claim for a declaratory judgment of co-authorship. The Second Circuit reversed and dismissed the plaintiffs' claim, because the plaintiffs' cause of action accrued in 1961, when plaintiffs either knew or could have known with an exercise of reasonable diligence that they were not listed as co-authors of the song on its copyright registration. Merchant, 92 F.3d at 56. Later cases in the co-ownership context similarly employ a discovery rule to fix the date of accrual. See, e.g., Margo v. Weiss, 96 Civ. 3842, 1998 WL 2558, at *5 (S.D.N.Y. 1998), aff'd, 213 F.3d 55, 59 (2d Cir. 2000); Ackoff-Ortega v. Windswept Pacific Ent. Co., 120 F. Supp. 2d 273, 280 (S.D.N.Y. 2000).

For the same reason that district courts in this circuit have applied Merchant's use of a three-year limitations to all sorts of claims relating to copyright ownership (see related discussion, supra, at 14), I would be inclined to follow Merchant's discovery rule here, where plaintiffs allege that a nonowner has wrongfully registered a copyright in his (Vasquez's)

-15-

property. A claim for cancellation of a wrongful registration is quite similar to a claim for determination of sole ownership: both govern questions of who owns certain rights and seek to "quiet title."

However, as noted above, there are serious questions about whether Merchant remains good law after TRW. Judge Kaplan suggested in Auscape that Merchant might have been effectively overruled by TRW because the TRW court "reversed application of a discovery rule in determining when a claim accrued. . . . It rejected the previously dominant view that federal courts should apply an injury rule only when Congress explicitly has adopted that rule, requiring instead that federal courts look beyond the specific language of a statute to its text and structure in determining what rule should apply when the statute is silent." Auscape, 409 F. Supp. 2d at 244. Judge Kaplan questioned whether Merchant "remain[s] good law even in the co-ownership context, as [it was] premised upon the automatic application of the discovery rule that the Supreme Court rejected in TRW." Id.

I agree with Judge Kaplan that TRW announces a rule of general applicability. Moreover, as stated above, I find Judge Kaplan's "TRW-style" analysis of the Copyright Act persuasive. Since the Act makes no distinction between infringement- and ownership-based causes of action, it seems appropriate to apply an injury rule in the ownership context, and I will do so.

It is easy to determine when the injury occurred. Since copyright registration is the exclusive right of "the owner of the copyright or of any exclusive right in the work," 17 U.S.C. § 408(a), the injury occurs when a "copyright registration which fails to list the individual as an author is filed." Ackoff-Ortega, supra, 120 F. Supp. 2d at 280; see also Margo, supra, 1998 WL 2558, at *5 ("Any injury plaintiffs suffered by virtue of not receiving credit as co-authors of

-16-

'Lion' first occurred in 1961, the year in which the song was written and the copyright certificate listing the lyricists as authors was filed.").

It is undisputed that Torres filed his unauthorized copyright registration on January 31, 2002. (Pls.' & Def.'s Rule 56.1 Statements at ¶ 36) This lawsuit was brought on January 25, 2006, nearly four years later. Accordingly, plaintiffs' claim for cancellation of Torres's copyright registration is untimely.

Plaintiffs have not alleged fraudulent concealment or suggested to this Court that the statute of limitations should be tolled for any equitable reason. See generally 3 M. Nimmer & D. Nimmer § 12.05[B] (describing tolling of statute of limitations in copyright actions). Furthermore, it does not appear that plaintiffs would be entitled to any equitable tolling of the statute of limitations. The undisputed facts indicate that Vasquez became aware that an infringing song, Noche de Fiesta, was being exploiting through radio airplay in 1993, when he first heard that song on the radio. At that point, Vasquez was or should have been on inquiry notice that he may have to protect his rights in Nena Linda. Because he did not do so here in a timely manner, plaintiffs' copyright cancellation claims will be dismissed as time-barred.

However, the fact that plaintiffs have no judicial remedy on this issue does not mean that they are without administrative remedies. One can at any time petition the Copyright Office to cancel an invalid registration. The Copyright Office's regulations on cancellation, spelled out at 37 C.F.R. § 201.7, provide that a registered copyright can be cancelled where, "It is clear that no registration should have been made because the work does not constitute copyrightable subject matter or fails to satisfy the other legal and formal requirements for obtaining copyright." 37 C.F.R. § 201.7(b)(1) (2006). There does not appear to be any limitations period applicable to

-17-

administrative cancellation. In view of Judge Laffitte's decision, plaintiffs should have little

difficulty convincing the Copyright Office to cancel the registration of Noche de Fiesta.

Moreover, Torres cannot hide behind his copyright registration to protect himself from

infringement claims if he chooses to exploit Noche de Fiesta in the future.

### C. Torres's Summary Judgment Motion to Dismiss Plaintiffs' Infringement Claims on the Merits Because No Act of Infringement is Alleged is Granted in Part and Denied in Part

Defendant also moved for summary judgment dismissing any timely claims for copyright

infringement on the ground that he engaged in no infringing activity during the three years prior

to the commencement of this lawsuit. Defendant is partly correct.

Plaintiffs identify two types of allegedly infringing acts that occurred within three years of

bringing this action: (1) Torres's settlement of lawsuits he brought against EMI-Latin, Sony

BMG Latin and Universal Music & Video, and (2) plays of Noche de Fiesta occurring within the

past three years as a result of his continued licensing agreement with ASCAP and the collections

therefrom.

### 1. Torres's Settlements are not Infringing Activities

In the various settlement agreements, Torres represented that he was the owner of the

copyright in Nena Linda. That representation, as we now know, is false. But the false

representation does not infringe plaintiffs' copyrights.

This Court has not viewed false claims of ownership as infringing activity. See, e.g., T.B.

Harms Co. v. Eliscu, 226 F. Supp. 337 (S.D.N.Y.), aff'd, 339 F.2d 823 (2d Cir. 1964), cert.

denied, 381 U.S. 915 (1965); Southern Music Publishing Co., Inc. v. C. & C Films, Inc., 171 F.

Supp. 832 (S.D.N.Y. 1959). In Southern Music Publishing, the plaintiff alleged copyright infringement of a musical composition based upon the defendant's allegedly false representation to prospective users of the composition that, "through the plaintiff's authorization, it has the right to use and authorize the use of recordings" of the composition. Southern Music Publishing, 171 F. Supp. at 832. The court dismissed the complaint for failure to state a claim because, "The mere assertion by one in general terms of a claimed right without an accompanying act or threatened act to implement the asserted right is not sufficient to state a charge of . . . infringement of the plaintiff's copyright." Id. at 833.

In a case very similar to this one, the defendant in T.B. Harms Co. had previously brought a "New York State action [against the plaintiff] for a declaratory judgment that he, and not the plaintiff, own[ed] the renewed copyrights" over four songs and demanded an accounting. T.B. Harms Co., 226 F. Supp. at 339. The plaintiff then instigated the federal suit, alleging that the defendant's lawsuit claiming ownership and demanding royalties violated plaintiff's copyright in those songs. The court concluded that the defendant's acts did not "constitute[] any act which uses, violates or threatens the copyrights." Id. at 340. The Second Circuit affirmed that the court "was right in concluding [that] it did not" constitute copyright infringement and emphasized that infringement does not "include everything that may impair the value of the copyright; it is doing one or more of those things which § 1 of the Act, 17 U.S.C. § 1, reserves exclusively to the copyright owner." T.B. Harms Co., 339 F.2d at 825; see also Sony Corp. of Am. v. Universal City Studios, Inc., 464 U.S. 417, 447, 104 S. Ct. 774, 78 L. Ed.2d 574 (1984) ("Even unauthorized uses of a copyrighted work are not necessarily infringing. An unlicensed use of the copyright is not an infringement unless it conflicts with one of the specific exclusive rights

conferred by the copyright statute.") (citing <u>Twentieth Century Music Corp. v. Aiken</u>, 422 U.S. 151, 154-155, 95 S. Ct. 2040, 2043 (1975)).

Torres's representations of ownership and actions in settling do not conflict with these exclusive copyrights. The Copyright Act provides the owner of a copyright with a "bundle of rights," now spelled out in section 106 of the Act. An audio recording copyright holder, for example, has "the exclusive rights to do or authorize any of the following": to reproduce; prepare derivative works from; distribute; or perform publicly the copyrighted work. 17 U.S.C. § 106. Torres's initial creation of an unauthorized derivative of <u>Nena Linda</u> violates these rights, but its creation is not the allegedly infringing activity. The alleged activity here—protecting a false claim of ownership by initiating and settling lawsuits—is clearly not a right included in this exclusive bundle.

However, the unauthorized publication of <u>Noche de Fiesta</u> by the record companies that settled with Torres infringed upon <u>Nena Linda</u> because this action resulted in the publication of the unauthorized derivative work, <u>Noche de Fiesta</u>. Plaintiffs argue that Torres's settlements make him indirectly liable for the record companies' infringement. (Pls.' Opp'n to Def.'s Mot. Summ. J. 17.)

The Second Circuit has found liability for indirect infringements under the "or authorize" provision of § 106 and two legal principles. The first is contributory infringement—"induc[ing], caus[ing] or materially contribut[ing] to the infringing conduct of another" with knowledge of the infringement. <u>Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.</u>, 443 F.2d 1159, 1162 (2d Cir. 1971) (footnote omitted). The second is vicarious liability—imposing liability when the defendant has a "right and ability to supervise [the infringer] that coalesces with an obvious and

-20-

direct financial interest in the exploitation of copyrighted materials." Sofitel, Inc. v. Dragon Med.
& Scientific Commc'ns, Inc., 118 F.3d 955, 971 (2d Cir. 1997). Both of these forms of indirect
infringement require that the direct infringement occur within the statutory period. See Mount,
supra, 555 F.2d at 1108; 11 M. Nimmer & D. Nimmer on Copyright § 12.04[C][2] n.383.

On the record before me it seems clear that any claim of indirect infringement in relation
to the settlements would fail, as all the record companies' releases of Noche de Fiesta occurred
outside of the three-year statutory period that began on January 25, 2003 (i.e., three years prior to
when plaintiffs initiated this action). Unfortunately for plaintiffs, of the three albums underlying
the settled suits, one was released in 1994 and two were released in 1999. See Negron, 433 F.
Supp. 2d at 210.

Even setting aside the statute of limitations issue, it is unambiguous that Torres's
settlements did no more than release the record companies from liability for past actions. Nothing
in any of the settlement agreements authorized any future infringement by the record companies.
Contrary to plaintiffs' creative but incorrect contention, Torres could neither have exercised any
control over the unauthorized publication of Noche de Fiesta by virtue of the settlements nor
induced any unauthorized actions by the record companies. Torres simply released the record
companies from claims relating to the use of Noche de Fiesta in the record albums that were the
subject of the Puerto Rican action. In the settlements with Sony BMG Music and EMI Latin, for
example, Torres released each company from any and all claims relating to the album "Merenhits
'94" and the song Noche de Fiesta. In the Sony BMG Music settlement, Torres "release[d] . . .
the Sony Releasees from any and all . . . claims [that] . . . the Torres-Negron Releasors now have
. . . arising from . . . any matter, cause or thing occurring from any time from the beginning of the

-21-

world to the date of this Settlement Agreement and Release, relating to: the Albums ["Merehits '94" and "Que Siga el Party," a second album in the Puerto Rican action] or the Compositions [Noche de Fiesta and Triste Final] . . . actually asserted or that could have been asserted in the Actions against Sony related to the Albums or the Compositions." (Pls.' Opp'n, Ex. 6, Torres-Sony BMG Music Entertainment US Latin LLC Settlement Agreement & Release ¶ 12.) Similarly, Torres "release[d] and forever discharge[d] EMI Latin, from any and all . . . claims . . . related to the record entitled Merehits '94 and the musical composition entitled 'Noche de Fiesta . . . .'" (Pls.' Opp'n, Ex. 6, Torres-EMI Latin Settlement Agreement & Release ¶ 13.) The Universal settlement is likewise limited. (See Pls.' Opp'n, Ex. 6, Torres-Universal Music & Video Distribution Corp. Stipulation, Release and Hold Harmless Agreement § II.3(a).)

Torres also did not authorize any future use of Noche de Fiesta. The releases ran only to the date of the release and Torres reserved the right to recover for any later unauthorized use of Noche de Fiesta: "This [settlement] does not preclude the recovery of royalty payments for the future use of the composition . . . ." (Pls.' Opp'n, Ex. 6,  Torres-Sony BMG Music Entertainment US Latin LLC Settlement Agreement & Release ¶ 13; Torres-EMI Latin Settlement Agreement & Release ¶ 14.) While the settlement with Universal does not contain this clause, it similarly limits the release only to claims relating to the album containing Noche de Fiesta: "[T]he parties . . . settle . . . all claims . . . that [Torres] had or has against Universal from the beginning of the World until today." (Pls.' Opp'n, Ex. 6, Torres-Univeral Music & Video Distribution Corp. Stipulation, Release and Hold Harmless Agreement § II.3(a) (emphasis added).)

These limited settlements do not indicate any contributory infringement on Torres's part: he did not induce these record companies to publish Noche de Fiesta (and thus infringe upon

-22-

Nena Linda in the first place) nor did he then encourage any future publication of Noche de Fiesta. He gave no authorization to publish Noche de Fiesta at some future point and left open the possibility of suing for future misuse of what the parties wrongfully thought was Torres's copyrighted song. Thus, Torres cannot be held as a contributory infringer.

Similarly, Torres's settlements do not indicate any modicum of control over or responsibility for the record companies' actions in publishing Noche de Fiesta, rendering the doctrine of vicarious liability inapplicable against him. This Court has stated that, "Courts relying on this theory . . . repeatedly have emphasized that some degree of control or supervision over the individual(s) directly responsible for the infringement is of crucial importance." Demetriades v. Kaufmann, 690 F. Supp. 289, 292 (S.D.N.Y. 1988). In Demetriades, this Court found that despite the possibility of some benefit from the infringement to the defendants, the absence of "meaningful evidence . . . suggesting that the . . . defendants exercised any degree of control over the direct infringers" ruled out indirect infringement on a vicarious liability theory. Id. at 293-94.

The settling record companies published Noche de Fiesta without any authorization or permission from Torres—hence Torres's instigation of the Puerto Rican action—and perhaps even without his knowledge. Torres entered this picture after the release of these albums, precluding the possibility of finding any "meaningful evidence" which would indicate any degree of control. Because of this, I also cannot hold Torres vicariously liable and find that his settlements do not constitute copyright infringement.

-23-

### 2. Defendant's ASCAP License & Collections for Plays During the Last Three Years Would Constitute Infringements

Plaintiffs also claim that Torres is infringing upon Nena Linda by maintaining his licensing agreement of Noche de Fiesta with ASCAP and collecting the royalties thereunder. ASCAP is a performing rights organization that licenses and distributes royalties for public performances of its members' copyrighted works. Torres registered Noche de Fiesta with ASCAP in 1994 and gave the organization non-exclusive rights to license public performances of this work. He has received royalty payments for radio airplay of Noche de Fiesta from time to time. (Def.'s Rule 56.1 Statement ¶ 27; Pls.' Opp'n, Ex. 10.)

Torres's licensing agreement with ASCAP and collection of royalties constitute a continuing exploitation of and indirect infringement upon plaintiffs' rights to Nena Linda. As discussed above, to establish contributory infringement the plaintiffs are "required to show that [Torres] 'authorized the [infringing] use.'" Sofitel, supra, 118 F.3d at 971 (quoting Sony, 464 U.S. at 437, 104 S. Ct. at 786)). In this case, Torres's continued registration of Noche de Fiesta with ASCAP specifically authorizes public performances of the song. Any public performance licensed by ASCAP would constitute an infringement upon Nena Linda. This grant of authorization violates the plaintiffs' exclusive right to license the performance rights of Nena Linda. See 17 U.S.C. § 106(6). Further, Torres's registration of Noche de Fiesta with ASCAP induces infringement of Nena Linda by inviting people, musical groups, or radio stations to perform or broadcast the song for a fee. Because of this arrangement, Torres can be held liable as a contributory infringer.

Plaintiffs may also be able to establish vicarious liability by proving that Torres "profit[ed] from [the] direct infringement [upon Nena Linda] while declining to exercise a right

-24-

to stop or limit it." Metro-Goldman-Meyer Studios, Inc. v. Grokster, Ltd., 545 U.S. 913, 930

(2005) (citing Shapiro, Bernstein & Co. v. H.L. Green Co., 316 F.2d 304, 307 (2d Cir. 1963)).

Based on the evidence submitted to this Court, the plaintiffs have established that Torres

received a financial benefit from the public performance(s) of Noche de Fiesta. (Def.'s Rule 56.1

Statement ¶ 27; Pls.' Opp'n, Ex. 10.) Torres also had the ability to withdraw Noche de Fiesta

from his licensing arrangement with ASCAP or alert the organization to its unauthorized

derivative nature. See ACSAP, Compendium of ASCAP Rules and Regulations, and Policies

Supplemental to the Articles of Association § 1.11 (2006), *available at*

http://www.ascap.com/reference/compendium_rules_regs_rev062906.pdf. By doing so, Torres

might have stopped or limited the public performances of Noche de Fiesta and infringements

upon Nena Linda. Torres, however, did not do so, but continued to receive royalties from the

exploitation of Nena Linda, thereby meeting the *prima facie* requirements of vicarious liability.

    Plaintiffs would be entitled to recover for any infringements that occurred in the previous

three years. According to the record, Torres received a royalty check from ASCAP for $6.90 in

2004, but it is not clear to the Court whether this check even relates to a playing of Noche de

Fiesta, let alone one that occurred in the previous three years. (See Pls.' Opp'n, Ex. 10.) This

question of whether infringement occurred under the ASCAP license will be submitted to a jury,

which will determine the amount Torres received from ASCAP-related exploitations of Noche de

Fiesta in the three years prior to this action.

**Conclusion**

For the reasons stated above, defendant's motion for summary judgment is granted with respect to plaintiffs' claim of infringement based upon defendant's settlements, and is denied with respect to defendant's ASCAP exploitations. Plaintiffs' copyright registration cancellation claims are dismissed as time-barred, but summary judgment is denied on the issue of whether plaintiffs' infringement claims are time-barred.

This constitutes the decision and order of the Court.

Dated: July 11, 2007

_____
U.S.D.J.